ELLIS GEORGE CIPOLLONE
O'BRIEN ANNAGUEY LLP
Matthew L. Venezia (State Bar No. 313812)
  mvenezia@bgrfirm.com
George B. A. Laiolo (State Bar No. 329850)
  glaiolo@egcfirm.com
2121 Avenue of the Stars, 30th Floor
Los Angeles, California 90067
Telephone:  (310) 274-7100
Facsimile:  (310) 275-5697

Attorneys for Plaintiff
Anthony Randall

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY RANDALL, | Case No. 2:23-CV-02576 |
| Plaintiff, | Assigned Judge: |
| vs. | |
| UNITED NETWORK FOR ORGAN SHARING; CEDARS SINAI HEALTH VENTURES, | **COMPLAINT FOR:** |
| | **(1) VIOLATION OF TITLE VI OF THE CIVIL RIGHTS ACT OF 1964;** |
| Defendant. | **(2) VIOLATION OF THE UNRUH CIVIL RIGHTS ACT [CALIFORNIA CIVIL CODE § 51];** |
| | **(3) BREACH OF FIDUCIARY DUTY; AND** |
| | **(4) VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW [CAL. BUS. & PROF. CODE § 17200 ET SEQ.]** |
| | Action Filed:  April 5, 2023 |

2207855.1

COMPLAINT

Plaintiff Anthony Randall ("Plaintiff") brings this Complaint individually, and on behalf of all persons similarly situated, against the United Network for Organ Sharing and Cedars Sinai Health Ventures ("Defendants"), and alleges as follows:

## INTRODUCTION

1.      Black Americans are more than three times as likely to suffer from kidney failure when compared to White Americans. As a group, and as a result of ongoing racial inequality, Black Americans are at higher risk for maladies such as high blood pressure, obesity, diabetes, and heart disease, each of which increase the likelihood of suffering kidney disease.

2.      Despite being overrepresented when it comes to kidney disease, and overrepresented on the national waitlist for donor kidneys, Black Americans are much less likely than their White counterparts to actually receive a kidney transplant.

3.      Kidney function is measured by an estimated glomerular filtration rate test, commonly referred to as eGFR. A patient's eGFR score is used to determine when the patient is eligible to begin accruing wait time on the national kidney waitlist, with the score needing to fall below 20 ml/min to qualify a patient to begin to accrue wait time.

4.      When current tests for the eGFR were developed, a few flawed studies indicated Black Americans had higher creatine extraction rates, and instead of considering whether this difference could be caused by non-racial societal factors, it was postulated by the developers of the eGFR that Black Americans' scores could be explained because Black Americans have more muscle mass and thus more creatine in their systems than White Americans.

5.      Based on this postulation, the creators of the eGFR added a race-based modifier to eGFR scores, known as the "race-based coefficient," which artificially inflates the scores of Black Americans by 16–18%. That is, eGFR is calculated irrespective of race, and then only for Black patients, the score is increased by 16–

18%, based upon the flawed premise that Black Americans have greater muscle mass and thus naturally have more creatine in their bodies.

6.      This, of course, is junk science supported only by racial stereotypes, and not any valid scientific studies. As described in an article titled *Systemic Kidney Transplant Inequities for Black Individuals: Examining the Contribution of Racialized Kidney Function Estimating Equations*, the theory supporting the race-based modification to Black patients' eGFR scores has "not been substantiated by rigorous scientific evidence[.]"

7.      Indeed, the United Network for Organ Sharing ("UNOS") recently admitted as much, posting the following passage on its website:



UNOS                                    Organ donors      Patients

**What are other issues with the race variable in eGFR?**

EGFR calculations rely on a binary approach to race. When the race variable is used in formulas, eGFR calculators only offer two response options: "Black" or "Not Black."

These options do not include a designation for mixed race or multi-racial individuals, and do not account for the existing genetic diversity within the Black population.  The concept of race is a social construct and an unreliable proxy for genetic difference, therefore not a biological marker or clinical measure.

8.      This is important because eGFR scores are used to determine when a patient is eligible to begin accruing wait time on the national kidney waitlist, maintained by UNOS, and wait time is a key factor in determining which patient will be awarded a kidney, as kidneys become available. Again, for an eGFR score to qualify a patient with kidney disease to accrue wait time, the eGFR score must fall below 20 ml/min.

9.      However, until recently, application of the race-based coefficient artificially increased Black patients' eGFR scores above that threshold such that

Black patients' unmodified eGFR scores must have fallen well below 20 ml/min before they began accruing wait time.

10.   Indeed, because of the race-based coefficient, many Black patients never began to accrue wait time because of a qualifying eGFR score, but were instead delayed until such time as they were forced to begin dialysis, the other possible triggering factor for wait time, which is recommended when kidney function falls below 15 ml/min, or when certain symptoms of kidney disease present themselves.

11.   It is true that UNOS recently announced it was outlawing use of the race-based coefficient when measuring eGFR scores. UNOS's announcements rightly admit the discriminatory nature of their past policy, but will also prove too little too late for many Black Americans currently suffering kidney failure.

12.   In this regard, UNOS announced its intent to change course and outlaw use of the race-based coefficient in June of 2022, but did nothing for more than six months to address the erroneous wait time calculations for Black Americans already on the national kidney waitlist.

13.   In January of 2023, UNOS did instruct donor hospitals to notify Black candidates of the policy change and investigate whether Black members of their donor lists were eligible for a wait time modification, but UNOS gave donor hospitals a year to complete this process, until January of 2024.

14.   Indeed, Cedars Sinai, the donor hospital for Plaintiff and 205 other Black Americans suffering from kidney disease, took no steps whatsoever to address erroneous wait time calculations, until March 27, 2023, when it advised members of its waitlist that the issue would be considered over "[o]ver the next several months[.]"

15.   Unfortunately, in the time between June of 2022 and January of 2024, tens of thousands of Black Americans will be prejudiced in their candidacy for a donor kidney by use of erroneous wait time calculations, missing out on donor

kidneys they rightfully should have been awarded, incurring significant economic losses, suffering from worsened kidney disease, and in some instances, dying.

16.     In other words, many Black Americans suffering from kidney disease did not have 18 months for UNOS to fix its wait time calculations, and during this period, Black Americans continue to suffer racial discrimination in the kidney donation process, despite all involved admitting that the current process is discriminatory to Black Americans.

17.     Plaintiff Anthony Randall is one such Black American that is currently on UNOS's national kidney transplant waitlist. Plaintiff, having suffered previous symptoms of kidney failure, took monthly eGFR tests for years, until such time as his eGFR score, despite continued application of the race-based coefficient, was low enough for him to begin accruing wait time on the national kidney waitlist.

18.     Plaintiff has now been on the national kidney transplant waitlist for more than five years, but upon information and belief, could have qualified to accrue wait time years earlier absent application of the race-based coefficient. As recently as December of 2022, Plaintiff was advised he "finished second" for a kidney, but upon information and belief, had Plaintiff's wait time been properly calculated, without regard to his race, Plaintiff would have already received a transplant kidney.

19.     New donor kidneys become available on a daily basis, and as Plaintiff's health deteriorates and he continues on dialysis, the failure to properly calculate Plaintiff's proper wait time such that he can be fairly considered for kidneys as they become available truly jeopardizes his life. The same is true for the other 205 Black patients at Cedars Sinai, and approximately 27,500 Black members of the national kidney waitlist.

## **PARTIES**

20.     Plaintiff Anthony Randall is an individual residing in Los Angeles, California.

21.    Plaintiff is informed and believes, and thereon alleges, that Defendant UNOS is a Virginia nonprofit corporation with its principal place of business in Richmond, Virginia.

22.    Plaintiff is informed and believes, and thereon alleges, that Defendant Cedars Sinai Health Ventures ("Cedars Sinai") is a California nonprofit corporation with its principal place of business in Los Angeles, California.

## **JURISDICTION AND VENUE**

23.    This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1332(d), and 1343 because Plaintiff asserts a federal cause of action alleging racial discrimination, and because at least one member of the putative classes defined hereinafter is a citizen of a different state than all Defendants, and the amount in controversy exceeds $5,000,000. This Court further has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367.

24.    Venue in this district is proper pursuant to 28 U.S.C. § 1391 because Plaintiff resides in this District and has been affected by Defendants' unlawful policies and procedures within the District, Cedars Sinai's principal place of business is within this District, and Cedars Sinai's alleged actions have occurred within the District. Defendants also apply their unlawful policies and procedures to additional putative class members residing within the District. Thus, a substantial part of the events or omissions that gave rise to the claims asserted herein occurred within this District.

25.    This Court has personal jurisdiction over UNOS because UNOS conducts operations within California by virtue of its management of the kidney donor list for all patients residing within the State, including Plaintiff. UNOS makes decisions as to which patients residing in California will be offered donor kidneys.

26.    This Court has personal jurisdiction over Cedars Sinai because Cedars Sinai maintains its principal place of business within the State, and harmed Plaintiff

by virtue of the unlawful conduct alleged herein within this State.

**GENERAL ALLEGATIONS**

A.     **The national kidney transplant waitlist is controlled by the Defendants, and wait time is the primary factor considered in awarding donor kidneys.**

27.     In 1984, Congress passed the National Organ Transplant Act, creating the Organ Procurement and Transplantation Network ("OPTN"), which was tasked with maintaining a national registry for organ matching. Per the Act, this registry was to be operated by a private, non-profit organization under Federal contract.[1]

28.     Since that time, UNOS has acted as that private, non-profit organization, and per its website, UNOS "[m]anag[es] the national transplant waiting list, matching donors to recipients 24 hours a day, 365 days a year." UNOS establishes and implements policy concerning how donor kidneys will be awarded to patients with kidney disease.

29.     To be placed on the national kidney transplant waitlist, a patient must first visit one of 200+ transplant hospitals, and receive a referral from their physician. In this way, the transplant hospitals, like Cedars Sinai, serve as a gatekeeper to patients seeking to be placed on the national kidney waitlist.

30.     The national kidney transplant waitlist is maintained using UNOS software, known as UNet. When a new patient is added to the waitlist, the referring hospital enters the patient's name and relevant medical information, including eGFR scores, into the UNet software, which tracks patient medical information and wait time.

31.     Each time a donor kidney becomes available, UNet's algorithm considers the information maintained in UNet, and generates a list of potential matches, ranking potential matches on the national kidney waiting list. These

---

[1] Patients can also seek a kidney from a private donor, such as a family member or friend, at the same time as they wait for a kidney on the national waitlist.

kidneys are then offered to patients through the transplant hospitals, in accordance with the UNet-generated rankings.

32.   Upon information and belief, the primary factor considered by UNet's algorithm to rank candidates for potentially compatible kidneys is a patient's accrued wait time. In other words, UNet will identify patients that are a medical match for a particular available kidney, and then rank those patients according to wait time.

33.   Importantly, referral to the waitlist does not automatically start the clock on qualifying wait time. To accrue qualifying wait time, generally a patient's eGFR score must either fall below 20 ml/min, or the patient must begin dialysis.

**B.**   **The Defendants applied a racially discriminatory coefficient to eGFR scores for Black patients.**

34.   Again, UNOS is responsible for enacting policy concerning the selection of which patients receive which donor kidneys. In this regard, UNOS offers as one if its strategic goals to "[p]rovide equity in access to transplants[.]" UNOS has fallen far short of its stated goal.

35.   For decades, the race-based coefficient was applied to artificially inflate eGFR scores for Black Americans, overstating their kidney function by 16–18%, based upon the underlying assumption that Black Americans have greater muscle mass and thus naturally have more creatine in their system.

36.   As noted above, patients do not begin accruing wait time on the national kidney waitlist until their eGFR score reaches 20 ml/min. But for Black patients, even when their unadjusted eGFR score fell below 20 ml/min, the race-based coefficient was applied to artificially inflate the Black patients' eGFR scores above 20 ml/min, preventing them from qualifying to accrue wait time. Thus, Black patients' eGFR scores had to fall well below 20 ml/min before they began to accrue wait time.

37.   UNOS policy encouraged and allowed for use of the race-based

coefficient, and UNOS knowingly used modified eGFR scores and manipulated wait times when ranking patients for kidney transplants. Specifically, UNOS is and has at all times been aware that its UNet software includes an algorithm that uses wait time as the primary factor in ranking patients for donor kidneys, and that its UNet software includes wait times for Black patients that have been manipulated by use of the race-based coefficient. To be clear, this modification was made to Black patients' eGFR scores entirely because of their race, and was not applied to other racial groups.

38.     There has never been any serious scientific research to support use of the race-based coefficient to artificially increase Black patients' eGFR scores. Instead, the race-based coefficient is based on eugenics-style racism and stereotypes that assume Black Americans are more physically fit than White Americans and other racial groups.

39.     Years before UNOS took any action to review its policy allowing for use of the race-based coefficient, the practice was criticized by doctors for its racially discriminatory nature. For example, in November of 2011, Dr. Toni Martin published an article in the *American Journal of Kidney Diseases* that questioned the practice, explaining that when she attempts to explain the policy to Black patients, she "get[s] a snort of disbelief[,]" and noting the history of purported genetic differences being used against Black Americans against a backdrop of "separate and unequal."

40.     Use of the race-based coefficient seriously diminishes Black patients' chances to receive a donor kidney, and for Black patients that defeat the odds and ultimately receive a kidney from the national waitlist, their waiting time is still increased. Indeed, because of this eGFR manipulation, many Black patients never qualified to accrue wait time because of their eGFR score, and only began to accrue wait time when they began dialysis.

41.     All other factors being equal, the above-described practices have

resulted in non-Black patients receiving numerous kidneys that would otherwise have been given to Black applicants had their wait time been calculated without consideration of race.

42.     The failure to receive donor kidneys has caused significant harm to Black Americans. The unfortunate reality is that many Black Americans have already passed away that would have survived if given fair consideration for a donor kidney.

43.     Other Black Americans have suffered worsened kidney disease and/or been forced to go on dialysis because of the lengthened wait time for a donor kidney. These Black Americans have suffered economic damages in the form of medical expenses and lost wages.

**C.     Even after UNOS admitted the race-based coefficient discriminates against Black Americans, Defendants failed to timely address the problem.**

44.     In June of 2022, UNOS admitted the racially discriminatory nature of the race-based coefficient for Black Americans, approving "a measure to require transplant hospitals to use a race-neutral calculation when estimating a patient's level of kidney function." In its press release, UNOS explained that

> For a number of years, some eGFR calculations have included a modifier for patients identified as Black. This practice has led to a systemic underestimation of kidney disease severity for many Black patients. Specifically in organ transplantation, it may have negatively affected the timing of transplant listing or the date at which candidates qualify to begin waiting time for a transplant.[2]

45.     UNOS policy officially changed on July 27, 2022, with UNOS policy prior to that time expressly allowing for use of the race-based coefficient to artificially increase Black patients' eGFR scores.

46.     Nonetheless, UNOS continued to use the race-based coefficient as a

---

[2] This Press release is publicly available at https://unos.org/news/optn-board-approves-elimination-of-race-based-calculation-for-transplant-candidate-listing/.

default. For more than six months, UNOS took no affirmative steps to adjust wait times and correct for previous use of the race-based coefficient.

47.     On January 5, 2023, UNOS announced a new policy that would require donor hospitals to provide two notifications to patients on the national kidney waitlist, one notifying patients that Black Americans will be considered for wait time adjustments where the race-based coefficient delayed their accrual of wait item, and a second notification confirming this process was completed and informing patients of their status. UNOS also directed donor hospitals to investigate which patients are eligible for a wait time adjustment, and request said adjustments within a year, i.e., by January of 2024.

48.     While this adjustment in policy rightfully acknowledges the problem, it lacks required urgency, and for the 27,500 Black Americans currently on the national kidney waitlist, such as Plaintiff, the policy change is too little too late. UNOS's policy concerning the race-based coefficient to eGFR scores was racially discriminatory before UNOS ever acknowledged the problem, and instead of making immediate changes, UNOS allowed member transplant hospitals approximately 18 months to identify and attempt to correct falsely-calculated wait times.

49.     During this period, Black Americans continue to suffer a race-based disadvantage in their candidacy for a donor kidney—UNet continuing to utilize the old, improperly calculated wait times when awarding kidneys.

**D.     Plaintiff has been discriminated against by the race-based coefficient to eGFR scores for years, and has never been awarded a kidney.**

50.     Plaintiff first discovered that he suffered from kidney disease approximately 24 years ago when he became ill and passed out, while in San Diego, California. For many years thereafter, Plaintiff's kidney disease was managed with medications.

51.     However, having been diagnosed with kidney disease, Plaintiff underwent monthly testing of his eGFR to determine his kidney function. Upon information and belief, at all times the race-based coefficient was used to artificially inflate Plaintiff's eGFR scores.

52.     Plaintiff's artificially inflated eGFR scores first qualified Plaintiff to begin accruing wait time on the national kidney waitlist in January of 2018. Plaintiff has remained on the waitlist since that time, now having been on the list for more than five years, but has never been awarded a donor kidney.

53.     Upon information and belief, Plaintiff's non-modified eGFR score fell below 20 ml/min, as is required to begin to accrue wait time, well before January of 2018.

54.     Accordingly, but for use of the race-based coefficient, Plaintiff would have begun to accrue wait time prior to January of 2018, entitling Plaintiff to an earlier spot in line that would have increased Plaintiff's chances to receive a donor kidney.

55.     Upon information and belief, but for the application of the race-based coefficient to Plaintiff's eGFR score, Plaintiff would have already received a donor kidney.

56.     In this regard, in December of 2022, Plaintiff received a call from Cedars Sinai telling him to rush to Cedars Sinai because a donor kidney was located. Plaintiff was held at the hospital for 17 hours, prepped for surgery, including not eating or drinking, only to be told that the donor kidney had been awarded to and implanted into another patient. Cedars Sinai only then explained that Plaintiff had been requested to rush to the hospital as an alternate, and that the kidney had been given to the first choice.

57.     However, at this time, Plaintiff's accrued wait time had not been recalculated to account for the delay caused by use of the race-based coefficient. Despite UNOS's clear admission in June of 2022 that the race-based coefficient is

racially discriminatory towards Black Americans, neither UNOS nor Cedars Sinai had taken any steps by December of 2022 to recalculate Plaintiff's wait time calculation.

58.     Upon information and belief, but for the racially discriminatory formula used to determine who would be awarded this particular kidney, resulting in an improper calculation of Plaintiff's wait time, Plaintiff would have been awarded and received a donor kidney in December of 2022, at the latest.

59.     Indeed, Cedars Sinai took no action whatsoever in response to UNOS's recent policy change until March 27, 2023, when Cedars Sinai sent notice that it would begin reviewing members of its kidney wait list to determine whether wait time adjustments were required "[o]ver the next several months[.]"

60.     Because this first notice was required to be "sent before the program's assessment of their list," and given the wording of the notice, it is clear that even after UNOS announced the race-based coefficient may no longer be used, Cedars Sinai sat on its hands and did not even begin the process to evaluate whether any of the members of its waitlist were entitled to a wait time adjustment for another nine months.

61.     As of the filing of this lawsuit, upon information and belief, Plaintiff's wait time continues to be incorrectly calculated in UNOS's UNet software, prejudicing Plaintiff's candidacy for a donor kidney from the national kidney waitlist.

**E.     As a result of not being awarded a kidney in the transplant market, Plaintiff has suffered significant economic harms.**

62.     Over the past years, Plaintiff's kidney disease has worsened significantly. In January of 2022, Plaintiff's condition worsened to the point that he became unable to work, and since that time, Plaintiff has been unable to return to work. This has caused Plaintiff significant economic harm in the form of lost wages and medical expenses, particularly ongoing dialysis costs.

## **CLASS ACTION ALLEGATIONS**

63.    Plaintiff brings this action on behalf of himself and the below-defined putative classes who are similarly situated under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

64.    The National Waitlist Class seeks damages and injunctive relief, and is defined as follows:

- All patients identified as Black on the national kidney waitlist, for whom the accrual of wait time was delayed by application of the race-based coefficient. This class excludes those patients pursuing personal injury or wrongful death claims.

65.    Additionally, Plaintiff brings this action on behalf of the subclasses defined below.

66.    The California Waitlist Class seeks damages and injunctive relief, and is defined as follows:

- All patients identified as Black on the national kidney waitlist, residing in California, for whom the accrual of wait time was delayed by application of the race-based coefficient. This class excludes those patients pursuing personal injury or wrongful death claims.

67.    The Cedars Sinai Waitlist Class seeks damages and injunctive relief, and is defined as follows:

- All patients identified as Black on the national kidney waitlist, for whom Cedars Sinai was their designated transplant hospital, and for whom the accrual of wait time was delayed by application of the race-based coefficient. This class excludes those patients pursuing personal injury or wrongful death claims.

68.    Upon information and belief, given that the national kidney waitlist includes approximately 27,500 Black Americans nationwide, the National Waitlist Class includes tens of thousands of members located throughout the United States.

69.    Upon information and belief, given that there are more than 2,000 Black members of the national kidney waitlist residing in California, the California Waitlist Class includes thousands of members located in California.

70.    Upon information and belief, and because Cedars Sinai represents that

206 of its patients are potentially eligible for wait time adjustments, the Cedars Sinai Class includes hundreds of members located in California.

71.     The identities of the members of the National Waitlist Class, California Waitlist Class, and Cedars Sinai Class are known or readily ascertainable by UNOS and Cedars Sinai, and the number of persons who fall within the definition of these classes are so numerous and geographically dispersed as to make joinder of all members of the National Waitlist Class, California Waitlist Class, or Cedars Sinai Class in their individual capacity impracticable, inefficient, and unmanageable so as to effectively deny each putative member of these classes his, her, or their right to obtain relief based on the claims and allegations made in this Complaint.

72.     There are common questions of law and fact as to the National Waitlist Class, California Waitlist Class, and Cedars Sinai Class, relating to and/or dispositive of the allegations of unlawful and misleading conduct made in the Complaint, and relating to and/or dispositive of the common pattern of alleged injury and harm caused by that unlawful and misleading conduct and sustained by the putative members of the classes, including, but not limited to:

- Whether UNOS discriminated against members of the classes on account of their race by encouraging and allowing for use of the race-based coefficient;

- Whether UNOS discriminated against members of the classes on account of their race by its knowing use of manipulated wait time data in the UNet algorithm;

- Whether UNOS's UNet algorithm was racially biased and led to delay for Black candidates seeking donor kidneys;

- Whether the disparate impact of UNOS's policy allowing for use of the race-based coefficient and the UNet algorithm was known to UNOS during the relevant time period, leading to the uniform disparate treatment of members of the classes;

- UNOS's knowledge of their practices and the discriminatory impact on the classes;

- Whether UNOS owes members of the national kidney waiting list a fiduciary duty, and whether the use of the race-based coefficient and manipulated wait times violated such a duty held by members of the classes.

- Whether Cedars Sinai discriminated against members of the Cedars Sinai classes on account of their race by encouraging and allowing for use of the race-based coefficient;

- Whether Cedars Sinai discriminated against members of the Cedars Sinai Class on account of their race by its failure to provide accurate wait time data for inclusion in UNet;

- Whether Cedars Sinai's failure to provide accurate wait time data for inclusion in UNet was racially biased and led to delay for Black candidates seeking donor kidneys;

- Whether the disparate impact of Cedars Sinai's failure to provide accurate wait time date for inclusion in UNet was known to Cedars Sinai during the relevant time period, leading to the uniform disparate treatment of the Cedars Sinai Class;

- Cedars Sinai's knowledge of their practices and the discriminatory impact on the Cedars Sinai Class;

- Whether Cedars Sinai owes its patients on the kidney waitlist a fiduciary duty, and whether Cedars Sinai's failure to provide accurate wait time information for use in UNet violated such a duty; and

- The length of the delay caused by use of the race-based coefficient and increased medical costs resulting therefrom.

73.     The interests of Plaintiff and the classes are aligned. Plaintiff seeks to establish that UNOS and Cedars Sinai are liable for economic injuries caused to Black patients by application the race-based coefficient. Should Plaintiff prevail in establishing the same, each of the other members of the classes would then be entitled to recover damages in compensation for their economic injuries.

74.     The claims of Plaintiff are typical of the claims of the members of the class and subclasses. Plaintiff is a Black member of the national kidney waitlist maintained by UNOS, whose accrual of wait time was delayed because of the use of the race-based coefficient, residing in California, and Cedars Sinai is Plaintiff's designated transplant hospital.

75.     Plaintiff's claims are typical of the other members of the classes because all class members were injured as a result of substantially similar conduct by UNOS and Cedars Sinai.

76.     Plaintiff is an adequate class representative because his interests do not

conflict with the interests of the other members of the classes. Plaintiff has retained counsel competent and experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously. The class's and subclass's interests will be fairly and adequately protected by Plaintiff and his counsel.

77.    The prosecution of separate actions by individual members of the class and subclasses would create a risk of inconsistent or varying adjudications.

78.    The questions of law and fact common to the members of the classes and subclasses predominate over any questions of law or fact affecting only individual members of the classes and subclasses. The primary claims to be proven in this case relate to whether UNOS and Cedars Sinai engaged in actionable discriminatory behavior by virtue of their use of the race-based coefficient and manipulated wait times in the formula to determine which patient receives a donor kidney. Moreover, the types of damages suffered by class members, such as increased dialysis costs, are uniform and can be calculated on a class-wide basis. These issues predominate over any individual issues, of which there appear to be few if any.

79.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender. Prosecution as a class action will eliminate the need for repetitious litigation—if it were even feasible for each member of the class and subclasses to proceed individually.

80.    Plaintiff is not aware of any similar cases filed against UNOS or Cedars Sinai.

81.    California is a proper and desirable forum for the claims against UNOS and Cedars Sinai to proceed. UNOS maintains the national kidney waitlist, but more than 23,000 members of that waitlist reside in California, a significant percentage of

all members of the waitlist. Moreover, Cedars Sinai and the Plaintiff are both located in California, and all the members of the subclasses are located in California.

82.     The classes and subclasses are readily definable by review of medical records that should exist in the files of UNOS and Cedars Sinai. Moreover, UNOS and Cedars Sinai should have records of the e-mail addresses, phone numbers, and addresses of members of the national kidney waitlist such that providing notice to the classes and subclasses will be practicable. Thus, there does not exist any significant likely difficulties in managing the claims as a class action.

## FIRST CAUSE OF ACTION

### (Violation of Title VI of the Civil Rights Act of 1964)

83.     Plaintiff re-alleges and incorporates herein by reference, as though set forth in full, each of the allegations set forth in paragraphs 1 through 82 above.

84.     This cause of action is brought by Plaintiff, the Nationwide Waitlist Class, the California Waitlist Class, and the Cedars Sinai Class against UNOS.

85.     UNOS receives significant financial assistance from the Federal government. Approximately 10% of UNOS's budget is provided by the Federal government, in accordance with the National Organ Transplant Act's authorization of $7,000,000/year to fund a private, non-profit entity such as UNOS.

86.     These contracts were intended by the Federal government to act as a subsidy to UNOS, not as compensation for any goods or services provided by UNOS to the Federal government, for which there are none.

87.     UNOS has engaged in racial discrimination. As alleged in detail above, UNOS allowed and encouraged use of the race-based coefficient to artificially inflate Black patients' eGFR scores, thus delaying their accrual of wait time, and prejudicing their chances of receiving a donor kidney.

88.     UNOS further knowingly used these modified wait times for Black patients in its UNet software, causing Black patients to be ranked lower for specific

donor kidneys vis-à-vis members of other races. Even after admitting the practice was racially discriminatory, UNOS failed to take prompt action to ensure Black patients' wait times were recalculated.

89.     The above-described racial discrimination damaged Plaintiff and members of the Nationwide Waitlist Class, the California Waitlist Class, and the Cedars Sinai Class by depriving and/or delaying their award of a donor kidney. This has caused Plaintiff and members of the Nationwide Waitlist Class, the California Waitlist Class, and the Cedars Sinai Class to incur economic injuries, including but not limited to, continued medical costs such as dialysis costs.

## SECOND CAUSE OF ACTION

### (Violation of the Unruh Civil Rights Act [California Civil Code § 51])

90.     Plaintiff re-alleges and incorporates herein by reference, as though set forth in full, each of the allegations set forth in paragraphs 1 through 89 above.

91.     This cause of action is brought by Plaintiff and members of the California Waitlist Class and the Cedars Sinai Class against UNOS and Cedars Sinai.

92.     Both UNOS and Cedars Sinai are "business establishments" as defined by the Unruh Civil Rights Act.

93.     Both UNOS and Cedars Sinai have engaged in racial discrimination against citizens of California, within California. As to UNOS, as alleged in detail above, UNOS allowed and encouraged use of the race-based coefficient to artificially inflate the eGFR scores of Black patients located within California, thus delaying their accrual of wait time, and prejudicing their chances to receive a donor kidney.

94.     UNOS further knowingly used these modified wait times for Black patients within California in its UNet software, causing said Black patients to be ranked lower for specific donor kidneys vis-à-vis members of other races. Even after admitting the practice was racially discriminatory, UNOS failed to take prompt

action to ensure Black patients' wait times were recalculated.

95.   Cedars Sinai knowingly submitted eGFR scores tainted by use of the race-based coefficient to UNOS for inclusion in its UNet algorithm, prejudicing its own Black patients' chances to receive a donor kidney. Even after UNOS changed course and outlawed use of the race-based coefficient, Cedars Sinai failed for more than nine months to take any action to recalculate its Black patients' wait times.

96.   Both Cedars Sinai and the members of the California Waitlist Class and Cedars Sinai Class are are located within California.

97.   The above-described racial discrimination damaged Plaintiff and members of the California Waitlist Class and the Cedars Sinai Class by depriving and/or delaying their award of a donor kidney. This has caused Plaintiff and members of the California Waitlist Class and the Cedars Sinai Class to incur economic injuries, including but not limited to, continued medical costs such as dialysis costs.

### THIRD CAUSE OF ACTION

### (Breach of Fiduciary Duty)

98.   Plaintiff re-alleges and incorporates herein by reference, as though set forth in full, each of the allegations set forth in paragraphs 1 through 97 above.

99.   This cause of action is brought by Plaintiff and members of the Nationwide Waitlist Class, the California Waitlist Class, and the Cedars Sinai Class against UNOS and Cedars Sinai.

100.   As the steward of the national kidney waitlist and the candidacy for a donor kidney for the Plaintiff and members of the Nationwide Waitlist Class, the California Waitlist Class, and the Cedars Sinai Class, UNOS owed Plaintiff and members of the Nationwide Waitlist Class, the California Waitlist Class, and the Cedars Sinai Class a fiduciary duty.

101.   As the transplant hospital for Plaintiff and members of the Cedars Sinai Class, Cedars Sinai owed Plaintiff and members of the Cedars Sinai Class a

fiduciary duty.

102.   Both UNOS and Cedars Sinai breached their fiduciary duties by engaging in racial discrimination against their fiduciaries. As to UNOS, as alleged in detail above, UNOS allowed and encouraged use of the race-based coefficient to artificially inflate the eGFR scores of Black patients located within California, thus delaying their accrual of wait time, and prejudicing their chances to receive a donor kidney.

103.   UNOS further knowingly used these modified wait times for Black patients within California in its UNet software, causing said Black patients to be ranked lower for specific donor kidneys vis-à-vis members of other races. Even after admitting the practice was racially discriminatory, UNOS failed to take prompt action to ensure Black patients' wait times were recalculated.

104.   Cedars Sinai breached its fiduciary duty by knowingly submitting eGFR scores tainted by use of the race-based coefficient to UNOS for inclusion in its UNet algorithm, prejudicing its own Black patients' chances to receive a donor kidney. Even after UNOS changed course and outlawed use of the race-based coefficient, Cedars Sinai failed for more than nine months to take any action to recalculate its Black patients' wait times.

105.   The above-described breaches of fiduciary duty damaged Plaintiff and members of the Nationwide Waitlist Class, the California Waitlist Class, and the Cedars Sinai Class by depriving and/or delaying their award of a donor kidney. This has caused Plaintiff and members of the Nationwide Waitlist Class, the California Waitlist Class, and the Cedars Sinai Class to incur economic injuries, including but not limited to, continued medical costs such as dialysis costs.

## FOURTH CAUSE OF ACTION

**(Violation of California's Unfair Competition Law [Cal. Bus. & Prof. Code § 17200 et seq.])**

106.   Plaintiff re-alleges and incorporates herein by reference, as though set

forth in full, each of the allegations set forth in paragraphs 1 through 105 above.

107.   This cause of action is brought by Plaintiff and members of the California Waitlist Class and the Cedars Sinai Class against UNOS and Cedars Sinai.

108.   UNOS and Cedars Sinai have committed acts of unfair competition, as defined by California Business and Professions Code § 17200, by engaging in the unlawful and discriminatory practices described above. Without limitation, UNOS and Cedars Sinai have discriminated against Black patients by their use of the race-based coefficient, which fails to give Black patients credit for the appropriate amount of wait time.

109.   This failure to properly calculate wait time has harmed Plaintiff, the California Waitlist Class, and the Cedars Sinai Class, because their chances to receive a donor kidney have been lessened. Indeed, as alleged above, on information and belief, Plaintiff was deprived of a donor kidney because UNOS and Cedars Sinai used a wait time calculation tainted by application of the race-based coefficient.

110.   Plaintiff and the members of the California Waitlist Class and Cedars Sinai Class all reside in California, and the discrimination against these persons occurred in California. Cedars Sinai is also located in California, and its alleged discriminatory conduct occurred in California.

111.   Plaintiff and the members of the California Waitlist Class and Cedars Sinai Class are without an adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the putative Nationwide Waitlist Class, California Waitlist Class, and Cedars Sinai Class pray for relief against UNOS and Cedars Sinai as follows:

1.   For preliminary and permanent injunctions enjoining and restraining UNOS and Cedars Sinai, their agents, employees, representatives, partners, joint

venturers, and/or anyone acting on behalf of, or in concert with UNOS or Cedars Sinai, from engaging in the above-described racial discrimination and breaches of fiduciary duty;

2.     For damages in compensation for the economic injuries suffered by the Plaintiff, the Nationwide Waitlist Class, California Waitlist Class, and Cedars Sinai Class, in an amount to be determined by evidence, but in excess of $5 million;

3.     For statutory damages and treble damages as allowed by the Unruh Act;

4.     For punitive damages in an amount according to proof;

5.     For pre-judgment interest on all damages awarded by this Court;

6.     For reasonable attorneys' fees and costs of suit incurred herein; and

7.     For such other and further relief as the Court deems just and proper.

DATED:  April 5, 2023                ELLIS GEORGE CIPOLLONE
                                     O'BRIEN ANNAGUEY LLP
                                     Matthew L. Venezia
                                     George B. A. Laiolo

                              By:     /s/ Matthew L. Venezia
                                     Matthew L. Venezia
                              Attorneys for Plaintiff Anthony Randall

# **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

DATED:  April 5, 2023

ELLIS GEORGE CIPOLLONE
O'BRIEN ANNAGUEY LLP
Matthew L. Venezia

By: _____*/s/ Matthew L. Venezia*_____
Matthew L. Venezia
George B. A. Laiolo
Attorneys for Plaintiff Anthony Randall