**LEWIS BRISBOIS BISGAARD & SMITH LLP**
JON P. KARDASSAKIS, SB# 90602
E-Mail: Jon.Kardassakis@lewisbrisbois.com
DANIELLE E. STIERNA, SB# 317156
E-Mail: Danielle.Stierna@lewisbrisbois.com
633 West 5th Street, Suite 4000
Los Angeles, California 90071
Telephone: 213.250.1800
Facsimile: 213.250.7900

Attorneys for Defendant, CEDARS-SINAI MEDICAL CENTER

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

ANTHONY RANDALL,

Plaintiff,

vs.

UNITED NETWORK FOR ORGAN SHARING; CEDARS-SINAI MEDICAL CENTER,

Defendants.

Case No. 2:23-CV-02576-MEMF (MAAx)

**Defendant Cedars-Sinai Medical Center's Memorandum of Points and Authorities in Support of its Motion to Dismiss Plaintiff's First Amended Class Action Complaint**

Filed Concurrently with Notice of Motion and Proposed Order

Date: Thursday, Aug. 17, 2023
Time: 10:00 a.m.
Crtrm.: 8B

Judge: Maame Ewusi-Mensah Frimpong

FSC Date: None Set
Trial Date: None Set



## TABLE OF CONTENTS

Page

I. Introduction ........ 1

II. Statement of Facts ........ 2

III. Legal Standard ........ 4

IV. The Statute of Limitations Have Expired for Each of Plaintiff's Claims Against Cedars-Sinai, Requiring Their Dismissal ........ 5

V. Plaintiff Has Not Alleged Cedars-Sinai Owed Him a Fiduciary Duty or Breached a Fiduciary Duty ........ 7

VI. Plaintiff Lacks Statutory Standing to Bring a UCL Claim ........ 10

VII. Conclusion ........ 11



# TABLE OF AUTHORITIES

**Page**

**Federal Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ... 5

*Beaver v. Tarsadia Hotels*, 816 F.3d 1170 (9th Cir. 2016) ... 6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ... 4, 5

*Brown v. Napa Valley Sch. Dist.*, No. C-11-5673 JCS, 2012 U.S. Dist. LEXIS 69943 (N.D. Cal. May 18, 2012) ... 5

*Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018) ... 10

*Frances v. Accessible Space, Inc.*, NO. 2:16-cv-1016-JAM-GGH, 2018 U.S. Dist. LEXIS 72546 (E.D. Cal. Apr. 28, 2018) ... 5

*Gilley v. JPMorgan Chase Bank, N.A.*, No. 12cv1774 AJB (JMA), 2012 U.S. Dist. LEXIS 189888 (S.D. Cal. Oct. 12, 2012) ... 5

*Hernandez v. Sutter West Capital*, No. C 09-03658 CRD, 2010 U.S. Dist. LEXIS 88109 (N.D. Cal. Aug. 26, 2010) ... 5

*Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001) ... 5

**State Cases**

*Aryeh v. Canon Business Solutions, Inc.*, 55 Cal. 4th 1185 (2013) ... 6

*Hongsathavij v. Queen of Angels etc. Medical Center*, 62 Cal. App. 4th 1123 (1998) ... 9

*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011) .......... 10

*Moore v. Regents of University of California*, 51 Cal. 3d 120 (1990) .......... 8, 9

*O'Byrne v. Santa Monica-UCLA Medical Center*, 94 Cal. App. 4th 797 (2001) .......... 9

*Pellegrini v. Weiss*, 165 Cal. App. 4th 515 (2008) .......... 7

*Thomson v. Canyon*, 198 Cal. App. 4th 594 (2011) .......... 6

*Weinberg v. Cedars-Sinai Medical Center*, 119 Cal. App. 4th 1098 (2004) .......... 9

**Statutes**

Cal. Bus. & Prof. Code § 809.05 .......... 9

Cal. Bus. & Prof. Code § 17204 .......... 10

Cal. Bus. & Prof. Code § 17208 .......... 6

California Unfair Competition Law ("UCL") (Cal. Bus. & Prof Code § 17200 et seq.) .......... 1, 2, 5, 6, 7, 10, 11

Code of Civil Procedure § 343 .......... 6

National Organ Transplant Act .......... 3

Unruh Civil Rights Act (Cal. Civ. Code § 51 et seq.) .......... 1, 5, 6

**Court Rules**

FED. R. CIV. P. 8(a) .......... 5, 10

FED. R. CIV. P. 8(a)(2) .......... 5

FED. R. CIV. P. 9(b) .......... 10

FED. R. CIV. P. 12(b)(6) .......... 4, 10, 11

# I. INTRODUCTION

This case is a putative class action related to the waitlist for donor kidneys. The variables that factor into how donor kidney organs are distributed to patients on the waitlist are numerous and complex. They not only include who has been on the waitlist longest but also other considerations such as whose condition is most deteriorated and whether the donor organ and potential recipient are a genetic match.

Plaintiff Anthony Randall alleges he is an African American male with kidney disease. He seeks to hold two entities in the transplant medical community liable for racial discrimination for following the at-the-time medically accepted standard of care for a lab test used in relation to kidney function. One means of assessing kidney function is through a lab test. Past scientific studies resulted in a coefficient being applied to the kidney function lab test result for African American patients. Recently, the medical community questioned the scientific studies underlying the use of a race-coefficient in the lab test calculation and has now determined they are not sufficiently scientifically supported and should no longer be followed as the standard of care. Plaintiff did not seek to impose liability for what he alleges is racial discrimination until the medical community re-evaluated the science behind the kidney function lab test calculation and determined it should no longer be followed. As Plaintiff alleges, before he filed this suit the transplant community was already taking steps to change the lab test result factor as it applies to patients with kidney disease and reassess each patient's place on the transplant waitlist.

There are two defendants in this case, the United Network for Organ Sharing ("UNOS") and Cedars-Sinai Medical Center ("Cedars-Sinai"). While Plaintiff alleges four claims in his First Amended Complaint ("FAC"), he only alleges three claims against Cedars-Sinai: (1) violation of the Unruh Civil Rights Act (Cal. Civ. Code § 51 *et seq.*); (2) breach of fiduciary duty; and (3) violation of the California

Unfair Competition Law ("UCL") (Cal. Bus. & Prof Code § 17200 *et seq.*). FAC ¶¶ 84 (first cause of action against defendant UNOS only), 91 (second cause of action against both defendants), 99 (third cause of action against both defendants), 107 (fourth cause of action against both defendants).

The claims against Cedars-Sinai must be dismissed because the statute of limitations has expired for each claim. Additionally, Plaintiff does not show Cedars-Sinai owed him a fiduciary duty that it violated, and he lacks statutory standing to bring a UCL claim.

## II. STATEMENT OF FACTS

An estimated glomerular filtration rate ("eGFR") laboratory test is one method used to determine and measure kidney function. FAC ¶ 3. If a person's eGFR score is below a certain number, it indicates their kidney function is failing and this is one factor that is used to determine if and when that individual should be placed on the donor transplant waitlist. FAC ¶ 3. Another factor that affects when a kidney disease patient is added to the waitlist is when the patient begins dialysis, which can occur if the patient shows symptoms of kidney failure. FAC ¶¶ 10, 33. Scientific studies were done years ago that determined African Americans have certain genetic factors that indicate their GFR score is better than the lab test's estimated result suggests. FAC ¶ 4. Plaintiff alleges that because of this, the creators of the eGFR calculation method included a coefficient to be multiplied against the lab results for the eGFR test score for African Americans, which increased the kidney function score. FAC ¶ 5. Until recently this method of calculating eGFR scores was the medically accepted standard of care for patients with kidney disease.

Plaintiff is a "Black American that is currently on UNOS's national kidney transplant waitlist." FAC ¶ 17. He "suffered previous symptoms of kidney failure, took monthly eGFR tests for years, until such time as his eGFR score, despite continued application of the race-based coefficient, was low enough for him to

begin accruing wait time on the national kidney waitlist." FAC ¶ 17. He alleges he has "been on the national kidney transplant waitlist for more than five years." FAC ¶ 18. He alleges, upon information and belief (with no facts alleged to explain the basis for that information and belief), that he could have gone on the waitlist "years earlier absent application of the race-based coefficient." FAC ¶ 18. He "finished second" when a donor kidney became available in December 2022 and alleges upon information and belief, that if his eGFR score had been calculated without the race-based coefficient, he would have received that kidney. FAC ¶ 18. He does not allege what "information and belief" that allegation is based on or any information about the individual who received that kidney including their race, how long that patient was on the waitlist, whether that patient was a closer match for the donor kidney, etc.

According to the First Amended Complaint: "[i]n 1984, Congress passed the National Organ Transplant Act, creating the Organ Procurement and Transplantation Network ('OPTN'), which was tasked with maintaining a national registry for organ matching." FAC ¶ 27. The Act requires "a private, non-profit organization under Federal contract," to run the national registry and UNOS has been that entity. FAC ¶ 28. UNOS uses software called UNet to maintain the national waitlist. FAC ¶ 30. "To be placed on the national kidney transplant waitlist, a patient must first visit one of 200+ transplant hospitals, and receive a referral from their physician." FAC ¶ 29. Cedars-Sinai is a transplant hospital and is his donor hospital. FAC ¶¶ 14, 29. "When a new patient is added to the waitlist, the referring hospital enters the patient's name and relevant medical information, including eGFR scores, into the UNet software, which tracks patient medical information and wait time." FAC ¶ 30.

"Each time a donor kidney becomes available, UNet's algorithm considers the information maintained in UNet, and generates a list of potential matches." FAC ¶ 31. Plaintiff alleges, upon information and belief, that "UNet will identify patients that are a medical match for a particular available kidney, and then rank those

patients according to wait time." FAC ¶ 32. In addition to being referred to a transplant hospital, to be added to the waitlist "generally a patient's eGFR score must either fall below 20 ml/min or the patient must begin dialysis." FAC ¶ 33. A patient can receive a recommendation to start dialysis either because of an eGFR score or "when certain symptoms of kidney disease present themselves." FAC ¶ 10.

"UNOS establishes and implements policy concerning how donor kidneys will be awarded to patients with kidney disease." FAC ¶ 28. UNOS announced its decision to "outlaw use of the race-based coefficient in June of 2022." FAC ¶ 12. "In January of 2023, UNOS did instruct donor hospitals to notify Black candidates of the policy change and investigate whether Black members of their donor lists were eligible for a wait time modification, but UNOS gave donor hospitals a year to complete this process." FAC ¶ 13. On March 27, 2023, "Cedars-Sinai, the donor hospital for Plaintiff and 205 other Black Americans suffering from kidney disease… advised members of its waitlist that the issue would be considered [] "over the next several months." FAC ¶ 14.

Plaintiff proposes three classes, a National Waitlist Class, a California Waitlist Class, and a Cedars-Sinai Waitlist Class. FAC ¶¶ 64-67. Only the Cedars-Sinai Waitlist Class appears to apply to Cedars-Sinai. Plaintiff defines the subclass as: "All patients identified as Black on the national kidney waitlist, for whom Cedars-Sinai was their designated transplant hospital, and for whom the accrual of wait time was delayed by application of the race-based coefficient. This class excludes those patients pursuing personal injury or wrongful death claims." FAC ¶ 67.

## III. Legal Standard

A court must dismiss a complaint under Rule 12(b)(6) if the alleged facts do not entitle the plaintiff to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 560-61 (2007). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements

of a cause of action will not do." *Id.* at 555. Nor is a court "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Legal conclusions "must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "'Naked assertions' devoid of 'further factual enhancement'" are not enough to survive dismissal. *Id.* at 678. Rather, a plaintiff is required to show, through facts alleged, an entitlement to relief. *Id.* at 679 (citing FED. R. CIV. P. 8(a)(2)). Allegations made upon information and belief that are not substantiated with facts do not pass Rule 8(a)'s plausibility standard, which requires more than a sheer possibility of unlawful conduct. *Id.* at 678.

## IV. THE STATUTE OF LIMITATIONS HAVE EXPIRED FOR EACH OF PLAINTIFF'S CLAIMS AGAINST CEDARS-SINAI, REQUIRING THEIR DISMISSAL

Plaintiff alleges three claims against Cedars-Sinai: (1) violation of the Unruh Civil Rights Act; (2) breach of fiduciary duty; and (3) violation of the UCL. FAC ¶¶ 84, 91, 99, 107. His allegations show the statute of limitations for all three claims against Cedars-Sinai, the longest being four years, have already expired.

The Unruh Civil Rights Act does not include a provision expressly specifying the statute of limitations. Courts typically apply either a two-year statute of limitations based on claims of personal injury, or a three-year statute of limitations for claims based on statutory provisions. *Brown v. Napa Valley Sch. Dist.*, No. C-11-5673 JCS, 2012 U.S. Dist. LEXIS 69943, *27 (N.D. Cal. May 18, 2012) (stating Unruh Act has no statute of limitations and citing Ninth Circuit cases that applied both two and three years); *Hernandez v. Sutter West Capital*, No. C 09-03658 CRD, 2010 U.S. Dist. LEXIS 88109, *7-8 (N.D. Cal. Aug. 26, 2010) (noting the statute of limitations for an Unruh Act claim is an open question and applying a two-year limit); *Gilley v. JPMorgan Chase Bank, N.A.*, No. 12cv1774 AJB (JMA), 2012 U.S. Dist. LEXIS 189888, *15 (S.D. Cal. Oct. 12, 2012) (applying two year limit based on parties' agreement); *Frances v. Accessible Space, Inc.*, NO. 2:16-cv-1016-JAM-

GGH, 2018 U.S. Dist. LEXIS 72546, *19 (E.D. Cal. Apr. 28, 2018) (citing cases and finding most district courts apply three-year limitations period).

"The code of civil procedure does not specify a statute of limitations for breach of fiduciary duty." *Thomson v. Canyon*, 198 Cal. App. 4th 594, 606 (2011). Unless the gravamen of the claim is for a different kind of claim, section 343 of the Code of Civil Procedure provides a "residual four-year statute of limitations." *Id.* The gravamen of the claim here appears to be the same as the alleged discrimination underlying the Unruh Act claim.

The statute of limitations for a UCL claim is four years. *Aryeh v. Canon Business Solutions, Inc.*, 55 Cal. 4th 1185, 1192 (2013) (citing Cal. Bus. & Prof. Code § 17208). The four-year limitations period applies even if the UCL claim is based on a violation of some other law. *Beaver v. Tarsadia Hotels*, 816 F.3d 1170, 1177 (9th Cir. 2016) (citation omitted). Thus, the longest limitations period for the claims alleged against Cedars-Sinai is four years.

Plaintiff alleges the race-based coefficient in the eGFR calculation has been used for decades. FAC ¶ 35. He alleges its use was "criticized by doctors for its racially discriminatory nature," and questioned by Dr. Toni Martin in an article published in the *American Journal of Kidney Diseases* in November 2011. FAC ¶ 39. Plaintiff alleges since at least 2011, members of the medical community specializing in kidney disease were publicly questioning and criticizing the standard of care used in calculating eGFR test scores. Plaintiff alleges the use of the race-coefficient in eGFR test scores was explained to patients with kidney disease who were waiting to be placed on the organ donor transplant waitlist. FAC ¶ 39. According to Plaintiff, Dr. Martin explained in her article "that when she attempts to explain the policy to Black patients, she 'gets a snort of disbelief.'" FAC ¶ 39. Plaintiff alleges he has been on the waitlist for at least five years, when his "artificially inflated eGFR scores first qualified [him] to begin accruing wait time..." FAC ¶ 52. Plaintiff alleges he "could have qualified to accrue wait time years

earlier absent application of the race-based coefficient." FAC ¶ 18.

Plaintiff filed his initial complaint on April 5, 2023. Dkt. No. 1. His allegations show the alleged discriminatory practice of using a lab test calculation with a race-based coefficient has been in place for decades, it has been questioned in the public forum since at least 2011 by medical practitioners, and he was harmed by the practice more than five years ago because it prevented him from being added to the waitlist earlier than January 2018 and accruing additional years of wait time. Plaintiff does not allege when he believes his eGFR score without the race-based coefficient would have qualified him to be added to the waitlist or how many years of additional wait time would have accrued. Regardless, because he alleges his harm occurred years earlier than five years ago when he should have been placed on the waitlist but was not, he has pled himself out of the statute of limitations for each of his claims against Cedars-Sinai. The Unruh Act claim, breach of fiduciary duty claim, and UCL claim against Cedars-Sinai should be dismissed with prejudice.

## V. PLAINTIFF HAS NOT ALLEGED CEDARS-SINAI OWED HIM A FIDUCIARY DUTY OR BREACHED A FIDUCIARY DUTY

A claim for breach of fiduciary duty requires "(1) the existence of a fiduciary duty; (2) a breach of the fiduciary duty; and (3) resulting damage." *Pellegrini v. Weiss*, 165 Cal. App. 4th 515, 524 (2008) (citation omitted). Plaintiff alleges "[a]s the transplant hospital for Plaintiff and members of the Cedars-Sinai Class, Cedars-Sinai owed Plaintiff and members of the Cedars-Sinai Class a fiduciary duty." FAC ¶ 101. Plaintiff alleges Cedars-Sinai breached this duty "by knowingly submitting eGFR scores tainted by use of the race-based coefficient to UNOS for inclusion in its UNet algorithm, prejudicing its own Black patients' chances to receive a donor kidney." FAC ¶ 104. Plaintiff suggests Cedars-Sinai's not informing patients on the waitlist until March 2023 that it would consider the issue of the eGFR test score recalculations was also a breach of the alleged fiduciary duty. FAC ¶ 104. But Plaintiff also alleges the race-based coefficient was used for decades to calculate

eGFR test scores. FAC ¶ 35. This is because its use was the accepted standard of care by the medical community for patients with kidney disease. Plaintiff's claim boils down to Cedars-Sinai followed accepted medical practice and allowed doctors to follow accepted medical practice. Although that medical practice is no longer accepted, the fact of the matter is science progresses. New studies are done, new discoveries are made, previously accepted theories are disproved, and new theories are postulated. The advances made in science are not a basis for determining a fiduciary duty was owed by a medical center and violated when the accepted science available at the time is later disproved or replaced.

Plaintiff is incorrect as a matter of law that Cedars-Sinai owed a fiduciary duty to him that it breached. The California Supreme Court held defendants who were not physicians (including the Regents of the University of California which owned and operated the UCLA Medical Center) in a case involving medical research did not stand "in a fiduciary relationship with [plaintiff] or ha[ve] the duty to obtain [plaintiff's] consent to medical procedures." *Moore v. Regents of University of California*, 51 Cal. 3d 120, 133 (1990). That case involved a doctor performing research on human cells who did not fully disclose his interest in the research he was performing or its relation to a medical procedure he recommended to the plaintiff patient. *Moore*, 51 Cal. 3d at 125-28. The California Supreme Court noted, even for the doctor who did have a fiduciary duty to the plaintiff, "the term 'fiduciary' is too broad. In this context the term 'fiduciary' signifies only that a physician must disclose all facts material to the patient's decision." *Moore*, 51 Cal. 3d at 131 n.10. "As we have already discussed, the reason why a physician must disclose possible conflicts is not because he has a duty to protect his patient's financial interests, but because certain personal interests may affect professional judgment." *Id.*

Plaintiff's counsel stated during the meet and conferral process in preparation for this motion that three cases support Plaintiff's position that Cedars-Sinai owed a

fiduciary duty to this Plaintiff despite *Moore* finding non-physicians do not stand in a fiduciary relation to patients. But all three of those cases relate to the duty a medical center has to oversee the peer review process when one of its physicians is disciplined for failing to provide adequate care. *Weinberg v. Cedars-Sinai Medical Center*, 119 Cal. App. 4th 1098 (2004); *O'Byrne v. Santa Monica-UCLA Medical Center*, 94 Cal. App. 4th 797 (2001); *Hongsathavij v. Queen of Angels etc. Medical Center*, 62 Cal. App. 4th 1123 (1998). Significantly, the statute imposing this duty requires that the peer review process include licentiates, not just administrators who are not doctors, review the alleged misconduct of the doctor under review. Cal. Bus. & Prof. Code § 809.05. This shows there is no basis to infer a medical center has a duty to question the standard of medical care the reviewing doctors apply, only a duty to ensure the standard of care is upheld, the physician gets due process, and the public is ultimately protected from doctors who fail to meet the accepted standard of medical care by enforcing medical staff rules and bylaws. Cal. Bus. & Prof. Code § 809.05. These three cases are inapposite because Plaintiff does not allege Cedars-Sinai failed to oversee its medical staff through proper disciplinary proceedings.

Contrary to Plaintiff's position, these cases do not stand for the proposition that a medical center owes a fiduciary duty to patients to review the science underlying accepted medical standards of care in place at the time. While the medical community has now changed the standard of care for calculating eGFR test scores and is working to update records and recalculate waitlist times across the nation, this is not a basis to find a breach of a fiduciary duty by Cedars-Sinai. Rather, it shows Cedars-Sinai is responding to advances in scientific understanding and medical care along with the rest of the medical community. Plaintiff fails to allege a fiduciary duty or breach of a fiduciary duty by Cedars-Sinai. This claim should be dismissed.

///

///

## VI. PLAINTIFF LACKS STATUTORY STANDING TO BRING A UCL CLAIM

Plaintiff's UCL claim is based on allegations of unfair and unlawful conduct. FAC ¶ 108. He does not appear to allege fraud, which would subject his UCL claim to the heightened Rule 9(b) pleading standard in addition to Rule 8(a) and 12(b)(6). *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018). Standing to bring this claim requires that Plaintiff must have "lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204; *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 320-21 (2011). Plaintiff alleges experiencing "economic harm in the form of lost wages and medical expenses, particularly ongoing dialysis costs." FAC ¶ 62. He does not allege when he started dialysis but he does allege he was first added to the waitlist in January 2018 because of his eGFR test scores. FAC ¶ 52. This suggests he started dialysis after his eGFR test score got him on the waitlist because he alleges beginning dialysis is the other trigger to get a kidney disease patient on the waitlist. FAC ¶ 10. Plaintiff alleges he has kidney disease. FAC ¶ 17. Kidney failure causes the need for dialysis. Because Plaintiff's disease is what caused his need for dialysis, not an alleged unfair competition business practice by Cedars-Sinai, he has not alleged he lost money or property as a result of an alleged unfair business practice. Nor does he allege the dialysis services he received cost more than they otherwise should have or that Cedars-Sinai was involved in providing his dialysis treatment or charging for that treatment. Nor does he allege what his other "medical expenses" were that resulted from an alleged unfair business practice by Cedars-Sinai. As for his asserted lost wages, he alleges his kidney disease required him to stop working in January 2022. FAC ¶ 62. This also is not a result of an alleged unfair business practice by Cedars-Sinai but his underlying medical condition. In short, Plaintiff does not allege the use of a race-based coefficient to calculate eGFR scores for Plaintiff resulted in his need for dialysis, medical expenses, or his need to stop working, thus these economic harms which did not result from an alleged unfair business practice cannot support

his standing to bring his UCL claim. This claim against Cedars-Sinai must be dismissed.

## VII. CONCLUSION

Plaintiff fails to allege sufficient facts to support his claims, requiring dismissal under Rule 12(b)(6). Because the parties met and conferred and Plaintiff was made aware of these defects but elected to not amend, Cedars-Sinai respectfully requests this case be dismissed with prejudice because amendment would be futile.

DATED: May 26, 2023

JON P. KARDASSAKIS
DANIELLE E. STIERNA
LEWIS BRISBOIS BISGAARD & SMITH LLP

By: /s/ Danielle E. Stierna
DANIELLE E. STIERNA
Attorneys for Defendant, CEDARS-SINAI MEDICAL CENTER

