Shawn R. Obi (SBN: 288088)
sobi@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Daniel M. Blouin (admitted *pro hac vice*)
dblouin@winston.com
Thomas G. Weber (admitted *pro hac vice*)
tgweber@winston.com
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

Attorneys for Defendant
UNITED NETWORK FOR
ORGAN SHARING

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY RANDALL,<br><br>Plaintiff,<br><br>v.<br><br>UNITED NETWORK FOR ORGAN SHARING and CEDARS-SINAI MEDICAL CENTER,<br><br>Defendants. | Case No. 2:23-CV-02576-MEMF-MAA<br><br>**DEFENDANT UNITED NETWORK FOR ORGAN SHARING'S NOTICE OF MOTION, MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: July 20, 2023<br>Time: 10:00 a.m.<br>Courtroom: Courtroom 8B – 8th Floor<br>　　　　United States Courthouse<br>　　　　350 W. First Street<br>　　　　Los Angeles, CA 90012<br>Judge: Hon. Maame Ewusi-Mensah Frimpong |

1    TO THE COURT AND ALL ATTORNEYS OF RECORD:

2         Please take notice that on July 20, 2023 at 10:00 a.m., or as soon thereafter as the matter may

3    be heard, in the courtroom of the Honorable Judge Maame Ewusi-Mensah Frimpong, Courtroom 8B

4    – 8th Floor, United States Courthouse, 350 W. First Street, Los Angeles, CA 90012, Defendant

5    United Network for Organ Sharing ("UNOS") will, and hereby does, move for an order dismissing

6    Plaintiff's First Amended Complaint as to UNOS pursuant to Federal Rules of Civil Procedure

7    12(b)(1) and (6).  UNOS seeks dismissal of all claims asserted against it.

8         This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum

9    of Points and Authorities, the pleadings on file in this action, and such other matters as may be

10   properly presented to the Court at the time of hearing.

11        This Motion is made following the conference of counsel of record pursuant to Local Rule

12   7-3.

13

14   Dated:  May 26, 2023                    WINSTON & STRAWN LLP

15                                      By:  /s/ Daniel M. Blouin

16                                           Shawn R. Obi (SBN: 288088)
                                             sobi@winston.com
17                                           Winston & Strawn LLP
                                             333 S. Grand Avenue
18                                           Los Angeles, CA 90071-1543
                                             Telephone: (213) 615-1700
19                                           Facsimile: (213) 615-1750

20                                           Daniel M. Blouin (admitted *pro hac vice*)
                                             dblouin@winston.com
21                                           Thomas G. Weber (Admitted *pro hac vice*)
                                             tgweber@winston.com
22                                           Winston & Strawn LLP
                                             35 W. Wacker Drive
23                                           Chicago, IL 60601-9703
                                             Telephone: (312) 558-5600
24                                           Facsimile: (312) 558-5700

25                                           Attorneys for Defendant
                                             UNITED NETWORK FOR
26                                           ORGAN SHARING

27

28

# **TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

FACTUAL BACKGROUND ................................................................................................ 3

LEGAL STANDARD ............................................................................................................ 6

ARGUMENT ......................................................................................................................... 7

    I.     Plaintiff Lacks Standing to Seek Injunctive Relief. ...................................... 7

    II.    Each Claim Asserted in the FAC Is Barred by Applicable Statutes of Limitations. ................................................................................................... 9

    III.   UNOS Did Not Engage in Actionable Discrimination. .............................. 11

    IV.   Counts II (Unruh Act) and III (UCL) Should Be Dismissed Because Plaintiff Cannot Plausibly Allege that UNOS Was Operating as a Private Business. ............. 14

    V.    Plaintiff's UCL Claim Fails for Lack of an Available Remedy. ................ 15

    VI.   Count IV Should be Dismissed Because Plaintiff Does Not—and Cannot— Plausibly Allege a Fiduciary Relationship with UNOS. .............................. 16

CONCLUSION .................................................................................................................... 17

i

DEFENDANT UNITED NETWORK FOR ORGAN SHARING'S NOTICE OF MOTION, MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – CASE NO. 2:23-CV-02576-MEMF-MAA

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdulkarim Janahi v. Zuberi*,
  2022 WL 2101728 (C.D. Cal. Mar. 11, 2022) ............................................................9

*Abramyan v. GEICO Ins. Co.*,
  2017 WL 950489 (E.D. Cal. Mar. 10, 2017) .............................................................9

*Acad. of Motion Picture Arts and Scis. v. GoDaddy.com, Inc.*,
  2015 WL 12684340 (C.D. Cal. Apr. 10, 2015) .........................................................8

*Annunziato v. Guthrie*,
  2021 WL 5015496 (C.D. Cal. Oct. 26, 2021) ...........................................................16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ....................................................................................................6

*Awadan v. Reebok Corp. Headquarter*,
  2017 WL 3394116 (E.D. Cal. Aug. 8, 2017) ...........................................................13

*Barlow v. Arizona*,
  2021 WL 2474607 (D. Ariz. Feb. 23, 2021) ............................................................10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ....................................................................................................6

*Berryman v. Merit Prop. Mgmt., Inc.*,
  152 Cal. App. 4th 1544 (Cal. Ct. App. 2007) .........................................................16

*Bonelli v. Grand Canyon Univ.*,
  28 F.4th 948 (9th Cir. 2022) .......................................................................................9

*Brandon v. Nat'l R.R. Passenger Corp. Amtrak*,
  2013 WL 800265 (C.D. Cal. Mar. 1, 2013) ........................................................8, 15

*Brennon B. v. Super. Ct.*,
  13 Cal. 5th 662 (Cal. 2022) ......................................................................................14

*Brown v. Reese*,
  2013 WL 5929903 (D. Ariz. Nov. 5, 2013) ...............................................................9

*Chandler v. State Farm Mut. Auto Ins. Co.*,
  598 F.3d 1115 (9th Cir. 2010) ....................................................................................6

ii

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983)............................................................................................7

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013)..........................................................................................7

*Cooley v. City of Los Angeles*,
   2019 WL 3766554 (C.D. Cal. Aug. 5, 2019)............................................14, 15

*Daniels-Hall v. Nat'l Educ. Ass'n*,
   629 F.3d 992 (9th Cir. 2010) .............................................................................6

*Dillon v. NBCUniversal Media LLC*,
   2013 WL 3581938 (C.D. Cal. June 18, 2013) ...............................................14

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
   528 U.S. 167 (2000)..........................................................................................7

*Gallardo v. AT&T Mobility, LLC*,
   937 F. Supp. 2d 1128 (N.D. Cal. 2013) ............................................................9

*Gardner v. Fed. Express Corp.*,
   114 F. Supp. 3d 889 (N.D. Cal. 2015) ............................................................13

*GCB Comms., Inc. v. U.S. S. Comms., Inc.*,
   650 F.3d 1257 (9th Cir. 2011) ...........................................................................8

*Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc.*,
   742 F.3d 414 (9th Cir. 2014) ...........................................................................11

*Hamilton and High, LLC v. City of Palo Alto*,
   89 Cal. App. 5th 528 (Cal. Ct. App. 2023) .....................................................10

*Hand v. Jones*,
   2021 WL 4690589 (C.D. Cal. Feb. 12, 2021)..................................................11

*Hernandez v. Wells Fargo Bank, N.A.*,
   2019 WL 1601388 (C.D. Cal. Jan. 28, 2019) ..................................................13

*Hodges v. Apple, Inc.*,
   2013 WL 6698762 (N.D. Cal. Dec. 19, 2013)................................................6, 7

*Ice Cream Distribs. of Evansville, LLC v. Dreyer's Grand Ice Cream, Inc.*,
   487 F. App'x 362 (9th Cir. 2012) ...............................................................15, 16

*Johnson v. Rosvin, Inc.*,
   2022 WL 1987857 (N.D. Cal. June 6, 2022)....................................................6

iii

*Koebke v. Bernardo Heights Country Club*,
    36 Cal. 4th 824 (Cal. 2005)..........................................................................11

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (Cal. 2003)..............................................................15, 16

*Lukovsky v. City and Cnty. of San Francisco*,
    535 F.3d 1044 (9th Cir. 2008) .........................................................9, 10

*Mandel v. Bd. of Trustees of Cal. State Univ.*,
    2018 WL 1242067 (N.D. Cal. Mar. 9, 2018)..............................................12

*Massey v. Biola Univ., Inc.*,
    2020 WL 2476173 (C.D. Cal. Apr. 10, 2020) ...................................9, 13

*Massey v. Biola Univ., Inc.*,
    2020 WL 5898804 (C.D. Cal. Aug. 21, 2020), *R. & R. adopted*, 2020 WL
    6161451 (C.D. Cal. Oct. 20, 2020), *aff'd*, 2022 WL 671021 (9th Cir. Mar. 7,
    2022) ............................................................................................................12

*Mejia v. Chipotle Mexican Grill, Inc.*,
    793 F. App'x 519 (9th Cir. 2019) .............................................................13

*MH Pillars Ltd. v. Realini*,
    2017 WL 916414 (N.D. Cal. Mar. 8, 2017).............................................14

*Montecino v. Spherion Corp.*,
    427 F. Supp. 2d 965 (C.D. Cal. 2006) ....................................................9

*Negrete v. Fidelity & Guardian Life Ins. Co.*,
    444 F. Supp. 2d 998 (C.D. Cal. 2006) ..................................................16

*Pembaur v. City of Cincinnati*,
    475 U.S. 469 (1986)...................................................................................13

*Phillips v. U.S. Customs & Border Prot.*,
    2021 WL 2587961 (C.D. Cal. June 22, 2021) ............................................7

*Rodriguez v. Ralphs Grocery Co.*,
    2021 WL 4295292 (S.D. Cal. Sept. 21, 2021)............................................8

*Rotella v. Wood*,
    528 U.S. 549 (2000)....................................................................................9

*Safe Air for Everyone v. Meyer*,
    373 F.3d 1035 (9th Cir. 2004) ..................................................................6

*Schlesinger v. S.F. Ass'n of Realtors*,
    2021 WL 5037677 (N.D. Cal. Oct. 29, 2021)...........................................6

iv

*Son Hong v. Mary Read*,
   2020 WL 7344828 (C.D. Cal. Oct. 26, 2020) .......................................................12

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014) ...............................................................................................7

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ..................................................................................7

*That v. Alders Maint. Ass'n*,
   206 Cal. App. 4th 1419 (Cal. Ct. App. 2012) .......................................................15

*Thomas v. Mundell*,
   572 F.3d 756 (9th Cir. 2009) ..................................................................................7

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021) ............................................................................................7

*Turner v. City and Cnty. of San Francisco*,
   788 F.3d 1206 (9th Cir. 2015) ................................................................................6

*United States v. Cnty. of Maricopa, Ariz.*,
   889 F.3d 648 (9th Cir. 2018) ...........................................................................12, 13

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ................................................................................7

*Warfield v. Peninsula Golf & Country Club*,
   10 Cal. 4th 594 (1995) ..........................................................................................14

*White v. Lee*,
   227 F.3d 1214 (9th Cir. 2000) ................................................................................6

*Willis v. City of Carlsbad*,
   48 Cal. App. 5th 1104 (Cal. Ct. App. 2020) ........................................................10

*Zamorano v. San Jacinto*,
   2012 WL 12886821 (C.D. Cal. Oct. 22, 2012) ....................................................10

**Statutes**

42 U.S.C. § 274(b)(1)(A) ................................................................................................1

42 U.S.C. § 2000d ........................................................................................................11

Cal. Bus. & Prof. Code § 17200 *et seq.* .............................................................. *passim*

Cal. Bus. & Prof. Code § 17203 ...................................................................................15

v

Cal. Bus. & Prof. Code § 17208 ...................................................................9

Cal. Civ. Code § 51 .....................................................................................14

Cal. Civ. Code § 51(b) ................................................................................11

Cal. Civ. Code § 343 ....................................................................................9

Civil Rights Act of 1964 Title VI ....................................................... *passim*

Unruh Civil Rights Act ....................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 9(b) ......................................................................................6

Fed. R. Civ. P. 12(b)(1) ...............................................................................6

Fed. R. Civ. P. 12(b)(6) ...............................................................................6

vi

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Years ago, Congress recognized the need for a national system to oversee the allocation of donated organs. It directed the Secretary of Health & Human Services ("HHS") to provide for the establishment and operation of such a system. Both Congress and the Secretary recognized that transplant policy is best left in the hands of medical experts, in consultation with the patients, donors, and families who are most affected by it. For this reason, Congress instructed the Secretary to provide for the establishment of an Organ Procurement and Transplantation Network ("OPTN") by contracting with a "private nonprofit entity that has an expertise in organ procurement and transplantation." 42 U.S.C. § 274(b)(1)(A). For the past 39 years, the United Network for Organ Sharing ("UNOS") has been privileged to serve as the implementing arm of the OPTN under contract with the Secretary. UNOS is a private, nonprofit entity with a membership and Board that includes voices from every corner of the transplant community.

Plaintiff Anthony Randall alleges that he had been accruing wait time on the national kidney transplant waitlist since January 2018. His counsel recently confirmed that Plaintiff received a kidney transplant in May 2023.[1] In his First Amended Complaint ("FAC"), Plaintiff claims that UNOS discriminated against him by permitting transplant hospitals, including co-defendant Cedars-Sinai Medical Center ("Cedars-Sinai"), to use a race-conscious eGFR.[2] Plaintiff alleges that use of a race-conscious eGFR actually impaired his position on the organ waitlist, and by extension, how soon he would receive an organ transplant. Based upon these allegations, Plaintiff advances four claims: (1) violation of Title VI of the Civil Rights Act of 1964; (2) violation of the Unruh Civil

---

[1] *See* Declaration of Daniel M. Blouin in Support of Defendant United Network for Organ Sharing's Motion to Dismiss Plaintiff's First Amended Complaint ("Blouin Decl.") at ¶ 3.

[2] An individual's GFR (glomerular filtration rate) measures kidney function, which is one of many factors involved in determining an individual's ability to begin accruing wait time on the national kidney waitlist. For example, if an individual is not supported by regularly administered dialysis, an individual can be registered on the kidney transplant list but is nevertheless ineligible to begin accruing wait time on the list until he or she has a GFR less than 20 ml/min. eGFR (estimated glomerular filtration rate) is one way to measure GFR.

1

1    Rights Act ("Unruh Act"); (3) breach of fiduciary duty; and (4) violation of California's Unfair

2    Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*

3        At the crux of the FAC is Plaintiff's request to enjoin UNOS from allowing transplant

4    hospitals to use a race-conscious eGFR.  Although his request is not completely clear, Plaintiff

5    apparently also seeks an order requiring UNOS to instruct transplant hospitals to recalculate organ

6    candidate wait times affected by the previous use of a race-conscious eGFR.  But the OPTN has

7    already approved—and UNOS has already implemented—policies that provide the relief Plaintiff

8    now seeks from the Court—and it did so before Plaintiff filed his complaint.  Moreover, Plaintiff has

9    now received an organ transplant and thus cannot credibly assert a risk of ongoing personal harm

10   absent injunctive relief.  For both reasons, Plaintiff does not have standing to seek injunctive relief.

11       Even aside from these threshold issues, each of the asserted claims is defective on its face.

12   First, each claim is barred by the applicable statutes of limitations.  The longest potentially

13   applicable period is four years.  Plaintiff's claims accrued no later than January 2019, when he first

14   began accruing wait time on the kidney transplant waitlist.  Thus, Plaintiff was required to file his

15   Complaint no later than January 2023.  He missed this cutoff by about four months.

16       Next, each claim should be dismissed because Plaintiff fails to allege sufficient facts to

17   establish that UNOS engaged in any actionable discrimination.  Notably, Plaintiff does not and

18   cannot properly allege that UNOS required or even encouraged transplant hospitals to use a race-

19   conscious eGFR.  UNOS simply collects the eGFR value that the transplant hospitals submit.

20   Without a showing of willful and affirmative discrimination, deliberate indifference, or an official

21   policy that sanctioned discrimination, each of the claims asserted against UNOS fails.

22       Plaintiff's Unruh Act and UCL claims against UNOS also should be dismissed because

23   Plaintiff does not—and cannot—plausibly allege that UNOS was operating as a private business

24   while managing the national transplant waitlist.  To state a claim under the Unruh Act, a plaintiff

25   must allege that the defendant was engaging in commercial activity when it engaged in the purported

26   discrimination.  Similarly, California's UCL statute applies only to commercial or business-like

27   activities and is intended to promote fair competition in commercial markets.  Once again, Plaintiff

28

2

1   does not sufficiently allege that UNOS was engaging in commercial activity when it allegedly

2   discriminated against him.  To the contrary, it is undisputed that UNOS is a private, nonprofit entity

3   that operates as the implementing arm of the OPTN under a federal contract.  Plaintiff cannot

4   credibly assert that administration of the national transplant system is a commercial activity.

5         The asserted UCL claim should be dismissed for the additional reason that there is no

6   available remedy.  Because Plaintiff lacks standing to seek injunctive relief, the only remaining

7   potential remedy under the UCL is restitution.  In the FAC, Plaintiff seeks to recover "lost wages

8   and medical expenses," neither of which is recoverable as restitution from UNOS.

9         Finally, Plaintiff cannot sue for breach of fiduciary duty, as he does not identify a contractual

10  or other basis for establishing any fiduciary relationship with UNOS.  Given his failure to satisfy this

11  foundational requirement, Plaintiff's breach of fiduciary duty claim cannot stand.

12        In short, Plaintiff's claims fail both for standing reasons and on the merits.  UNOS

13  respectfully requests that the Court grant its motion and dismiss each of the claims asserted against

14  UNOS, with prejudice.

15                          **FACTUAL BACKGROUND**

16        In 1984, Congress passed the National Organ Transplant Act ("NOTA"), creating the OPTN,

17  a private, nonprofit entity tasked with maintaining a national registry for organ matching.  Dkt. 12,

18  FAC ¶ 27.  Since that time, UNOS—a private, nonprofit corporation—has operated as the

19  implementing arm of the OPTN under a federal contract, as required by the Act.  *Id.* at ¶¶ 27–28.

20        In its role as the implementing arm of the OPTN, UNOS manages the national transplant

21  waitlist, matching donors to recipients 24 hours a day, 365 days a year.  *Id.* at ¶ 28.  To provide this

22  public service, UNOS uses a software application known as UNet, which—as required by NOTA—

23  is designed so that each time a deceased donor organ becomes available, UNet's algorithm generates

24  a ranked list of potential matches from the national transplant waitlist, based on OPTN organ

25  allocation policy criteria.  *Id.* at ¶¶ 30–31.  Transplant organs are offered to patients through

26  transplant hospitals—such as Cedars-Sinai—in accordance with such OPTN-required rankings.  *Id.*

27  Plaintiff alleges that the primary factor considered by the OPTN kidney allocation policy in ranking

28

3

1    candidates for potentially compatible organ transplants is a patient's accrued "wait time"—i.e., the

2    amount of time that has passed since a patient first qualified to accrue wait time on the national

3    transplant waitlist.  *Id.* at ¶ 32.

4        To be placed on the national transplant waitlist, a patient must first visit a transplant hospital

5    to be evaluated for transplantation by his or her physician.  *Id.* at ¶ 29.  In this way, transplant

6    hospitals—according to Plaintiff—serve as a gatekeeper to patients seeking to be placed on the

7    national transplant waitlist.  *Id.*  Indeed, although UNOS maintains the national transplant waitlist,

8    UNOS necessarily relies on transplant hospitals to provide relevant medical information for each

9    patient.  *Id.* at ¶ 30.

10       When a patient seeks a kidney transplant, the patient's kidney function is among the relevant

11   medical information that transplant hospitals measure.  *Id.* at ¶¶ 3, 30.  One way that transplant

12   hospitals determine a patient's kidney function is to calculate an "estimated glomerular filtration

13   rate," commonly referred to as an "eGFR."  *Id.*  Once calculated, the hospital inputs the data into the

14   UNet software.  *Id.*  Although a patient may be registered on the national kidney waitlist, a patient's

15   eGFR can impact when the patient is eligible to begin accruing wait time on the list.  Specifically, if

16   a patient is not supported by regularly administered dialysis, a patient registered on the national

17   kidney waitlist will not begin accruing wait time on that list until his or her GFR falls equal to or

18   below 20 ml/min.  *Id.* at ¶ 3.

19       Plaintiff took monthly GFR tests since discovering approximately 24 years ago that he

20   suffered from kidney disease.  *Id.* at ¶¶ 17, 50–51.  He alleges that in January 2018 his required

21   eGFR—as calculated by Cedars-Sinai—fell below the threshold limit of 20 ml/min for the first time,

22   and thus he began accruing wait time on the national kidney waitlist from that point forward.[3]  *Id.* at

23   ¶¶ 17, 50, 52, 95, 104.  Plaintiff remained on the waitlist until May 2023, when he received a donor

24

25

26   [3] Contrary to Plaintiff's allegations in ¶ 52 of the FAC, UNOS's records indicate that Plaintiff first
     began accruing wait time on the kidney transplant waitlist in January 2019.  This factual
27   discrepancy, however, essentially is irrelevant because each of the asserted claims is barred
     regardless of whether Plaintiff's claims accrued in January 2018 or January 2019.  *See infra*, Section
28   II.

kidney.[4]  Plaintiff alleges that his kidney disease had worsened over the past few years, which allegedly caused him economic harm in the form of lost wages and medical expenses.  *Id.* at ¶ 62.

Plaintiff contends that but for use of a race-conscious eGFR, he would have begun accruing wait time on the national kidney waitlist sooner than January 2018.  *Id.* at ¶¶ 5, 9, 35, 52–54, 95, 104.  Plaintiff alleges that Cedars-Sinai's use of a race-conscious eGFR was based upon the flawed premise that Black Americans have greater muscle mass, and thus naturally have more creatinine in their bodies.  *Id.* at ¶¶ 5, 35.

Importantly, Plaintiff concedes that it was the transplant hospitals themselves—not UNOS— that decided whether to use a race-conscious (as opposed to a race-neutral) eGFR in determining kidney function.  *Id.* at ¶¶ 37, 87, 93, 102.  In July 2022 (before this lawsuit began), UNOS—as the implementing arm of the OPTN—adopted a policy prohibiting transplant hospitals from using a race-conscious eGFR.  *Id.* at ¶¶ 11–12, 45.  Further, in December 2022, the OPTN adopted a policy permitting candidates potentially affected by use of a race-conscious eGFR to apply for wait-time modifications.  The policy took effect in January 2023, and UNOS accordingly requested transplant hospitals to investigate whether any current members on their candidate lists—including Plaintiff— were eligible for wait-time modifications.  *Id.* at ¶¶ 13, 47.

Plaintiff commenced this action against UNOS and Cedars-Sinai on April 5, 2023 (*see* Dkt. 1, Compl.), and then filed the FAC on April 21, 2023 (*see* Dkt. 12, FAC).  Plaintiff asserts claims for violations of Title VI, the Unruh Act, and the UCL, and for breach of fiduciary duty.  For the reasons outlined above and explained below, Plaintiff's claims against UNOS should be dismissed with prejudice.

---

[4] Plaintiff alleges in the FAC that—at the time of filing—he had yet to receive a donor kidney.  *See* FAC ¶ 52.  As stated above, that allegation is no longer correct.  In connection with the mandatory meet-and-confer discussion pursuant to Local Rule 7-3, UNOS learned—and counsel for Plaintiff confirmed—that Plaintiff recently received a kidney transplant.  *See* Blouin Decl. at ¶¶ 3–4. UNOS's counsel requested that Plaintiff voluntarily dismiss the FAC or otherwise seek leave to file a Second Amended Complaint to alert the Court to the key fact regarding Plaintiff's kidney transplant.  *See id.* at ¶ 4.  Plaintiff's counsel elected not to do so.  *See id.*

1

## LEGAL STANDARD

2      "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Schlesinger v. S.F. Ass'n of*

3   *Realtors*, 2021 WL 5037677, at *2 (N.D. Cal. Oct. 29, 2021) (quoting *Safe Air for Everyone v.*

4   *Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)).  "[I]n a factual attack, the challenger disputes the truth

5   of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* (quoting

6   *Safe Air*, 373 F.3d at 1039).  "The district court may review evidence beyond the complaint to

7   resolve a factual attack on jurisdiction." *Johnson v. Rosvin, Inc.*, 2022 WL 1987857, at *2 (N.D.

8   Cal. June 6, 2022) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)); *see also Safe Air*, 373

9   F.3d at 1039 (noting that such a review does not "convert[] the motion to dismiss into a motion for

10   summary judgment").  "The party asserting federal subject matter jurisdiction has the burden of

11   proving the existence of jurisdiction." *Schlesinger*, 2021 WL 5037677, at *2 (citing *Chandler v.*

12   *State Farm Mut. Auto Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010)).

13      To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege "enough facts to state a

14   claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

15   The facts alleged must "allow[] the court to draw the reasonable inference that the defendant is liable

16   for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of

17   the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  "In

18   assessing whether a party has stated a claim upon which relief can be granted, a court must take all

19   allegations of material fact as true and construe them in the light most favorable to the nonmoving

20   party." *Turner v. City and Cnty. of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015).  But the

21   Court need not accept as true allegations that contradict documents referred to in the complaint or

22   matters subject to judicial notice.  *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir.

23   2010).  Nor must the Court accept as true allegations that are conclusory, unwarranted deductions of

24   fact, or unreasonable inferences.  *See id.*

25      Moreover, "fraud claims are subject to a higher standard and must be pleaded with

26   particularity." *See Hodges v. Apple, Inc.*, 2013 WL 6698762, at *3 (N.D. Cal. Dec. 19, 2013) (citing

27   Fed. R. Civ. P. 9(b)).  "Such claims 'must be specific enough to give defendants notice of the

28

particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.'" *Id.* (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007)).  This is true of UCL claims grounded in fraud, "which must 'be accompanied by the who, what, when, where, and how of the misconduct charged.'" *Id.* (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103, 1106 (9th Cir. 2003)).

## ARGUMENT

### I.   Plaintiff Lacks Standing to Seek Injunctive Relief.

"Standing is a necessary element of federal-court jurisdiction[.]"  *Thomas v. Mundell*, 572 F.3d 756, 760 (9th Cir. 2009).  "[A] plaintiff must demonstrate standing separately for each form of relief sought."  *Phillips v. U.S. Customs & Border Prot.*, 2021 WL 2587961, at *5 (C.D. Cal. June 22, 2021) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000); *see also TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021) ("[S]tanding is not dispensed in gross[.]").

A plaintiff "seeking injunctive relief must show that it is likely that they will suffer future injury from the conduct sought to be enjoined."  *Id.* (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 106 (1983)).  "That future injury cannot be speculative."  *Id.* (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)) (citation omitted).  Rather, it must be "certainly impending," or there must be a "substantial risk that the harm will occur."  *Id.* (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014)).

At the crux of the FAC is Plaintiff's request to enjoin UNOS from allowing transplant hospitals to use a race-conscious eGFR when determining kidney function.  *See* FAC ¶¶ 87–88, 93–94, 102–03, 108, Prayer for Relief ¶ 1.  Plaintiff apparently also seeks an order requiring UNOS to instruct transplant hospitals to recalculate organ-candidate wait times.  *See id.* at ¶¶ 57, 88, 94–95, 103.  But Plaintiff does not have legal standing to pursue such relief.  Given that Plaintiff received a kidney transplant in May 2023, he cannot credibly claim a risk of future harm absent injunctive relief.  *See Phillips*, 2021 WL 2587961, at *5.

7

Further, even before receiving the kidney transplant, Plaintiff had no basis to seek the requested injunctive relief against UNOS, as the OPTN had already approved—and UNOS had already implemented—policies that provide the relief Plaintiff now seeks from the Court:

> "UNOS recently announced it was outlawing use of the race-based coefficient when measuring eGFR scores. . . . UNOS announced its intent to change course and outlaw use of the race-based coefficient in June of 2022. . . . UNOS policy officially changed on July 27, 2022 . . . ."

FAC ¶¶ 11–12, 45.

> "On January 5, 2023, UNOS announced a new policy that would require [transplant] hospitals to provide two notifications to patients on the national kidney waitlist, one notifying patients that Black Americans will be considered for wait time adjustments where the race-based coefficient delayed their accrual of wait [ti]me, and a second notification confirming this process was completed and informing patients of their status.  UNOS also directed [transplant] hospitals to investigate which patients are eligible for a wait time adjustment, and request said adjustment within a year, i.e., by January of 2024."

*Id.* at ¶ 47.

Given UNOS's actions prior to the initiation of this lawsuit, Plaintiff's requested injunctive relief is moot.  *See Brandon v. Nat'l R.R. Passenger Corp. Amtrak*, 2013 WL 800265, at *4 (C.D. Cal. Mar. 1, 2013) ("The Ninth Circuit has found that a claim becomes moot where 'an opposing party has agreed to everything the other party has demanded.'"  (quoting *GCB Comms., Inc. v. U.S. S. Comms., Inc.*, 650 F.3d 1257, 1267 (9th Cir. 2011))); *see also Acad. of Motion Picture Arts and Scis. v. GoDaddy.com, Inc.*, 2015 WL 12684340, at *12 (C.D. Cal. Apr. 10, 2015) ("[C]ourts have held that a voluntary abandonment of a long-standing practice in response to litigation generally moots a claim for injunctive relief under California's UCL."); *Rodriguez v. Ralphs Grocery Co.*, 2021 WL 4295292, at *10 (S.D. Cal. Sept. 21, 2021) (claim for injunctive relief moot where defendant "had in place a policy [to address an alleged ADA violation]" and such policy "predate[d] [the] [p]laintiff filing his complaint").

Because Plaintiff lacks standing to seek an injunction, the Court should strike Plaintiff's prayer for injunctive relief.

8

## II.       Each Claim Asserted in the FAC Is Barred by Applicable Statutes of Limitations.

The longest statute of limitations for any of the asserted claims is four years.  *See Massey v. Biola Univ., Inc.*, 2020 WL 2476173, at *8 (C.D. Cal. Apr. 10, 2020) (noting that the "limitations period for Plaintiff's Title VI claim is two years" where California is forum state); *Abramyan v. GEICO Ins. Co.*, 2017 WL 950489, at *2 (E.D. Cal. Mar. 10, 2017) (applying two-year statute of limitations to Unruh Act claim); *Abdulkarim Janahi v. Zuberi*, 2022 WL 2101728, at *5 (C.D. Cal. Mar. 11, 2022) ("Breach of fiduciary duty claims have a four-year statute of limitations under C.C.P. § 343."); *Montecino v. Spherion Corp.*, 427 F. Supp. 2d 965, 967 (C.D. Cal. 2006) ("The statute of limitations for an action brought under the UCL is four years.") (citing Cal. Bus. & Prof. Code § 17208).

Federal law governs when Plaintiff's Title VI claim accrued, and state law governs when Plaintiff's Unruh Act, breach of fiduciary duty, and UCL claims accrued.  *See Gallardo v. AT&T Mobility, LLC*, 937 F. Supp. 2d 1128, 1138–39 (N.D. Cal. 2013) ("A federal court hearing state law claims over which it has supplemental jurisdiction must apply state substantive law in adjudicating those claims. . . .  Both state statute of limitations and issues relating to tolling are considered substantive state law which federal courts must apply in such cases.").  Whether applying federal or state law, however, the result is the same: Plaintiff's claims against UNOS accrued no later than January 2019.

Title VI claims accrue when "the plaintiff knows or has reason to know of the actual injury." *Bonelli v. Grand Canyon Univ.*, 28 F.4th 948, 952–53 (9th Cir. 2022) (citing *Lukovsky v. City and Cnty. of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008)).  Under this rule, "discovery of the injury, not discovery of [the] other elements of a claim, is what starts the clock."  *Brown v. Reese*, 2013 WL 5929903, at *4 (D. Ariz. Nov. 5, 2013) (quoting *Rotella v. Wood*, 528 U.S. 549, 555 (2000)).  Here, Plaintiff's Title VI claim accrued no later than January 2019, when Plaintiff began accruing wait time on the national kidney waitlist.[5]  The delay in his accruing wait time on the

---

[5] As mentioned above, according to UNOS's internal records, Plaintiff first began accruing wait time on the national kidney waitlist in January 2019, not January 2018 as Plaintiff alleges (FAC ¶ 52). UNOS's counsel informed Plaintiff's counsel of this factual inaccuracy in the FAC. In any event, because the longest statute of limitations for any of Plaintiff's claims is four years, Plaintiff's claims

9

—

1   national kidney waitlist—of which Plaintiff was aware—constituted Plaintiff's alleged actual injury.

2   This remains the case even if, at that time, Plaintiff did not know about an allegedly discriminatory

3   motive underlying the delay.  *See Zamorano v. San Jacinto*, 2012 WL 12886821, at *3 (C.D. Cal.

4   Oct. 22, 2012) ("Plaintiffs contend that their civil rights claims accrued in April 2011, when they

5   discovered the legal injury of discriminatory intent behind the delay in approving their

6   application. . . .  The City, on the other hand, argues that the claims accrued no later than May 2009,

7   when Plaintiffs' application was ultimately approved, because the delay in approval constituted the

8   actual injury. . . .  [T]he Court agrees with the City; Plaintiffs' claims accrued no later than May

9   2009."); *Lukovsky*, 535 F.3d at 1051 ("In this case, as the district court found, the claim accrued

10  when the plaintiffs received notice they would not be hired . . . .  At this point, the plaintiffs knew

11  they had been injured and by whom, even if at that point in time the plaintiffs did not know of the

12  legal injury, i.e., that there was an allegedly discriminatory motive underlying the failure to hire.").[6]

13  Put differently, the limitations period starts when the "actual injury" occurred, not when Plaintiff

14  discovered the alleged discriminatory intent.

15      Under state law, a "cause of action accrues when [it] is complete with all of its elements—

16  those elements being wrongdoing, harm, and causation."  *Willis v. City of Carlsbad*, 48 Cal. App.

17  5th 1104, 1124 (Cal. Ct. App. 2020).  In other words, a cause of action accrues when the "party

18  owning it is entitled to begin and prosecute an action thereon."  *Hamilton and High, LLC v. City of*

19  *Palo Alto*, 89 Cal. App. 5th 528, 557 (Cal. Ct. App. 2023) (quotation omitted).  Taken at face value,

20  the allegations in the FAC establish that Plaintiff could have asserted a violation of the Unruh Act,

21  breach of fiduciary duty, and violation of the UCL each time the use of a race-conscious eGFR

22  delayed him from accruing wait time on the national kidney waitlist, with the last such instance

23  occurring no later than January 2019.  *See* FAC ¶ 52.  As a result—like his Title VI claim—

24  would still be time-barred even had they not accrued until January 2019.

25  [6] *See also Barlow v. Arizona*, 2021 WL 2474607, at *6 (D. Ariz. Feb. 23, 2021) ("Plaintiff was
26  denied certification on December 17, 2017, and then again on May 16, 2018 after a hearing with the
    ALJ.  It is quite clear to the Court that Plaintiff knew or had reason to know of his injury—the denial
27  of his certification—on December 17, 2017 and that his claims began to accrue on that date.  The
    fact that he claims to not have known of the allegedly discriminatory motive behind [the denial of
28  his certification] until later is not relevant to when the claims began to accrue." (citations omitted)).

10

DEFENDANT UNITED NETWORK FOR ORGAN SHARING'S NOTICE OF MOTION, MOTION TO DISMISS PLAINTIFF'S FIRST
AMENDED COMPLAINT, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – CASE NO. 2:23-CV-
02576-MEMF-MAA

1   Plaintiff's Unruh Act, breach of fiduciary duty, and UCL claims also accrued no later than January

2   2019.

3          Because Plaintiff's claims against UNOS accrued no later than January 2019, the latest

4   Plaintiff could have filed any of his claims was January 2023.  This suit was filed four months later,

5   in April 2023.  Accordingly, all of Plaintiff's claims are time-barred and should be dismissed.

6   **III.    UNOS Did Not Engage in Actionable Discrimination.**

7          Plaintiff posits that one of "[t]he primary claims to be proven in this case relate[s] to whether

8   UNOS . . . engaged in actionable discriminatory behavior . . . ."  FAC ¶ 78.  Indeed, whether UNOS

9   engaged in alleged discrimination is a foundational requirement for each of the asserted claims.  *See*

10  *id.* at ¶¶ 87–88 (Count I), 93–94 (Count II), 102–03 (Count III), 108 (Count IV).  As discussed

11  below, Plaintiff does not sufficiently allege that UNOS engaged in any actionable discrimination.

12         The Unruh Act provides that "[a]ll persons within the jurisdiction of [California] are free and

13  equal, and no matter what their . . . race [or] color . . . are entitled to the full and equal

14  accommodations, advantages, facilities, privileges, or services in all business establishments of

15  every kind whatsoever."  *See* Cal. Civ. Code § 51(b).  The California Supreme Court has explained

16  that the Unruh Act "contemplates '*willful, affirmative misconduct* on the part of those who violate

17  the Act.'"  *Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 425

18  (9th Cir. 2014) (emphasis added) (quoting *Koebke v. Bernardo Heights Country Club*, 36 Cal. 4th

19  824, 853 (Cal. 2005)).  Accordingly, to state a claim under the Unruh Act, a plaintiff "must plead . . .

20  intentional discrimination."  *Id.* at 425 (internal quotations omitted).

21         Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or

22  national origin, be excluded from participation in, be denied the benefits of, or be subjected to

23  discrimination under any program or activity receiving Federal financial assistance."  42 U.S.C.

24  § 2000d.  To state a claim under Title VI, a plaintiff must allege that "(1) the entity involved is

25  engaged in racial discrimination, and (2) the entity involved is receiving [federal] financial

26  assistance."  *Hand v. Jones*, 2021 WL 4690589, at *7 (C.D. Cal. Feb. 12, 2021).  In turn, a plaintiff

27  can state a claim under Title VI by alleging (1) direct discrimination; (2) a defendant's deliberate

28

11

1   indifference to known acts of discrimination; or (3) acts of discrimination caused by a defendant's

2   official policy.  *See United States v. Cnty. of Maricopa, Ariz.*, 889 F.3d 648, 652 (9th Cir. 2018)

3   (entity "can be held liable under Title VI if an official with power to take corrective measures is

4   'deliberately indifferent to known acts' of discrimination" and "for acts of discrimination that result

5   from its own 'official policy'").

6          Plaintiff's entire case rests on the idea that transplant hospitals—like Cedars-Sinai—

7   improperly used a race-conscious eGFR, which allegedly delayed the time at which Black patients

8   could begin accruing wait time on the kidney transplant list.  FAC ¶ 5.  Noticeably absent from the

9   FAC, however, are any allegations that UNOS developed or even encouraged use of a race-

10   conscious eGFR.  The absence of any such allegations effectively torpedoes any assertion that

11   UNOS engaged in any willful, affirmative discrimination.

12          Similarly, the FAC does not contain sufficient facts to establish UNOS was deliberately

13   indifferent to any alleged discrimination.  "To meet this high standard there must, in essence, be an

14   official decision not to remedy the violation and this decision must be clearly unreasonable."

15   *Mandel v. Bd. of Trustees of Cal. State Univ.*, 2018 WL 1242067, at *19 (N.D. Cal. Mar. 9, 2018).

16   Plaintiff fails to clear this threshold.  Importantly, excluding any conclusory allegations, the FAC

17   contains no facts addressing whether UNOS even knew whether Cedars-Sinai was or was not using a

18   race-conscious eGFR to determine Plaintiff's kidney function.[7]

19

20   _____

21   [7]  At most, Plaintiff attempts to allege that UNOS may have had *constructive* knowledge that
     some—but not which—hospitals may have been using a race-conscious eGFR when determining the

22   kidney function of Black Americans.  *See, e.g.*, FAC ¶¶ 6 (quoting article from January 2021 on
     topic of race-conscious eGFR), 39 (quoting article from November 2011 on topic of race-conscious

23   eGFR); *see also* FAC ¶ 44 ("In its [June 2022] press release, UNOS explained that '[f]or a number
     of years, *some* eGFR calculations have included a modifier for patients identified as Black."

24   (emphasis added)).  But a defendant's *actual* knowledge—not constructive knowledge—is what
     matters under Title VI's "deliberate indifference" standard.  *See Son Hong v. Mary Read*, 2020 WL

25   7344828, at *21 (C.D. Cal. Oct. 26, 2020) ("Entities cannot be held liable [for deliberate
     indifference] under Title VI . . . absent 'actual notice' . . . ."  (emphasis added)); *see also Massey v.*

26   *Biola Univ., Inc.*, 2020 WL 5898804, at *8 (C.D. Cal. Aug. 21, 2020) (recommending dismissal of
     Title VI claim based on deliberate indifference where "allegations of the SAC coupled with the

27   documents attached to the SAC [were] insufficient to show that Defendant had *actual* notice of the
     alleged discriminatory conduct . . . ."  (emphasis added)), *R. & R. adopted*, 2020 WL 6161451 (C.D.

28   Cal. Oct. 20, 2020), *aff'd*, 2022 WL 671021 (9th Cir. Mar. 7, 2022).

1     Plaintiff's claims also fail under Title VI's "official policy" standard, which is "intended to

2  ensure that a[n] [entity's] liability 'is limited to acts that are, properly speaking, acts of the [entity]—

3  that is, acts which the [entity] has officially sanctioned or ordered.'" *Cnty. of Maricopa*, 889 F.3d at

4  652 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)).  Here, Plaintiff does not, and

5  cannot, allege that UNOS encouraged—much less required—transplant hospitals to use the allegedly

6  discriminatory race-conscious eGFR.  Thus, Plaintiff fails to state a claim under the "official policy"

7  standard.  *See Massey*, 2020 WL 2476173, at *8; *see also Cnty. of Maricopa*, 889 F.3d at 652.

8     In summary, Plaintiff does not adequately allege that UNOS engaged in any form of

9  actionable discrimination.  As such, the civil rights claims asserted in Counts I and II cannot stand.

10     Plaintiff's failure to establish a viable discrimination claim also effectively precludes the

11  asserted UCL and breach of fiduciary duty claims.  Specifically, absent a viable claim of

12  discriminatory action, Plaintiff has no basis upon which to assert that UNOS breached any purported

13  fiduciary duty.  *See* FAC ¶¶ 102–03 (basing breach on alleged discrimination).

14     Likewise, to the extent Plaintiff's UCL claim is based on the "unlawful" standard, his

15  inability to establish a violation of the Civil Rights laws defeats his UCL claim as well.  "Where the

16  predicate claims on which a plaintiff's UCL claim are based fail, the UCL claim fails as well."

17  *Hernandez v. Wells Fargo Bank, N.A.*, 2019 WL 1601388, at *6 (C.D. Cal. Jan. 28, 2019) (quotation

18  omitted) (granting motion to dismiss).  The same is true under the UCL's "unfair" prong.  "To state a

19  California state law claim for . . . unfair business practices in a discrimination case, a plaintiff is

20  required to establish a viable discrimination claim."  *Awadan v. Reebok Corp. Headquarter*, 2017

21  WL 3394116, at *4 (E.D. Cal. Aug. 8, 2017) (citing *Gardner v. Fed. Express Corp.*, 114 F. Supp. 3d

22  889, 905 (N.D. Cal. 2015)).  Accordingly, because Plaintiff fails to state a viable discrimination

23  claim against UNOS, Plaintiff also fails to state a UCL claim against UNOS under an unfairness

24  theory.  *See Mejia v. Chipotle Mexican Grill, Inc.*, 793 F. App'x 519, 523 (9th Cir. 2019) ("Plaintiff's

25  UCL claim fails because their underlying discrimination claim also fails."); *Awadan*, 2017 WL

26  3394116, at *4 (granting motion to dismiss claims sounding in the UCL where "[p]laintiffs fail[ed]

27  to state a viable discrimination claim [under § 1981 or § 1983]").

28

13

IV.     **Counts II (Unruh Act) and III (UCL) Should Be Dismissed Because Plaintiff Cannot Plausibly Allege that UNOS Was Operating as a Private Business.**

The California Supreme Court has recognized that in enacting the Unruh Act, the California Legislature intended to prohibit discrimination by "entities *operating as private businesses*." *Brennon B. v. Super. Ct.*, 13 Cal. 5th 662, 679 (Cal. 2022) (emphasis added).  Thus, by its plain terms, the statute applies only to "business establishments."  Cal. Civ. Code § 51.  The "everyday meaning" of the term "business establishment . . . conveys reference to *commercial* entities . . . whose principal mission is the *transactional sale of goods or services*."  *Brennon B.*, 13 Cal. 5th at 674 (emphases added).  To be a "business establishment" within the meaning of the Unruh Act, an entity must "effectively operate as a business or a commercial enterprise."  *Id.* at 681.

Thus, to state a claim under the Unruh Act, a plaintiff must allege that the entity was engaging in commercial activity when it engaged in the purported discrimination.  *See Brennon B.*, 13 Cal. 5th at 679 ("[I]n order to be a 'business establishment' . . . an entity must operate as a business or commercial enterprise when it discriminates."); *see also Cooley v. City of Los Angeles*, 2019 WL 3766554, at *6 (C.D. Cal. Aug. 5, 2019) ("An entity qualifies as a business establishment for purposes of the Unruh Act when it 'appears to have been operating in a capacity that is the functional equivalent of a commercial enterprise.'") (quoting *Warfield v. Peninsula Golf & Country Club*, 10 Cal. 4th 594, 622 (1995)).

Similarly, California's UCL applies only to commercial or business-like activities.  "The UCL's purpose is to protect both consumers and competitors by promoting fair competition *in commercial markets for goods and services*."  *MH Pillars Ltd. v. Realini*, 2017 WL 916414, at *9 (N.D. Cal. Mar. 8, 2017) (emphasis added).  The UCL prohibits "unfair competition," which the statute defines as any "*business* act or practice" that is "unlawful, unfair, or fraudulent."  Cal. Bus. & Prof. Code § 17200 (emphasis added).  Accordingly, to state a UCL claim, a plaintiff must plausibly allege that the defendant's supposedly unfair, unlawful, or fraudulent conduct was commercial or market-oriented in nature.  *See Dillon v. NBCUniversal Media LLC*, 2013 WL 3581938, at *7 (C.D.

14

Cal. June 18, 2013) ("[D]ismissal of UCL actions is appropriate when the plaintiff is neither a competitor nor a consumer.").

The FAC is completely devoid of any allegations that UNOS was engaging in commercial activity when it allegedly discriminated against Plaintiff.  To the contrary, Plaintiff correctly asserts that UNOS is a private, nonprofit Virginia corporation that operates as the implementing arm of the OPTN under a federal contract.  FAC ¶ 27.  Moreover, Plaintiff cannot credibly allege that the administration of the national transplant system is a traditional activity for a business enterprise, let alone that UNOS competes in a market for allocating transplanted organs such that Plaintiff would be fairly characterized as a "consumer."

In short, Plaintiff's inability to allege that UNOS was acting as a private business or commercial enterprise is yet another reason why the Unruh Act and UCL claims should be dismissed.  *See Cooley*, 2019 WL 3766554, at *6 (dismissing Unruh Act claim because allegations failed to support an inference that city employees' cleanings of an area were a "business-like activity" rather than a "public service"); *That v. Alders Maint. Ass'n*, 206 Cal. App. 4th 1419, 1426–27 (Cal. Ct. App. 2012) (affirming trial's court sustaining demurrer to UCL claim where "association d[id] not participate as a business in the commercial market, much less compete in it").

## V.   Plaintiff's UCL Claim Fails for Lack of an Available Remedy.

It is undisputed that the only remedies available under the UCL are restitution and injunctive relief.  *See Ice Cream Distribs. of Evansville, LLC v. Dreyer's Grand Ice Cream, Inc.*, 487 F. App'x 362, 362 (9th Cir. 2012) (citing Cal. Bus. & Prof. Code § 17203); *Brandon v. Nat'l R.R. Passenger Corp. Amtrak*, 2013 WL 800265, at *3 (C.D. Cal. Mar. 1, 2013) ("A court can only award injunctive relief and restitution under the UCL.").  But Plaintiff is not entitled to either from UNOS.  This defeats the UCL claim as a matter of law.

As explained above in Section I*,* Plaintiff's claim for injunctive relief cannot stand for several reasons.  His request for restitution is equally deficient.  In the context of the UCL, "[r]estitution . . . aims 'to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest.'" *Ice Cream Distribs.*, 487 F. App'x at 363 (quoting *Korea Supply Co. v.*

15

1   *Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (Cal. 2003)).  To receive restitution under the UCL,

2   a plaintiff must allege that the defendant "took money or property directly from [the plaintiff]," or

3   that the plaintiff has "a vested interest in the money it seeks to recover."  *See id.* (citing *Korea*

4   *Supply Co.*, 29 Cal. 4th at 1148–49).  Plaintiff does not allege that UNOS took money or property

5   from him.  And to the extent he seeks to recover "lost wages and medical expenses" (FAC ¶ 62),

6   such forms of relief would constitute monetary damages that are not available under the UCL.  *See*

7   *Ice Cream Distribs.*, 487 F. App'x at 363.

8       Plaintiff's lack of an available remedy provides yet another reason why his UCL claim

9   should be dismissed.  *See id.* at 362–63 (affirming dismissal of UCL claim based on plaintiff's

10   failure to plead entitlement to restitution or injunctive relief); *Kaui Scuba Ctr., Inc. v. PADI Ams.,*

11   *Inc.*, 2011 WL 2711177, at *9 (C.D. Cal. July 13, 2011) ("Because Plaintiff's . . . UCL claim[] [is]

12   deficient, and because neither restitution nor injunctive relief may be awarded, Plaintiff's . . .

13   eleventh claim[] [is] DISMISSED WITH PREJUDICE as to all Defendants."  (emphasis in

14   original)).

15   **VI.**    **Count IV Should be Dismissed Because Plaintiff Does Not—and Cannot—Plausibly**

16         **Allege a Fiduciary Relationship with UNOS.**

17       "In order to plead a claim for breach of fiduciary duty [in California], the claimant must

18   allege (1) the existence of a fiduciary relationship giving rise to a fiduciary duty, (2) breach of that

19   duty, and (3) damage proximately caused by the breach."  *Annunziato v. Guthrie*, 2021 WL

20   5015496, at *3 (C.D. Cal. Oct. 26, 2021) (quoting *Negrete v. Fidelity & Guardian Life Ins. Co.*, 444

21   F. Supp. 2d 998, 1003 (C.D. Cal. 2006)).  "The allegation of a fiduciary relationship must be

22   supported by either a contract, or a relationship that imposes it as a matter of law."  *Berryman v.*

23   *Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1558 (Cal. Ct. App. 2007).

24       Plaintiff alleges in conclusory fashion that "[a]s the steward of the national kidney waitlist,"

25   UNOS owes Plaintiff and [putative class members] a fiduciary duty."  FAC ¶ 20.  Notably, Plaintiff

26   provides no factual basis for that conclusory allegation.  To the contrary, there is no contractual or

27   other basis upon which to conclude that the OPTN, and by extension UNOS acting in its capacity as

28

16

DEFENDANT UNITED NETWORK FOR ORGAN SHARING'S NOTICE OF MOTION, MOTION TO DISMISS PLAINTIFF'S FIRST
AMENDED COMPLAINT, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – CASE NO. 2:23-CV-
02576-MEMF-MAA

1    the implementing arm of the OPTN, owes a fiduciary duty to potential transplant recipients.  Indeed,

2    as Plaintiff acknowledges (*id.* at ¶ 27), the OPTN's rights and obligations are governed by statute,

3    regulation, and contract.  Yet Plaintiff identifies no provision in NOTA, HHS's implementing

4    regulations, or the OPTN contract that imposes a fiduciary duty on UNOS that runs to individual

5    transplant candidates.  Plaintiff's inability to identify any viable basis for a fiduciary relationship

6    between himself and UNOS provides yet another reason why the breach of fiduciary duty claim

7    should be dismissed.

8                                              **CONCLUSION**

9            For the foregoing reasons, UNOS respectfully requests that the Court dismiss, with prejudice,

10   each of the claims asserted against UNOS.

11

12   Dated:  May 26, 2023                         WINSTON & STRAWN LLP

13                                         By:  /s/ *Daniel M. Blouin*

14                                               Shawn R. Obi (SBN: 288088)
                                                 sobi@winston.com
15                                               Winston & Strawn LLP
                                                 333 S. Grand Avenue
16                                               Los Angeles, CA 90071-1543
                                                 Telephone: (213) 615-1700
17                                               Facsimile: (213) 615-1750

18                                               Daniel M. Blouin (Admitted *pro hac vice*)
                                                 dblouin@winston.com
19                                               Thomas G. Weber (Admitted *pro hac vice*)
                                                 tgweber@winston.com
20                                               Winston & Strawn LLP
                                                 35 W. Wacker Drive
21                                               Chicago, IL 60601-9703
                                                 Telephone: (312) 558-5600
22                                               Facsimile: (312) 558-5700

23                                               Attorneys for Defendant
                                                 UNITED NETWORK FOR
24                                               ORGAN SHARING

25

26

27

28
                                                 17

## CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2023, I filed the foregoing document entitled **DEFENDANT UNITED NETWORK FOR ORGAN SHARING'S NOTICE OF MOTION, MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** with the clerk of court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record in this action.

By:  /s/ *Daniel M. Blouin*
Daniel M. Blouin