Shawn R. Obi (SBN: 288088)
sobi@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Daniel M. Blouin (admitted *pro hac vice*)
dblouin@winston.com
Thomas G. Weber (admitted *pro hac vice*)
tgweber@winston.com
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

Attorneys for Defendant
UNITED NETWORK FOR
ORGAN SHARING

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY RANDALL,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>UNITED NETWORK FOR ORGAN SHARING and CEDARS-SINAI MEDICAL CENTER,<br><br>　　　　　Defendants. | Case No. 2:23-CV-02576-MEMF-MAA<br><br>**DEFENDANT UNITED NETWORK FOR ORGAN SHARING'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Date: September 14, 2023<br>Time: 10:00 a.m.<br>Courtroom: Courtroom 8B – 8th Floor<br>　　　United States Courthouse<br>　　　350 W. First Street<br>　　　Los Angeles, CA 90012<br>Judge: Hon. Maame Ewusi-Mensah Frimpong |

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 2

    I.     UNOS Did Not Engage in Actionable Discrimination. ................................. 2

    II.    Plaintiff Lacks Standing to Seek Injunctive Relief and His Request Is Now Moot. ............................................................................................................. 4

    III.   Each Claim Asserted in the FAC Is Barred by Applicable Statutes of Limitations. ................................................................................................... 5

    IV.   Plaintiff Has Not Plausibly Alleged That UNOS Was Engaging in Commercial Activity............................................................................................. 8

    V.    Plaintiff's UCL Claim Fails for Lack of an Available Remedy. ................. 9

CONCLUSION ................................................................................................................. 10

i

DEFENDANT UNITED NETWORK FOR ORGAN SHARING'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST
AMENDED COMPLAINT – CASE NO. 2:23-CV-02576-MEMF-MAA

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bonner v. Med. Bd. of California*,
   2018 WL 4699996 (E.D. Cal. Sept. 30, 2018) ........................................................6

*Brennon B. v. Sup. Ct.*,
   13 Cal. 5th 662 (2022) .............................................................................................8

*Cooley v. City of Los Angeles*,
   2019 WL 3766554 (C.D. Cal. Aug. 5, 2019).......................................................8, 9

*Curran v. Mount Diablo Council of the Boy Scouts*,
   17 Cal. 4th 670 (1998) ..........................................................................................8, 9

*Fathers & Daughters Nev., LLC v. Lingfu Zhang*,
   284 F. Supp. 3d 1160 (D. Ore. 2018).....................................................................4

*Felber v. Yudof*,
   851 F. Supp. 2d 1182 (N.D. Cal. 2011) ................................................................3

*Fox v. Ethicon Endo-Surgery, Inc.*,
   35 Cal. 4th 797 (2005) ...........................................................................................6

*Garcia v. Brockway*,
   526 F.3d 456 (9th Cir. 2008) .................................................................................7

*Greater L.A. Agency on Deafness, Inc. (GLAAD) v. Cable News Network, Inc.*,
   742 F.3d 414 (9th Cir. 2014) .................................................................................2

*Grossman v. Haw. Gov't Emps. Ass'n/AFSCME Local 152*,
   611 F. Supp. 3d 1033 (D. Haw. 2020)...................................................................5

*Hollingsworth v. Perry*,
   570 U.S. 693 (2013) ...............................................................................................4

*Ibister v. Boys' Club of Santa Cruz, Inc.*,
   40 Cal. 3d 72 (1985) ..............................................................................................9

*Magadia v. Wal-Mart Assocs., Inc.*,
   999 F.3d 668 (9th Cir. 2021) .................................................................................4

*Mandel v. Bd. of Trustees of Cal. State Univ.*,
   2018 WL 5458739 (N.D. Cal. Oct. 29, 2018).......................................................3

ii

*Mansourian v. Regents of Univ. of California*,
   602 F.3d 957 (9th Cir. 2010) ....................................................................7

*Mwasi v. Romero*,
   2023 WL 2628085 (C.D. Cal. Jan. 13, 2023), *R. & R. adopted*, Case No. 21-cv-
   06467-DOC-JDE (C.D. Cal. Feb. 21, 2023)..........................................6, 7

*O'Connor v. Village Green Owners Assn.*,
   33 Cal. 3d 790 (1983) ............................................................................9

*Olsen v. Idaho State Bd. of Med.*,
   363 F.3d 916 (9th Cir. 2004) ...................................................................6

*Pines v. Tomson*,
   160 Cal. App. 3d 370 (1984) ...................................................................9

*Pittman v. Spectrum Health Sys.*,
   612 F. App'x 810 (6th Cir. 2015) .............................................................8

*Raifman v. Wachovia Secs., LLC*,
   649 F. App'x 611, 613 (9th Cir. 2016) .......................................................6

*Schneider v. Cal. Dep't of Corr.*,
   151 F.3d 1194 (9th Cir. 1998) ................................................................10

*Sunset Drive Corp. v. City of Redlands*,
   2008 WL 11423918 (C.D. Cal. Dec. 2, 2008) ............................................7

*Town of Chester v. Laroe Estates, Inc.*,
   137 S. Ct. 1645 (2017)............................................................................5

*United Air Lines, Inc. v. Evans*,
   431 U.S. 553 (1977) ...............................................................................7

*Va. House of Delegates v. Bethune-Hill*,
   139 S. Ct. 1945 (2019)............................................................................4

*White v. Borden*,
   2016 WL 11722683 (C.D. Cal. Aug. 1, 2016).............................................10

*Willis v. City of Carlsbad*,
   48 Cal. App. 5th 1104 (2020) ...................................................................7

**Statutes**

Cal. Civ. Code § 52 ....................................................................................2

iii

**INTRODUCTION**

In its Motion to Dismiss, UNOS identifies numerous deficiencies in Plaintiff's First Amended Complaint ("FAC"). Unable to address the holes in his case directly, Plaintiff characterizes the problems as "technical legal arguments." Opp'n at 2. Alternatively, Plaintiff suggests that he can fix the problems by amending the complaint. In short, Plaintiff essentially acknowledges that his current complaint is flawed.

Plaintiff's case is premised on the assertion that his ability to receive a kidney transplant was delayed because a transplant hospital improperly used a race-conscious modifier when calculating his kidney function. Importantly, however, Plaintiff does not and cannot properly allege that UNOS, a not-for-profit entity, engaged in actionable discrimination. UNOS did not create the previously used race-conscious modifier. And contrary to Plaintiff's bald assertion, UNOS neither "encouraged" nor required that transplant hospitals use a race-conscious modifier. The FAC contains absolutely no facts to support Plaintiff's assertion in this regard. Instead, UNOS merely receives patient data from transplant hospitals when hospitals enter their patients' data directly into the UNet system. And Plaintiff does not allege that a race-conscious modifier was used for all Black patients—it was not. Similarly, Plaintiff does not allege that UNOS somehow knew that the data it received regarding Plaintiff's kidney function was impacted by a race-conscious modifier—UNOS did not. Given these undisputed facts, there is no justifiable legal basis to conclude that UNOS discriminated against Plaintiff, or anyone else. For this reason alone, Plaintiff's case against UNOS cannot stand.

Even assuming Plaintiff could overcome this hurdle, which he cannot, Plaintiff's claim for injunctive relief cannot proceed because there is no risk of future harm to Plaintiff. As discussed in detail in the pending Motion to Dismiss, UNOS already implemented policies that provide the relief Plaintiff now seeks from this Court. Moreover, the issue effectively became moot for Plaintiff when he recently received a kidney transplant. This "technical legal argument" is nevertheless dispositive.

Plaintiff's attempt to avoid application of the statutes of limitations is similarly unavailing. Plaintiff essentially admits in the FAC that the latest he would have become aware of his injury was

1

1    January 2019. Plaintiff does not take a contrary position in his Opposition. Instead, Plaintiff

2    essentially argues that he can provide additional facts in a second amended complaint that

3    purportedly would enable him to circumvent application of the statutes of limitations. By taking that

4    position, however, Plaintiff essentially acknowledges the deficiency of the current complaint.

5         And Plaintiff's argument that UNOS is a "business entity" engaging in "commercial activity"

6    is equally flawed. As discussed below, the cases cited in Plaintiff's Opposition involving other not-

7    for-profit entities are clearly distinguishable from the facts here. Apparently recognizing as much,

8    Plaintiff suggests that he can provide additional facts to support his position that UNOS is operating

9    as a commercial enterprise. Once again, Plaintiff's offer to present additional facts highlights the

10   inadequacies of the allegations in the current FAC. In the same way, Plaintiff's offer to present

11   additional facts regarding his purported damages shows the current allegations are insufficient.

12                                          **ARGUMENT**

13   **I.    UNOS Did Not Engage in Actionable Discrimination.**

14        Plaintiff does not dispute that the Unruh Act requires him to present plausible facts

15   establishing UNOS engaged in "willful, affirmative" discrimination. *Greater L.A. Agency on*

16   *Deafness, Inc. (GLAAD) v. Cable News Network, Inc.*, 742 F.3d 414, 425 (9th Cir. 2014). Plaintiff's

17   FAC contains no such facts. Specifically, Plaintiff does not and cannot allege that UNOS calculated

18   Plaintiff's eGFR score using a race-conscious coefficient—UNOS did not. Similarly, there are no

19   facts in the FAC that establish, let alone even suggest, that UNOS encouraged Cedars-Sinai to

20   calculate Plaintiff's eGFR score in that manner—once again, UNOS did not.

21        In response, Plaintiff contends that he need not allege willful, affirmative misconduct but,

22   instead, merely needs to assert something beyond the "disparate impact of a facially neutral policy."

23   Opp'n at 20–21. Plaintiff's characterization of his pleading obligation is incorrect. Plaintiff must

24   present facts that establish UNOS "den[ied], aid[ed], or incit[ed] a denial, or ma[de] any

25   discrimination or distinction" on the basis of race—active, purposeful language. Cal. Civ. Code § 52.

26   The FAC contains no such facts.

27

28

                                                    2

Plaintiff's Title VI claim fares no better. Under Title VI, Plaintiff must sufficiently allege that UNOS is engaging in racial discrimination. Stripping out the conclusory allegations in the FAC, Plaintiff essentially argues that UNOS engaged in actionable discrimination because it provided transplant hospitals with too much time to evaluate whether patients qualified to receive wait-time adjustments. Opp'n at 18–19. But the fact that UNOS "may not have acted as [P]laintiff[] would prefer does not rise to 'deliberate indifference.'" *Felber v. Yudof*, 851 F. Supp. 2d 1182, 1188 (N.D. Cal. 2011) (granting motion to dismiss Title VI claim); *see also Mandel v. Bd. of Trustees of Cal. State Univ.*, 2018 WL 5458739, at *25 (N.D. Cal. Oct. 29, 2018) ("Considering the totality of the allegations, plaintiffs' own allegations show that [defendant] is not ignoring the hostile environment alleged by plaintiffs, but at most assert that [defendant's] responses were not sufficient to satisfy plaintiffs and that some of the processes are still ongoing. Deliberate indifference has not been alleged.").

Plaintiff's footnote rebuttal to UNOS's official policy argument also falls flat. Without citing any case law of his own, Plaintiff dismisses the cases cited in UNOS's opening brief as "not merit[ing] serious discussion" because "[t]hey each involve the question of whether an institution should be held liable for the acts" of others. Opp'n at 19 n.7. But that ignores the obvious fact that Plaintiff's entire case rests on the idea that transplant hospitals—not UNOS—allegedly used a race-conscious eGFR.

On a related point, Plaintiff acknowledges that "this is not a disparate impact case." Opp'n at 21. He goes on, however, to argue that UNOS had a "policy of factoring race into kidney health evaluations." Noticeably absent from the FAC, however, are any facts to support this notion. Importantly, Plaintiff does not and cannot allege that UNOS calculated patients' kidney function, let alone did so using a race-conscious modifier. Similarly, Plaintiff does not allege any facts that establish UNOS encouraged, let alone required, transplant hospitals to use a race-conscious modifier in calculating eGFR scores. Equally important, Plaintiff does not allege that all transplant hospitals always used a race-conscious modifier when calculating eGFR scores for all Black patients. Plaintiff merely alleges that the modifier had been used for some Black patients. *See, e.g.*, FAC ¶ 44. At

3

most, Plaintiff alleges that UNOS received patient data from transplant hospitals that may have calculated eGFR using a race-conscious coefficient for some patients. Such limited facts are insufficient to establish that UNOS had a policy that discriminated against Black patients.

## II.    Plaintiff Lacks Standing to Seek Injunctive Relief and His Request Is Now Moot.

Whether analyzed under the rubric of standing or mootness, the Court does not have subject-matter jurisdiction over Plaintiff's request for an injunction. To have standing to seek an injunction, Plaintiff must show that he faces a "substantial risk" of future harm "from the conduct sought to be enjoined" or, alternatively, that such harm is "certainly impending." MTD at 7. While Plaintiff's injunctive relief theory is muddled, read charitably, Plaintiff seeks to enjoin UNOS from basing any kidney allocation decisions on his accrued wait time that was allegedly shortened because Cedars-Sinai calculated his eGFR using a race-conscious modifier. But Plaintiff admits he recently received a kidney and thus is no longer on the kidney waitlist. Opp'n at 8. It is impossible for Plaintiff to suffer a future injury stemming from the conduct he seeks to enjoin.

Plaintiff thus pivots, asking that the Court disregard the fact that he is no longer on the waitlist on the basis that standing is "considered at the time a lawsuit is filed."[1] Opp'n at 9. "Although rulings on standing often turn on a plaintiff's stake in initially filing suit, 'Article III demands that an 'actual controversy' persist throughout *all stages of litigation*.'" *Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1950–51 (2019) (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013)) (emphasis added); *Magadia v. Wal-Mart Assocs., Inc.*, 999 F.3d 668, 674 (9th Cir. 2021) ("Standing must 'persist throughout all stages of [the] litigation.'") (citing *Hollingsworth*, 570 U.S. at 705). The more logical string of case law requires standing to exist throughout litigation—and here it indisputably does not.

As for mootness, the analysis is slightly different, but the result is the same. As mentioned in UNOS's opening brief, Plaintiff's request for an injunction is moot and, therefore, is not justiciable. MTD at 8. A federal court must have Article III jurisdiction for "each form of relief that is sought."

---

[1] While Plaintiff cites *Fathers & Daughters Nev., LLC v. Lingfu Zhang*, 284 F. Supp. 3d 1160, 1171 (D. Ore. 2018) for the proposition that "standing is considered at the time a lawsuit is filed," this case and the others that Plaintiff cites are factually distinguishable—none of them address a situation like the one presented here in which the plaintiff's post-filing actions destroy standing.

1  *Grossman v. Haw. Gov't Emps. Ass'n/AFSCME Local 152*, 611 F. Supp. 3d 1033, 1045 (D. Haw.

2  2020) (quoting *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017)). For a request

3  for an injunction to be "live"—i.e., not moot—the court must be capable of ordering some injunctive

4  relief to the plaintiff. *Id.* As discussed herein, any purported injunction as to UNOS would not

5  provide Plaintiff any relief, and thus his request for an injunction is moot.

6  **III.   Each Claim Asserted in the FAC Is Barred by Applicable Statutes of Limitations.**

7          Plaintiff does not dispute that Title VI claims generally accrue when a plaintiff knows or has

8  reason to know of the actual injury, nor does he contest that California state law claims generally

9  accrue when all of their elements are complete, regardless of a plaintiff's knowledge thereof.

10 Instead, Plaintiff argues that (1) the accrual of his Title VI claim should be delayed because he did

11 not know or have reason to know about his failure to begin accruing wait time on the national kidney

12 waitlist; (2) the accrual of his California state law claims should be delayed under the discovery rule;

13 and (3) the accrual of his claims should be delayed under the continuing violations doctrine. Opp'n

14 at 10–16. Each of Plaintiff's arguments fails.

15         As an initial matter, Plaintiff does not dispute that his failure to begin accruing wait time on

16 the national kidney waitlist constitutes the alleged "actual injury" for purposes of his Title VI claim.

17 Opp'n at 11–12. Plaintiff argues only that he was not "aware of any delay" by January 2019. *Id.* at

18 11–13. Plaintiff's assertion in this regard contradicts the allegations in the FAC.

19         Plaintiff acknowledges that he "took monthly eGFR tests for years, *until such time as his*

20 *eGFR score . . . was low enough for him to begin accruing wait time on the national kidney waitlist.*"

21 FAC ¶ 17 (emphasis added); *see also id.* at ¶¶ 50–52 ("[H]aving been diagnosed with kidney

22 disease, Plaintiff underwent monthly testing of his eGFR to determine his kidney function. . . .

23 Plaintiff's artificially inflated eGFR scores first qualified Plaintiff to begin accruing wait time on the

24 national kidney waitlist in January of 201[9]."). Plaintiff knew that he began to accrue wait time on

25 the national kidney waitlist in January 2019 when he stopped taking monthly eGFR tests for that

26 very purpose. It follows, then, that Plaintiff also knew as of January 2019 that he had failed to begin

27 accruing wait time up until that point, despite having taken monthly eGFR tests for years. As such,

28

5

DEFENDANT UNITED NETWORK FOR ORGAN SHARING'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST
AMENDED COMPLAINT – CASE NO. 2:23-CV-02576-MEMF-MAA

1    Plaintiff admits that the latest he would have become aware of his actual injury under Title VI was

2    January 2019.[2] That is the end of the inquiry under the federal rule. MTD at 9–10.

3          Alternatively, Plaintiff argues that the accrual of his California state law claims should be

4    delayed because a reasonable investigation would not have led him to discover the "use of the race-

5    based coefficient and its discriminatory nature." Opp'n at 13. To invoke the discovery rule, however,

6    "[a] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of

7    the discovery rule must specifically plead facts to show (1) the time and manner of discovery *and* (2)

8    the inability to have made earlier discovery despite reasonable diligence." *Fox v. Ethicon Endo-*

9    *Surgery, Inc.*, 35 Cal. 4th 797, 808–09 (2005). The FAC contains no such factual allegations.

10   Plaintiff acknowledges as much in that he "requests leave to amend to explain the circumstances in

11   which he came to be a member of the national kidney waitlist, and specifically how he never

12   received any notice of any adverse action." Opp'n at 14 n.5; *see also Raifman v. Wachovia Secs.,*

13   *LLC*, 649 F. App'x 611, 613 (9th Cir. 2016) (refusing to apply discovery rule and affirming

14   dismissal of California state law claims where "[n]one of [p]laintiffs' allegations regarding

15   [defendant] show[ed] what, if anything, [p]laintiffs did to diligently investigate [defendant] . . . , nor

16   d[id] the complaint provide any reason why [p]laintiffs were unable to discover information

17   sufficient to file a complaint within the statutory period").

18         Finally, Plaintiff argues that even if his original delay in accruing wait time was time-barred,

19   the continuing violation doctrine applies. Opp'n at 14–16. It does not. The "continuing violation[]

20   doctrine . . . provides that when a defendant's conduct is part of a continuing practice, an action is

21   timely so long as the last act evidencing the continuing practice falls within the limitations period."

22   *Mwasi v. Romero*, 2023 WL 2628085, at *13 (C.D. Cal. Jan. 13, 2023), *R. & R. adopted*, Case No.

---

[2] *Olsen* and *Bonner* are inapposite. *See* Opp'n at 12. Neither requires that a plaintiff receive formal notice that an action has been taken against his interests for purposes of accrual, such that UNOS or Cedars-Sinai needed to have explicitly informed him that he failed to qualify for accrual of wait time. In fact, neither case opines *at all* on what constitutes sufficient notice; rather, both cases focus on the finality of a decision needed to trigger the applicable statute of limitations. *See Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 926–27 (9th Cir. 2004) (determining "when the operative decision was made" for purposes of determining when claims accrued); *Bonner v. Med. Bd. of California*, 2018 WL 4699996, at *6–7 (E.D. Cal. Sept. 30, 2018) (finding that plaintiff's "claim accrued when the Board adopted its March 19, 2013 Decision").

21-cv-06467-DOC-JDE (C.D. Cal. Feb. 21, 2023) (ECF No. 40); *see also Willis v. City of Carlsbad*, 48 Cal. App. 5th 1104, 1124 (2020) (same). Critically, "[a] continuing violation is occasioned by continual unlawful *acts*, not by continual *ill effects* from an original violation." *Sunset Drive Corp. v. City of Redlands*, 2008 WL 11423918, at *5 (C.D. Cal. Dec. 2, 2008) (emphasis added) (citing *Garcia v. Brockway*, 526 F.3d 456, 462 (9th Cir. 2008)). That distinction is dispositive here.

    *United Air Lines, Inc. v. Evans*, 431 U.S. 553 (1977) is instructive. In *Evans*, the Supreme Court held that a female flight attendant forced to resign for discriminatory reasons could not establish a continuing violation claim reaching back to her forced resignation even though she alleged that United rehired her (within the statutory limitations period) without reinstating her previous seniority—i.e., United treated her as a new employee receiving no seniority credit for her prior service. *Id.* at 554–60. Although United's seniority system had a "continuing impact on her pay and fringe benefits" and, thus, gave "present effect to a past act of discrimination," the Court reasoned that "the emphasis should not be placed on mere continuity; the critical question is whether any present *violation* exists." *Id.* at 558. Based on that rationale, the Court concluded "a challenge to a neutral [seniority] system may not be predicated on the mere fact that a past event which has no present legal significance has affected the calculation of seniority credit, even if the past event might at one time have justified a valid claim against the employer." *Id.* at 560.

    Here, Plaintiff alleges that the use of wait time as a factor in ranking Plaintiff for donor kidneys gave present effect to a past act of alleged discrimination—namely, Cedars-Sinai's application of a race-conscious coefficient in calculating Plaintiff's eGFR score.[3] *See* FAC ¶¶ 88, 94, 103, 108. Even accepting Plaintiff's characterization of the purported discrimination, no violation existed after January 2019 when Plaintiff was placed on the donor waitlist—only alleged effects of a past act. Accordingly, the "continuing violation" doctrine is not applicable.[4] *See, e.g.*, *Mwasi*, 2023

---

[3] Plaintiff does not—and cannot—dispute that the use of wait time as a factor in ranking patients for donor kidneys is neutral on its face, since it applies equally to Black and non-Black Americans alike.

[4] Plaintiff's string-cite does not alter this conclusion. *See* Opp'n at 15–16. Each of those eight cases required actionable discrimination to have occurred within the statute of limitations, at least in part, assuming they opined on the issue at all. *Id.*; *e.g.*, *Mansourian v. Regents of Univ. of California*, 602 F.3d 957, 974 (9th Cir. 2010) (plaintiff must show a "systematic policy or practice that operated, in part, within the limitations period"). As discussed, UNOS has not engaged in any actionable

7

DEFENDANT UNITED NETWORK FOR ORGAN SHARING'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST
AMENDED COMPLAINT – CASE NO. 2:23-CV-02576-MEMF-MAA

WL 2628085, at *13 ("continuing effect is insufficient to constitute a continuing violation"); *see also Pittman v. Spectrum Health Sys.*, 612 F. App'x 810, 813–15 (6th Cir. 2015) ("Spectrum's subsequent failure to undo [previous discriminatory act] does not constitute a present act of discrimination. The loss of future shift assignments is 'a delayed, but inevitable, consequence' of Spectrum's prior discriminatory act, and not a present, discrete illegal act.").

## IV.   Plaintiff Has Not Plausibly Alleged That UNOS Was Engaging in Commercial Activity.

Plaintiff does not dispute that the Unruh Act only applies to "business establishment[s]." *Cooley v. City of Los Angeles*, 2019 WL 3766554, at *6 (C.D. Cal. Aug. 5, 2019) ("business establishment" means to "operat[e] in a capacity that is the functional equivalent of a commercial enterprise.") (quotation omitted). Plaintiff alleges that UNOS discriminated against him while managing the kidney transplant waitlist. Contrary to Plaintiff's position, however, administration of the national transplant system is not a commercial activity.

Attempting to circumvent this reality, Plaintiff argues that the Unruh Act applies to all business establishments of every kind whatsoever and UNOS operates as a commercial entity in some respects. But contrary to Plaintiff's suggestion, the California Supreme Court explained in *Brennon B. v. Sup. Ct.* that, "[w]hile the phrase 'all business establishments of every kind whatsoever' must be interpreted as broadly as reasonably possible, *its scope remains limited to entities acting as private business establishments*." 13 Cal. 5th 662, 678 (2022) (emphasis added). And in *Curran v. Mount Diablo Council of the Boy Scouts*, the California Supreme Court employed this functional approach to analyze whether the Unruh Act applied to the membership policies and decisions of a regional council of the Boy Scouts, a private non-profit corporation like UNOS. 17 Cal. 4th 670, 673 (1998). Although the council engaged in some commercial conduct, such as selling apparel, the court concluded that such activities were "distinct from the [council's] core functions" and "d[id] not render [the council] a business establishment" with respect to its organizational policies and decisions. *Id.* at 697–700; *see also, e.g., Brennon B.*, 13 Cal. 5th at 680–81 (statute not

---

discrimination, within or without the statutes of limitations.

1   applicable to school district operating in its educational capacity); *Cooley*, 2019 WL 3766554, at *6

2   (statute not applicable to city conducting an area cleaning of a neighborhood).

3       Next, Plaintiff argues that it is "well-established [that] the UCL and the Unruh Act reach

4   non-profit entities[.]" Opp'n at 22. But this is not a bright-line rule: these statutes only apply when

5   non-profits engage in commercial activity while acting unlawfully. *See Curran*, *supra*. Indeed, the

6   cases Plaintiff cites all concern non-profits acting like private businesses. *See O'Connor v. Village

7   Green Owners Assn.*, 33 Cal. 3d 790, 792, 796 (1983) (operation of a condominium development to

8   "protect and enhance … economic value"); *Pines v. Tomson*, 160 Cal. App. 3d 370, 386 (1984)

9   (operation of a business telephone directory, including "solicitation and sale of commercial

10  advertisements" and "collection of royalties"); *Ibister v. Boys' Club of Santa Cruz, Inc.*, 40 Cal. 3d

11  72, 76 (1985) (operation of a recreational club). UNOS's administration of the national organ

12  transplant system bears no resemblance to these cases.

13      Effectively admitting that the allegations in the FAC are deficient, Plaintiff requests leave to

14  amend his pleading to allege that UNOS has money, employees, and a physical office. Opp'n at 23.

15  But even if such allegations were included in the FAC, they would not change the fundamental fact

16  that the administration of the national transplant system is not a commercial activity.

17  **V.   Plaintiff's UCL Claim Fails for Lack of an Available Remedy.**

18      In response to UNOS's argument that Plaintiff lacks an available remedy under the UCL,

19  Plaintiff falls back on his repeated mantra that he can amend to provide additional facts that establish

20  damage. Specifically, after admitting that such allegations are not in the FAC, Plaintiff contends that

21  he seeks restitution from UNOS in the form of fees he paid to "UNOS to join the national kidney

22  waitlist." Opp'n at 24. Plaintiff's new assertion fails for two reasons. First and foremost, Plaintiff

23  cannot save his complaint by asserting facts for the first time in opposition to a motion to dismiss.[5]

24

---

25  [5] Plaintiff claims that he pled such allegations in his FAC within the phrase "medical expenses,"
    though even he admits that such allegations were "not specifically set out therein." Opp'n at 24.

26  Plain and simple, no such allegations are in the FAC. The only "medical expenses" pled in the FAC
    refer to those Plaintiff alleges to have incurred *because of his delay in receiving a donor kidney*, *see*

27  FAC ¶ 62, and therefore "medical expenses" as currently pled cannot be read to include "fees paid to
    UNOS to join the national kidney waitlist," since such fees—by their definition—would have been

28  paid *regardless of any alleged delay in receiving a donor kidney*, if at all.

9

*White v. Borden*, 2016 WL 11722683, at *3 (C.D. Cal. Aug. 1, 2016) (citing *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.")). Second, Plaintiff's last-minute assertion is simply untrue. Plaintiff did not pay any fees to UNOS to join the national kidney waitlist.

## CONCLUSION

For the foregoing reasons, UNOS respectfully requests that the Court dismiss, with prejudice, each of the claims asserted against UNOS.

Dated:  June 30, 2023                WINSTON & STRAWN LLP

                                 By: /s/ *Daniel M. Blouin*

                                     Shawn R. Obi (SBN: 288088)
                                     sobi@winston.com
                                     Winston & Strawn LLP
                                     333 S. Grand Avenue
                                     Los Angeles, CA 90071-1543
                                     Telephone: (213) 615-1700
                                     Facsimile: (213) 615-1750

                                     Daniel M. Blouin (Admitted *pro hac vice*)
                                     dblouin@winston.com
                                     Thomas G. Weber (Admitted *pro hac vice*)
                                     tgweber@winston.com
                                     Winston & Strawn LLP
                                     35 W. Wacker Drive
                                     Chicago, IL 60601-9703
                                     Telephone: (312) 558-5600
                                     Facsimile: (312) 558-5700

                                     Attorneys for Defendant
                                     UNITED NETWORK FOR
                                     ORGAN SHARING

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 30, 2023, I filed the foregoing document entitled **DEFENDANT UNITED NETWORK FOR ORGAN SHARING'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** with the clerk of court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record in this action.


By: _/s/ Daniel M. Blouin_
       Daniel M. Blouin