**LEWIS BRISBOIS BISGAARD & SMITH LLP**
JON P. KARDASSAKIS, SB# 90602
　E-Mail: Jon.Kardassakis@lewisbrisbois.com
DANIELLE E. STIERNA, SB# 317156
　E-Mail: Danielle.Stierna@lewisbrisbois.com
633 West 5th Street, Suite 4000
Los Angeles, California 90071
Telephone: 213.250.1800
Facsimile: 213.250.7900

Attorneys for Defendant, CEDARS-SINAI MEDICAL CENTER

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ANTHONY RANDALL,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>UNITED NETWORK FOR ORGAN SHARING; CEDARS-SINAI MEDICAL CENTER,<br><br>　　　　Defendants. | Case No. 2:23-CV-02576-MEMF (MAAx)<br><br>**Defendant Cedars-Sinai Medical Center's Reply in Support of its Motion to Dismiss Plaintiff's First Amended Class Action Complaint**<br><br>Date:　Thursday, Sep. 14, 2023<br>Time:　10:00 a.m.<br>Crtrm.:　8B<br><br>Judge:　Maame Ewusi-Mensah Frimpong<br><br>FSC Date:　　　None Set<br>Trial Date:　　　None Set |

# TABLE OF CONTENTS

Page

I. California Law Does Not Support Plaintiff's Effort to Save His Claims Against Cedars-Sinai from the Statute of Limitations ....................................... 1

  A. Plaintiff Alleges Facts that Show He Knew or Should Have Known of His Claims at Least Five Years Ago, Prohibiting Application of the Delayed Discovery Rule ............................................ 1

  B. Plaintiff Fails to Allege Facts to Support Application of Either the Continuing Violation or Continuous Accrual Doctrines .................. 4

II. Plaintiff Fails to Refute He Has Not Alleged Cedars-Sinai Owed Him a Fiduciary Duty or Breached a Fiduciary Duty ...................................................... 7

III. Plaintiff Fails to Refute He Lacks Statutory Standing to Bring a UCL Claim ................................................................................................................ 9

IV. Conclusion ........................................................................................................ 10



# TABLE OF AUTHORITIES

**Page**

**Federal Cases**

*Olsen v. Idaho State Bd. of Med.*,
   363 F.3d 916 (9th Cir. 2004) ................................................................................ 1

**State Cases**

*Aryeh v. Canon Business Solutions, Inc.*,
   55 Cal. 4th 1185 (2013) ........................................................................... 1, 4, 5, 6

*Fox v. Ethicon Endo-Surgery, Inc.*,
   35 Cal. 4th 797 (2005) ................................................................................ 1, 2, 3

*Moore v. Regents of University of California*,
   51 Cal. 3d 120 (1990) ............................................................................................ 8

*Norgart v. Upjohn Co.*,
   21 Cal. 4th 383 (1999) ........................................................................................... 1

*Weinberg v. Cedars-Sinai Medical Center*,
   119 Cal. App. 4th 1098 (2004) ............................................................................. 8

*Yanowitz v. L'Oreal USA, Inc.*,
   36 Cal. 4th 1028 (2005) .................................................................................... 6, 7

**Statutes**

42 U.S.C. § 1983 .......................................................................................................... 1

Cal. Bus. & Prof. Code § 809.05 ................................................................................. 8

Cal. Bus. & Prof. Code § 809.05(a) ............................................................................ 8

Cal. Bus. & Prof. Code § 17204 .................................................................................. 9



I. **CALIFORNIA LAW DOES NOT SUPPORT PLAINTIFF'S EFFORT TO SAVE HIS CLAIMS AGAINST CEDARS-SINAI FROM THE STATUTE OF LIMITATIONS**

Plaintiff does not dispute the applicable statute of limitations period for his claims. He argues instead about when the statute of limitations clock starts. His argument is inconsistent with California law.

"Traditionally at common law, a 'cause of action accrues when it is complete with all of its elements—those elements being wrongdoing, harm, and causation.'" *Aryeh v. Canon Business Solutions, Inc.*, 55 Cal. 4th 1185, 1191 (2013) (citation omitted). Plaintiff argues the discovery rule and the continuing violations doctrine should be applied to delay the accrual of his claims. Opp. at 7-12. "The common law last element accrual rule is the default, while exceptions to that rule apply precisely to the extent the preconditions for their application are met." *Aryeh*, 55 Cal. 4th at 1196 (citation omitted).

    A.    <u>Plaintiff Alleges Facts that Show He Knew or Should Have Known of His Claims at Least Five Years Ago, Prohibiting Application of the Delayed Discovery Rule</u>

The discovery rule is an equitable doctrine that when applied, "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Aryeh*, 55 Cal. 4th at 1192 (quoting *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (1999)).[1] "In order to rely on the discovery rule for delayed accrual of a cause of action, 'a plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence.'" *Fox v. Ethicon Endo-*

---

[1] Plaintiff cites *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 926-27 (9th Cir. 2004) regarding the "federal rule" for accrual for statute of limitations purposes for a federal civil rights claim under 42 U.S.C. § 1983. Opp. at 8. No such claim is alleged against Cedars-Sinai, making this case inapposite.

*Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005).  "[P]laintiffs are charged with presumptive knowledge of an injury if they have 'information of circumstances to put them *on inquiry*' or if they have '*the opportunity to obtain knowledge* from sources open to their investigation.'"  *Fox*, 35 Cal. 4th at 807-08 (emphasis in original).

"Plaintiff first discovered that he suffered from kidney disease approximately 24 years ago when he became ill and passed out."  FAC ¶ 50.  "[H]aving been diagnosed with kidney disease, Plaintiff underwent monthly testing of his eGFR to determine his kidney function."  FAC ¶ 51.  Plaintiff alleges there are two ways to get on the national waitlist to be awarded a donor kidney: (1) an eGFR test score below 20 ml/min; or (2) starting dialysis.  FAC ¶¶ 3, 10, 33.  "Upon information and belief, at all times the race-based coefficient was used to artificially inflate Plaintiff's eGFR scores."  FAC ¶ 51.  Plaintiff alleges facts that show doctors explained the race-based coefficient's use in calculating eGFR test scores to their African American patients.  FAC ¶ 39.  Doctors discussed in the public forum the use of the race-based coefficient.  FAC ¶ 39.  "For example, in November 2011, Dr. Toni Martin published an article in the *American Journal of Kidney Diseases* that questioned the practice [of using a race-based coefficient], explaining that when she attempts to explain the policy to Black patients, she 'get[s] a snort of disbelief[.]' and noting the history of purported genetic differences being used against Black Americans against a backdrop of 'separate and unequal.'"  FAC ¶ 39. These facts demonstrate "the *opportunity to obtain knowledge* from sources open to" investigation.  *Fox*, 35 Cal. 4th at 807-08 (emphasis in original).  He does not save his claim by now arguing that he did not take advantage of the opportunity to obtain knowledge.

Plaintiff alleges the race-based coefficient has been used since he was diagnosed twenty-four years ago, his doctor was an information source available to him, and the 2011 article was publicly available.  FAC ¶¶ 35, 39, 50-51.  His

argument that he "is not a doctor such that he could reasonably be imputed with knowledge of every medical journal article concerning kidney disease" (Opp. at 10) is not the standard for presumptive knowledge. *Fox*, 35 Cal. 4th at 807-08. Inquiry notice or informational sources open to his investigation is the test. *Id.* His argument that he could not "have discovered use of the race-based coefficient and its discriminatory nature" because the use of the race-based coefficient was the "standard of care" as argued by Cedars-Sinai and he is not a doctor who could "research the policy, and reach an opposite conclusion…" misses the point. Opp. at 9-10. Plaintiff alleges the race-based coefficient is discriminatory on its face. FAC ¶¶ 4-5, 35, 37-39. This by itself was enough to put him on inquiry notice. Because he alleges facts showing he was able to discover all the facts, as a matter of law he is charged with presumptive knowledge of the alleged discrimination in the race-based coefficient.

      Plaintiff argues Cedars-Sinai characterizes his injury as "the delay in accrual of wait time." Opp. at 8. His own allegations characterize it as such:

> Plaintiff has now been on the national kidney transplant waitlist for more than five years, but upon information and belief, could have qualified to accrue wait time years earlier absent application of the race-based coefficient. As recently as December of 2022, Plaintiff was advised he 'finished second' for a kidney, but upon information and belief, had Plaintiff's wait time been properly calculated, without regard to his race, Plaintiff would have already received a transplant kidney.

FAC ¶ 18. He alleges: "When a new patient is added to the waitlist, the referring hospital enters the patient's name and relevant medical information, including eGFR scores, into the UNet software, which tracks patient medical information and wait time." FAC ¶ 30. "Accordingly, but for the use of the race-based coefficient, Plaintiff would have begun to accrue wait time prior to January 2018, entitling Plaintiff to an earlier spot in line that would have increased Plaintiff's chances to receive a donor kidney." FAC ¶ 54. He alleges he should have been placed on the

waitlist "years earlier" than January 2018, which is when the UNet system began to track his accrued wait time, and the loss in the wait time accrued prior to January 2018 is what lowered his chances of receiving a donor kidney sooner. He alleges this was the result of the use of the race-based coefficient, which he had the opportunity to discovery since his diagnosis twenty-four years ago. His own allegations show the delayed discovery rule does not apply.

Because the discovery rule does not apply, and because he pleads facts that show his claims accrued more than five years ago, all of his claims are barred by the statute of limitations.

### B. Plaintiff Fails to Allege Facts to Support Application of Either the Continuing Violation or Continuous Accrual Doctrines

Plaintiff references both the continuing violation doctrine and the continuous accrual doctrine. It is not clear which he intends to argue. Opp. at 10-12. Neither saves his claims. "The continuing violation doctrine aggregates a series of wrongs or injuries for purposes of the statute of limitations, treating the limitations period as accruing for all of them upon commission or sufferance of the last of them." *Aryeh*, 55 Cal. 4th at 1192 (citations omitted). "[U]nder the theory of continuous accrual, a series of wrongs or injuries may be viewed as each triggering its own limitations period, such that a suit for relief may be partially time-barred as to older events but timely as to those within the applicable limitations period." *Aryeh*, 55 Cal. 4th at 1192 (citation omitted).

Plaintiff begins this argument focused on the continuous accrual doctrine. Opp. at 10-11. "However, unlike the continuing violation doctrine, which renders an entire course of conduct actionable, the theory of continuous accrual supports recovery only for damages arising from those breaches falling within the limitations period." *Aryeh*, 55 Cal. 4th at 1199. "'The continuing accrual rule effectively limits the amount of retroactive relief a plaintiff or petitioner can obtain to the benefits or obligations which came due within the limitations period.'" *Id.* (citation omitted).

"Consequently, if applicable here, the theory would permit [plaintiff] to sue, but only for those discrete acts occurring within [the limitations period]." *Id.* at 1199-1200.  As discussed above, any accrued wait time he was entitled to accrued more than five years before he filed suit, which is outside the limitations period for each of his claims.  Thus, the continuous accrual doctrine does not save his claims.

      Plaintiff argues Cedars-Sinai mischaracterized his injury as the loss in accrual of wait time when his injury stems from Cedars-Sinai not updating records to correct his accrued wait time after UNOS announced its policy change in June 2022.  Opp. at 10-11.  This is not what he alleged.  He alleged UNOS announced its policy prohibiting the use of the race-based coefficient in eGFR tests scores in June 2022 which went into effect in July 2022.  FAC ¶¶ 12, 45.  In other words, UNOS told Cedars-Sinai to not submit eGFR test scores that applied the race-based coefficient from July 2022 onwards.  In January 2023, UNOS directed transplant hospitals to determine if anyone needed a modification in their wait time based on recalculated eGFR test scores, to submit requests for modifications for eligible patients, and to complete the process within one year.  FAC ¶¶ 13, 47.  Meaning the basis for Cedars-Sinai to request any modification it determined Plaintiff was eligible for did not go into effect until at the earliest January 2023.  Plaintiff alleges no facts—allegations upon information and belief that are not explained are not facts—to support that the race-based coefficient was used in his eGFR test scores after June 2022.  *See* FAC ¶ 51.  As for investigating whether patients are eligible for wait time modifications, he alleges facts that show Cedars-Sinai is doing exactly that.  FAC ¶ 59.  He alleges no facts to show Cedars-Sinai was the cause of his not receiving a donor kidney in December 2022 other than allowing use of a race-based coefficient on his eGFR test score that got him on the wait list five years prior.  No facts about the patient who received the donor kidney in December 2022 are alleged.  No facts are alleged to suggest that patient would not have received that kidney even if Plaintiff had been on the wait list earlier.  No inference can be made about why

that patient and not Plaintiff received that kidney. Mot. at 3. Plaintiff's allegations fail to demonstrate the continuous accrual doctrine applies to or saves his claims from the statute of limitations.

Plaintiff argues his "claims are all timely when considered together under the continuing violations doctrine." Opp. at 11. Plaintiff cites two cases, both of which show the doctrine does not apply to his case. Opp. at 11. In *Aryeh*, the plaintiff leased copy machines from the defendant. *Aryeh*, 55 Cal. 4th at 1189-90. The lease allowed a maximum number of copies per month with copies above that number resulting in extra charges being added to the monthly bill. *Id.* at 1190. The plaintiff was charged for overage copies his company did not make but that defendant's service workers made when performing maintenance. *Id.* The court found the overage charges, which were charged as incurred on monthly invoices, were "a series of discrete, independently actionable wrongs," and not "a wrongful course of conduct [that] became apparent only through the accumulation of a series of harms." *Id.* at 1198. The court affirmed the Court of Appeal rejecting application of the continuing violation doctrine. *Id.*

The court explained the continuing violation doctrine applies when the individual ongoing harms are slight such that each individual harm on its own does not warrant a claim or invoking the court's oversight while the parties try to resolve the issue. *Aryeh*, 55 Cal. 4th at 1198 (citations omitted). However, at some point, the pattern of conduct may "justify treating the acts as an indivisible course of conduct actionable in its entirety, notwithstanding that the conduct occurred partially outside and partially inside the limitations period." *Id.*

The application of the continuing violation doctrine was allowed in the second case, *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1059-60 (2005), which involved retaliation by an employer against an employee. "[Plaintiff] alleges that after she refused to carry out an order from a male supervisor to terminate the employment of a female sales associate who, in the supervisor's view, was not

sufficiently sexually attractive or 'hot', she was subjected to heightened scrutiny and increasingly hostile adverse treatment that undermined her relationship with the employees she supervised and caused severe emotional distress that led her to leave her position." *Id.* at 1035.  The court held the continuing violation doctrine may be applied "where the plaintiff alleges a retaliatory *course of conduct* rather than a discrete act of retaliation." *Id.* at 1058-59 (emphasis in original).

These cases show the continuing violation doctrine does not apply.  Plaintiff alleges he should have been added to the national waitlist more than five years ago. FAC ¶ 54.  This is not a matter of a continuous course of conduct harming him in an imperceptible way over time such that it eventually rose to the level of actionable conduct but could not be discovered prior to that time.  He alleges he lost accrued wait time over five years ago because the race-based coefficient was used in calculating his eGFR.  FAC ¶ 54.  He alleges facts demonstrating that he could have discovered this fact at least by 2011 but really at any time during his twenty-four years of living with his kidney disease diagnosis and having his eGFR tested.  FAC ¶¶ 35, 39, 50-51.  None of the equitable doctrines he attempts to invoke apply to the facts he alleged.

His three claims against Cedars-Sinai, which have statutes of limitations ranging between two and four years (Mot. at 5-6), are barred by the statute of limitations and must be dismissed.

## II.   PLAINTIFF FAILS TO REFUTE HE HAS NOT ALLEGED CEDARS-SINAI OWED HIM A FIDUCIARY DUTY OR BREACHED A FIDUCIARY DUTY

Cedars-Sinai's Motion argues that Plaintiff did not allege facts demonstrating that it owed him a fiduciary duty that it breached.  Plaintiff's Opposition points to the same four cases Cedars-Sinai analyzed in its Motion.  Mot. at 7-9; Opp. at 13-14.  He fails, however, to provide a meaningful or persuasive rebuttal analysis of these cases.  *Id.*  As noted in Cedars-Sinai's Motion, three of the cases found a limited "duty of a fiduciary nature" was owed by a hospital to "its patients and the

public to deliver safe and competent medical services." *Weinberg v. Cedars-Sinai Medical Center*, 119 Cal. App. 4th 1098, 1109 (2004). This duty stems from Cal. Bus. & Prof. Code § 809.05. *Id.* Plaintiff does not address this statute or the nature of the duty arising from Cal. Bus. & Prof. Code § 809.05. "It is the policy of this state that peer review be performed by licentiates. This policy is subject to the following limitations…" Cal. Bus. & Prof. Code § 809.05. Doctors are expected to follow safe and competent medical practices as accepted by the medical community. Hospitals owe a duty to its patients and the public to ensure the doctors providing medical care through the hospital follow safe and competent medical practices as accepted by the medical community. "The governing bodies of acute care hospitals have a legitimate function in the peer review process. In all peer review matters, the governing body shall give great weight to the actions of peer review bodies and, in no event, shall act in an arbitrary or capricious manner." Cal. Bus. & Prof. Code § 809.05(a). That the hospital must give great weight to peer review bodies who are reviewing the actions of other medical licentiates according to accepted medical care standards does not provide a basis to infer Cedars-Sinai owed a duty to prevent the then-accepted medical standard of care from being followed.

Plaintiff argues the California Supreme Court's decision in *Moore v. Regents of University of California*, 51 Cal. 3d 120 (1990), is not controlling because his case is not about "malfeasance by two individual employees." Opp. at 13-14. *Moore* shows there is no general fiduciary duty owed by hospitals to patients. *Moore*, 51 Cal. 3d at 133. It also shows even doctors do not have a broad fiduciary duty to their patients. *Id.* at 131 n.10.

Because there is no general fiduciary duty owed by Cedars-Sinai to Plaintiff and because Plaintiff has not alleged facts showing Cedars-Sinai failed to oversee that its medical staff provide safe and competent medical care according to peer review standards, he fails to allege a fiduciary duty was owed and breached. This claim must be dismissed.

### III. PLAINTIFF FAILS TO REFUTE HE LACKS STATUTORY STANDING TO BRING A UCL CLAIM

Plaintiff admits that in order to have standing under California law to bring a claim for violation of the UCL, he must have lost money or property as a result of alleged unfair competition.  Mot. at 10; Opp. at 12; Cal. Bus. & Prof. Code § 17204. Plaintiff argues "delay in receiving a donor kidney caused [him] to incur economic damages."  Opp. at 12.  This ignores that the cause of his allegedly incurred economic damages was his underlying kidney disease.  Mot. at 10.  Plaintiff alleges, "[i]n January of 2022, Plaintiff's condition worsened to the point that he became unable to work, and since that time, Plaintiff has been unable to return to work. This has caused Plaintiff significant economic harm in the form of lost wages and medical expenses, particularly ongoing dialysis costs."  FAC ¶ 62.  Significantly, it is because his "conditioned worsened" that he became unable to work and he lost wages.  There is no allegation that the alleged violation of the UCL caused lost wages.  Similarly, he alleges it was his "worsened condition" that caused "medical expenses, particularly dialysis costs."  FAC ¶ 62.  It was not the alleged violation of the UCL that caused him to incur "medical expenses."  Whether he would have received a kidney if he had been added to the wait list earlier is speculation.  While he contends, "[u]pon information and belief, but for application of the race-based coefficient to Plaintiff's eGFR score, Plaintiff would have already received a donor kidney" (FAC ¶ 55), he alleges no facts to support this "information and belief." Making allegations "upon information and belief" is not a magic wand that washes away the requirement to plead facts.  No *facts* about the patient who received the donor kidney in December 2022, or the kidney itself, are alleged.  Nor are they compared to facts about Plaintiff.  FAC ¶ 18.  In short, there is no factual basis for his "information and belief."  He does not allege or argue his dialysis cost more than it should have or that Cedars-Sinai provided or charged him for that treatment.  *See* Mot. at 10.  Plainly his inability to work *because of the progression of his disease* is

not caused by the alleged unfair competition.  Plaintiff fails to allege facts to show he lost money or property as a result of the use of the race-based coefficient rather than his underlying disease.  Plaintiff lacks standing to bring this claim.  This claim must be dismissed.

## IV.  CONCLUSION

Plaintiff alleges facts that show his claims are barred by the statute of limitations.  He does not allege facts to satisfy his burden of proof that the discovery rule, continuing violation doctrine, or continuous accrual doctrine save his claims.  Each of his claims must be dismissed as time-barred.  Alternatively, Plaintiff fails to show Cedars-Sinai owed him a fiduciary duty it breached, requiring dismissal of that claim.  He lacks statutory standing to bring a UCL claim because he fails to allege facts to show he lost money or property as a result of alleged unfair competition.  Because the parties met and conferred and Plaintiff was made aware of these defects but elected to not amend, Cedars-Sinai respectfully requests this case be dismissed with prejudice because amendment would be futile.

DATED:  June 30, 2023

JON P. KARDASSAKIS
DANIELLE E. STIERNA
LEWIS BRISBOIS BISGAARD & SMITH LLP

By:  /s/ Danielle E. Stierna
DANIELLE E. STIERNA
Attorneys for Defendant, CEDARS-SINAI MEDICAL CENTER

