1  Shawn R. Obi (SBN: 288088)
   sobi@winston.com
2  WINSTON & STRAWN LLP
   333 S. Grand Avenue
3  Los Angeles, CA 90071-1543
   Telephone: (213) 615-1700
4  Facsimile: (213) 615-1750

5  Daniel M. Blouin (admitted *pro hac vice*)
   dblouin@winston.com
6  Thomas G. Weber (admitted *pro hac vice*)
   tgweber@winston.com
7  WINSTON & STRAWN LLP
   35 W. Wacker Drive
8  Chicago, IL 60601-9703
   Telephone: (312) 558-5600
9  Facsimile: (312) 558-5700

10 Attorneys for Defendant
   UNITED NETWORK FOR
11 ORGAN SHARING

12

13                    **UNITED STATES DISTRICT COURT**

14                    **CENTRAL DISTRICT OF CALIFORNIA**

15

16 ANTHONY RANDALL,                    Case No. 2:23-CV-02576-MEMF-MAA

17          Plaintiff,

18     v.                             DEFENDANT UNITED NETWORK FOR
                                      ORGAN SHARING'S ANSWER AND
                                      AFFIRMATIVE DEFENSES TO
19 UNITED NETWORK FOR ORGAN           PLAINTIFF'S SECOND AMENDED
   SHARING and CEDARS-SINAI MEDICAL   COMPLAINT
20 CENTER,
                                      Action Filed:  April 5, 2023
21          Defendants.

22

23

24

25

26

27

28

**ANSWER**

Defendant United Network for Organ Sharing ("UNOS") hereby responds to Plaintiff's Second Amended Complaint ("Complaint"), filed on March 29, 2024 (Dkt. No. 53), as follows:

1.     Black Americans are more than three times as likely to suffer from kidney failure when compared to White Americans. As a group, and as a result of ongoing racial inequality, Black Americans are at higher risk for maladies such as high blood pressure, obesity, diabetes, and heart disease, each of which increase the likelihood of suffering kidney disease.

**ANSWER:  UNOS admits the existence of public statements similar to the allegations in this Paragraph 1 but currently lacks information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1 of the Complaint and, therefore, UNOS denies such allegations.**

2.     Despite being overrepresented when it comes to kidney disease, and overrepresented on the national waitlist for donor kidneys, Black Americans are much less likely than their White counterparts to actually receive a kidney transplant.

**ANSWER:  UNOS admits the existence of public statements similar to the allegations in this Paragraph 2 but currently lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 2 of the Complaint and, therefore, UNOS denies such allegations.**

3.     Kidney function is measured by an estimated glomerular filtration rate test, commonly referred to as eGFR. A patient's eGFR score is used to determine when the patient is eligible to begin accruing wait time on the national kidney waitlist, with the score needing to fall below 20 ml/min to qualify a patient to begin accruing wait time.

**ANSWER:  UNOS admits that estimated glomerular filtration rate ("eGFR") is a metric for measuring kidney function.  UNOS further admits that a candidate's eGFR score is among one of several criteria that may be used to determine whether a candidate is eligible to begin accruing time on the national kidney transplant waitlist.  UNOS further admits that a candidate's eGFR score of less than or equal to 20 ml/min may be a factor in determining when a candidate begins accruing wait time on the transplant list.  Except as expressly so**

1

1    admitted, the allegations set forth in Paragraph 3 are denied.

2         4.    When current tests for the eGFR were developed, a few flawed studies indicated

3    Black Americans had higher creatinine extraction rates, and instead of considering whether this

4    difference could be caused by non-racial societal factors, it was postulated by the developers of the

5    eGFR that Black Americans' scores could be explained because Black Americans have more muscle

6    mass and thus more creatinine in their systems than White Americans.

7         **ANSWER:   UNOS admits that certain studies indicated that Black individuals had**

8    **higher creatinine extraction rates than other individuals and scientists postulated that the**

9    **reason for these higher rates was that Black individuals have more muscle mass and thus more**

10   **creatinine in their systems than White individuals.   UNOS lacks knowledge or information**

11   **sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 4**

12   **of the Complaint and, therefore, UNOS denies such allegations.**

13        5.    Based on this postulation, the creators of the eGFR added a race-based modifier to

14   eGFR scores, known as the "race-based coefficient," which artificially inflates the scores of Black

15   Americans by 16–18%. That is, eGFR is calculated irrespective of race, and then only for Black

16   patients, the score is increased by 16–18%, based upon the flawed premise that Black Americans

17   have greater muscle mass and thus naturally have more creatinine in their bodies.

18        **ANSWER:   UNOS admits that one method of calculating eGFR uses a race-conscious**

19   **coefficient in calculating eGFR scores of Black individuals. UNOS further admits that the use**

20   **of the race-conscious coefficient in some eGFR calculations was based on the assumption that**

21   **Black individuals have greater muscle mass and thus naturally more creatinine in their bodies.**

22   **UNOS lacks knowledge or information sufficient to form a belief as to the truth of the**

23   **remaining allegations contained in Paragraph 5 of the Complaint and, therefore, UNOS denies**

24   **such allegations.**

25        6.    This, of course, is junk science supported only by racial stereotypes, and not any valid

26   scientific studies. As described in an article titled *Systemic Kidney Transplant Inequities for Black*

27   *Individuals: Examining the Contribution of Racialized Kidney Function Estimating Equations*, the

28   theory supporting the race-based modification to Black patients' eGFR scores has "not been

2

1    substantiated by rigorous scientific evidence[.]"

2        **ANSWER:  Denied.**

3        7.    Indeed, the United Network for Organ Sharing ("UNOS") recently admitted as much,

4    posting the following passage on its website:



11    **ANSWER:  UNOS admits that the language in the above screenshot appears on**

12   **UNOS.org.   Except as expressly so admitted, the allegations set forth in Paragraph 7 are**

13   **denied.**

14       8.    This is important because eGFR scores are used to determine when a patient is

15   eligible to begin accruing wait time on the national kidney waitlist, maintained by UNOS, and wait

16   time is a key factor in determining which patient will be awarded a kidney, as kidneys become

17   available. Again, for an eGFR score to qualify a patient with kidney disease to accrue wait time, the

18   eGFR score must fall below 20 ml/min.

19       **ANSWER:  UNOS admits that a candidate's eGFR score is one of several criteria that**

20   **may be used to determine whether a candidate is eligible to begin accruing time on the national**

21   **kidney transplant waitlist.   UNOS further admits that it facilitates the administration of the**

22   **national kidney transplant waitlist under federal contract with the Department of Health and**

23   **Human   Services,   on   behalf   of   the   Organ   Procurement   and   Transplantation   Network**

24   **("OPTN").  UNOS further admits that the amount of time on the waitlist that a candidate has**

25   **accrued is a factor in determining kidney allocation.  UNOS further admits that a candidate's**

26   **eGFR score of less than or equal to 20 ml/min is one of several criteria that may be used to**

27   **qualify a candidate to begin accruing time on the waitlist.  Except as expressly so admitted, the**

28   **allegations set forth in Paragraph 8 are denied.**

9. However, until recently, application of the race-based coefficient artificially increased Black patients' eGFR scores above that threshold such that Black patients' unmodified eGFR scores must have fallen well below 20 ml/min before they began accruing wait time.

**ANSWER:  Denied.**

10. Indeed, because of the race-based coefficient, many Black patients never began to accrue wait time because of a qualifying eGFR score, but were instead delayed until such time as they were forced to begin dialysis, the other possible triggering factor for wait time, which is recommended when kidney function falls below 15 ml/min, or when certain symptoms of kidney disease present themselves.

**ANSWER:  UNOS admits that a transplant hospital's use of the race-conscious coefficient in calculating a black candidate's eGFR score may have increased the candidate's eGFR score.  UNOS further admits that the date that a candidate begins regularly administered dialysis as an End Stage Renal Disease ("ESRD") patient in a hospital-based, independent non-hospital based, or home setting is one of several criteria used to determine whether a candidate is eligible to begin accruing time on the national kidney waitlist.  UNOS lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 10 of the Complaint, and therefore, UNOS denies such allegations.**

11. It is true that UNOS recently announced it was outlawing use of the race-based coefficient when measuring eGFR scores. UNOS's announcements rightly admit the discriminatory nature of their past policy, but will also prove too little too late for many Black Americans currently suffering kidney failure.

**ANSWER:  UNOS admits that on June 27, 2022, the OPTN Board of Directors approved a policy that prohibits transplant programs from submitting eGFR scores to UNOS that are calculated using the race-conscious coefficient.  Except as expressly so admitted, the allegations set forth in Paragraph 11 are denied.**

12. In this regard, UNOS announced its intent to change course and outlaw use of the race-based coefficient in June of 2022, but did nothing for more than six months to address the

4

erroneous wait time calculations for Black Americans already on the national kidney waitlist.

**ANSWER:   UNOS admits that on June 27, 2022, the OPTN Board of Directors approved a policy that prohibits transplant programs from submitting eGFR scores calculated using the race-conscious coefficient.  Except as expressly so admitted, the allegations set forth in Paragraph 12 are denied.**

13.    In January of 2023, UNOS did instruct donor hospitals to notify Black candidates of the policy change and investigate whether Black members of their donor lists were eligible for a wait time modification, but UNOS gave donor hospitals a year to complete this process, until January of 2024.

**ANSWER:   UNOS admits that on January 5, 2023, it published an implementation notice directing transplant programs to notify listed Black candidates whose eGFR scores were calculated using the race-conscious coefficient of the policy change, determine whether any of these candidates were eligible for a wait time modification, and submit waiting time modification requests to UNOS by January 3, 2024.  Except as expressly so admitted, the allegations set forth in Paragraph 13 are denied.**

14.    Indeed, Cedars-Sinai, the donor hospital for Plaintiff and 205 other Black Americans suffering from kidney disease, took no steps whatsoever to address erroneous wait time calculations, until March 27, 2023, when it advised members of its waitlist that the issue would be considered over "[o]ver the next several months[.]"

**ANSWER:  UNOS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 14 of the Complaint and, therefore, UNOS denies such allegations.**

15.    Unfortunately, in the time between June of 2022 and January of 2024, tens of thousands of Black Americans will be prejudiced in their candidacy for a donor kidney by use of erroneous wait time calculations, missing out on donor kidneys they rightfully should have been awarded, incurring significant economic losses, suffering from worsened kidney disease, and in some instances, dying.

**ANSWER:  UNOS lacks knowledge or information sufficient to form a belief as to the**

1   truth of the allegations contained in Paragraph 15 of the Complaint and, therefore, UNOS
2   denies such allegations.

3      16.   In other words, many Black Americans suffering from kidney disease did not have 18
4   months for UNOS to fix its wait time calculations, and during this period, Black Americans continue
5   to suffer racial discrimination in the kidney donation process, despite all involved admitting that the
6   current process is discriminatory to Black Americans.

7      **ANSWER:  Denied.**

8      17.   Plaintiff Anthony Randall is one such Black American that was on UNOS's national
9   kidney transplant waitlist. Plaintiff, having suffered previous symptoms of kidney failure, took
10  monthly eGFR tests for years, until such time as his eGFR score, despite continued application of the
11  race-based coefficient, was low enough for him to begin accruing wait time on the national kidney
12  waitlist.

13     **ANSWER:  UNOS admits that Plaintiff was on the national kidney transplant waitlist**
14  **at the time he filed this lawsuit.  UNOS lacks knowledge or information sufficient to form a**
15  **belief as to the truth of the remaining allegations contained in Paragraph 17 of the Complaint**
16  **and, therefore, UNOS denies such allegations.**

17     18.   Plaintiff was on the national kidney transplant waitlist for more than five years, but
18  upon information and belief, should have qualified to accrue wait time years earlier absent
19  application of the race-based coefficient. As recently as December of 2022, Plaintiff was advised he
20  "finished second" for a kidney, but upon information and belief, had Plaintiff's wait time been
21  properly calculated, without regard to his race, Plaintiff would have received a transplant kidney in
22  December of 2022, or earlier.

23     **ANSWER:  UNOS admits that Plaintiff was on the national kidney transplant waitlist**
24  **at the time he filed this lawsuit, but denies that, at that time, he had been on the waitlist for**
25  **more than five years.  UNOS lacks knowledge or information sufficient to form a belief as to**
26  **the truth of the remaining allegations contained in Paragraph 18 of the Complaint and,**
27  **therefore, UNOS denies such allegations.**

28     19.   New donor kidneys become available on a daily basis, and as the health of Black

6

1    patients on the waitlist deteriorates, the failure to properly calculate Black patients' wait time such

2    that they can be fairly considered for kidneys as they become available jeopardize their lives. This is

3    true for the other 205 Black patients at Cedars-Sinai, and approximately 27,500 Black members of

4    the national kidney waitlist.

5           **ANSWER:  UNOS admits that donated kidneys frequently are allocated for transplant.**

6    **UNOS lacks knowledge or information sufficient to form a belief as to the truth of the**

7    **remaining allegations contained in Paragraph 19 of the Complaint and, therefore, UNOS**

8    **denies such allegations.**

9           20.     Plaintiff Anthony Randall is an individual residing in Los Angeles, California.

10          **ANSWER: UNOS lacks knowledge or information sufficient to form a belief as to the**

11   **truth of the allegations in Paragraph 20 and, therefore, UNOS denies such allegations.**

12          21.     Plaintiff is informed and believes, and thereon alleges, that Defendant UNOS is a

13   Virginia nonprofit corporation with its principal place of business in Richmond, Virginia.

14          **ANSWER:  Admitted.**

15          22.     Plaintiff is informed and believes, and thereon alleges, that Defendant Cedars-Sinai

16   Medical Center ("Cedars-Sinai") is a California nonprofit corporation with its principal place of

17   business in Los Angeles, California.

18          **ANSWER:  UNOS lacks knowledge or information sufficient to form a belief as to the**

19   **truth of the allegations in Paragraph 22 and, therefore, UNOS denies such allegations.**

20          23.     This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. §§

21   1331, 1332(d), and 1343 because Plaintiff asserts a federal cause of action alleging racial

22   discrimination, and because at least one member of the putative classes defined hereinafter is a

23   citizen of a different state than all Defendants, and the amount in controversy exceeds $5,000,000.

24   This Court further has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. §

25   1367.

26          **ANSWER:  Paragraph 23 states legal conclusions to which no response is required.  To**

27   **the extent a response is required, UNOS admits that Plaintiff asserts a federal cause of action**

28   **but denies the remaining allegations in Paragraph 23.**

7

DEFENDANT UNITED NETWORK FOR ORGAN SHARING'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S SECOND
AMENDED COMPLAINT – CASE NO. 2:23-CV-02576-MEMF-MAA

24.     Venue in this district is proper pursuant to 28 U.S.C. § 1391 because Plaintiff resides in this District and has been affected by Defendants' unlawful policies and procedures within the District, Cedars-Sinai's principal place of business is within this District, and Cedars-Sinai's alleged actions have occurred within the District. Defendants also apply their unlawful policies and procedures to additional putative class members residing within the District. Thus, a substantial part of the events or omissions that gave rise to the claims asserted herein occurred within this District.

**ANSWER:  Paragraph 24 states legal conclusions to which no response is required.  To the extent a response is required, UNOS lacks knowledge or information sufficient to form a belief as to whether Plaintiff resides in this District and whether Cedars-Sinai's principal place of business is within this District.  UNOS denies the remaining allegations in Paragraph 24.**

25.     This Court has personal jurisdiction over UNOS because UNOS conducts operations within California by virtue of its management of the kidney donor list for all patients residing within the State, including Plaintiff. UNOS makes decisions as to which patients residing in California will be offered donor kidneys.

**ANSWER:  Paragraph 25 states legal conclusions to which no response is required.  UNOS admits that it facilitates the administration of the national kidney transplant waiting list and that certain candidates on the waitlist are California residents. Except as expressly so admitted, and to the extent a response is required, the allegations set forth in Paragraph 25 are denied.**

26.     This Court has personal jurisdiction over Cedars-Sinai because Cedars-Sinai maintains its principal place of business within the State, and harmed Plaintiff by virtue of the unlawful conduct alleged herein within this State.

**ANSWER:  Paragraph 26 states legal conclusions to which no response is required.  To the extent a response is required, UNOS lacks knowledge or information to form a belief as to the truth of allegations of Paragraph 26 and, therefore, UNOS denies such allegations.**

27.     In 1984, Congress passed the National Organ Transplant Act, creating the Organ Procurement and Transplantation Network ("OPTN"), which was tasked with maintaining a national registry for organ matching. Per the Act, this registry was to be operated by a private, non-profit

1   organization under Federal contract.

2   **ANSWER:  UNOS admits that in 1984 Congress passed the National Organ Transplant**

3   **Act, creating the OPTN. Answering further, the language of the referenced legislation speaks**

4   **for itself. Except as expressly so admitted, and to the extent a response is required, the**

5   **allegations set forth in Paragraph 27 are denied.**

6   28.    Since that time, UNOS has acted as that private, non-profit organization, and per its

7   website, UNOS "[m]anag[es] the national transplant waiting list, matching donors to recipients 24

8   hours a day, 365 days a year." UNOS establishes and implements policy concerning how donor

9   kidneys will be awarded to patients with kidney disease.

10  **ANSWER:  UNOS admits that it holds the OPTN contract and that it manages the**

11  **national waiting lists for organ transplants consistent with its contractual requirements.**

12  **Except as expressly so admitted, UNOS denies the allegations in Paragraph 28.**

13  29.    To be placed on the national kidney transplant waitlist, a patient must first visit one of

14  200+ transplant hospitals, and receive a referral from their physician. In this way, the transplant

15  hospitals, like Cedars-Sinai, serve as a gatekeeper to patients seeking to be placed on the national

16  kidney waitlist.

17  **ANSWER:  UNOS admits that a patient must be registered on the national kidney**

18  **transplant waiting list by an OPTN-approved transplant center.   Except as expressly so**

19  **admitted, UNOS denies the allegations in Paragraph 29.**

20  30.    The national kidney transplant waitlist is maintained using UNOS software, known as

21  UNet. When a new patient is added to the waitlist, the referring hospital enters the patient's name

22  and relevant medical information, including eGFR scores, into the UNet software, which tracks

23  patient medical information and wait time.

24  **ANSWER: UNOS admits that transplant hospitals input certain patient information**

25  **into UNet. Except as expressly so admitted, UNOS denies the allegations in Paragraph 30.**

26  31.    Each time a donor kidney becomes available, UNet's algorithm considers the

27  information maintained in UNet, and generates a list of potential matches, ranking potential matches

28  on the national kidney waiting list. These kidneys are then offered to patients through the transplant

1  hospitals, in accordance with the UNet-generated rankings.

2      **ANSWER:** UNOS admits that the UNet system contains certain patient information.

3  **UNOS further admits that the UNet algorithm generates a list of potential matches when a**

4  **donor kidney becomes available and that donor kidneys may be offered to patients through**

5  **transplant hospitals. Except as expressly so admitted, UNOS denies the allegations in**

6  **Paragraph 31.**

7      32.    Upon information and belief, the primary factor considered by UNet's algorithm to

8  rank candidates for potentially compatible kidneys is a patient's accrued wait time.  In other words,

9  UNet will identify patients that are a medical match for a particular available kidney, and then rank

10  those patients according to wait time.

11      **ANSWER:** UNOS admits that a candidate's accrued wait time is one of several factors

12  **considered by UNet's algorithm in calculating ranking for kidney transplant recipients.**

13  **Except as expressly so admitted, UNOS denies the allegations in Paragraph 32.**

14      33.    Importantly, referral to the waitlist does not automatically start the clock on

15  qualifying wait time. To accrue qualifying wait time, generally a patient's eGFR score must either

16  fall below 20 ml/min, or the patient must begin dialysis.

17      **ANSWER:** UNOS admits that a candidate registered on the national kidney transplant

18  **waitlist will begin accruing wait time when certain criteria are met. Except as expressly so**

19  **admitted, UNOS denies the allegations in Paragraph 33.**

20      34.    Again, UNOS is responsible for enacting policy concerning the selection of which

21  patients receive which donor kidneys. In this regard, UNOS offers as one of its strategic goals to

22  "[p]rovide equity in access to transplants[.]" UNOS has fallen far short of its stated goal.

23      **ANSWER:** UNOS admits that one of its strategic goals is to provide equity in access to

24  **transplants. Except as expressly so admitted, UNOS denies the allegations in Paragraph 34.**

25      35.    For decades, the race-based coefficient was applied to artificially inflate eGFR scores

26  for Black Americans, overstating their kidney function by 16–18%, based upon the underlying

27  assumption that Black Americans have greater muscle mass and thus naturally have more creatinine

28  in their system.

10

DEFENDANT UNITED NETWORK FOR ORGAN SHARING'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S SECOND
AMENDED COMPLAINT – CASE NO. 2:23-CV-02576-MEMF-MAA

1    **ANSWER:  UNOS admits that one method of calculating an eGFR score applies a race-**

2    **conscious coefficient that can increase the eGFR scores for Black individuals by 16–18%.**

3    **UNOS further admits that one of the explanations for that method is that Black individuals**

4    **have greater muscle mass and thus naturally have more creatinine in their system.   UNOS**

5    **lacks knowledge or information as to the extent of this method's use by transplant programs.**

6    **Except as expressly so admitted, UNOS denies the allegations of Paragraph 35.**

7    36.    As noted above, patients do not begin accruing wait time on the national kidney

8    waitlist until their eGFR score reaches 20 ml/min. But for Black patients, even when their

9    unadjusted eGFR score fell below 20 ml/min, the race-based coefficient was applied to artificially

10   inflate the Black patients' eGFR scores above 20 ml/min, preventing them from qualifying to accrue

11   wait time. Thus, Black patients' eGFR scores had to fall well below 20 ml/min before they began to

12   accrue wait time.

13   **ANSWER:  UNOS admits that a candidate's eGFR score of less than or equal to 20**

14   **ml/min is one of several criteria that could qualify a candidate to begin accruing time on the**

15   **national kidney transplant waitlist.   UNOS admits further that a transplant program's**

16   **application of the race-conscious coefficient in calculating a Black candidate's eGFR score**

17   **could increase the eGFR score from less than or equal to 20 ml/min to greater than 20 ml/min**

18   **and could thereby prevent the Black candidate from beginning to accrue wait time.  Except as**

19   **expressly so admitted, UNOS denies the allegations of Paragraph 36.**

20   37.    UNOS policy encouraged and allowed for use of the race-based coefficient, and

21   UNOS knowingly used modified eGFR scores and manipulated wait times when ranking patients for

22   kidney transplants. Specifically, UNOS is and has at all times been aware that its UNet software

23   includes an algorithm that uses wait time as the primary factor in ranking patients for donor kidneys,

24   and that its UNet software includes wait times for Black patients that have been manipulated by use

25   of the race-based coefficient. To be clear, this modification was made to Black patients' eGFR

26   scores entirely because of their race, and was not applied to other racial groups.

27   **ANSWER:  UNOS admits that UNet uses an algorithm that includes a candidate's**

28   **accrued wait time on the national transplant waiting list.  UNOS denies the remaining**

1   | **allegations in Paragraph 37.**

2   |   38.   There has never been any serious scientific research to support use of the race-based

3   | coefficient to artificially increase Black patients' eGFR scores. Instead, the race-based coefficient is

4   | based on eugenics-style racism and stereotypes that assume Black Americans are more physically fit

5   | than White Americans and other racial groups.

6   |   **ANSWER:  Denied.**

7   |   39.   Years before UNOS took any action to review its policy allowing for use of the race-

8   | based coefficient, the practice was criticized by doctors for its racially discriminatory nature. For

9   | example, in November of 2011, Dr. Toni Martin published an article in the American Journal of

10  | Kidney Diseases that questioned the practice, explaining that when she attempts to explain the policy

11  | to Black patients, she "get[s] a snort of disbelief[,]" and noting the history of purported genetic

12  | differences being used against Black Americans against a backdrop of "separate and unequal."

13  |   **ANSWER:  UNOS states that the language of the referenced article speaks for itself.**

14  | **UNOS denies the remaining allegations in Paragraph 39.**

15  |   40.   Use of the race-based coefficient seriously diminishes Black patients' chances to

16  | receive a donor kidney, and for Black patients that defeat the odds and ultimately receive a kidney

17  | from the national waitlist, their waiting time is still increased. Indeed, because of this eGFR

18  | manipulation, many Black patients never qualified to accrue wait time because of their eGFR score,

19  | and only began to accrue wait time when they began dialysis.

20  |   **ANSWER:  UNOS admits that a candidate's eGFR score is among the criteria used to**

21  | **determine whether a candidate is eligible to begin accruing time on the national kidney**

22  | **waitlist. UNOS lacks knowledge or information sufficient to form a belief as to the truth of the**

23  | **remaining allegations in Paragraph 40 and, therefore, denies such allegations.**

24  |   41.   All other factors being equal, the above-described practices have resulted in non-

25  | Black patients receiving numerous kidneys that would otherwise have been given to Black

26  | applicants had their wait time been calculated without consideration of race.

27  |   **ANSWER:  UNOS lacks knowledge or information sufficient to form a belief as to the**

28  | **truth of the allegations in Paragraph 41 and, therefore, UNOS denies such allegations.**

42.     The failure to receive donor kidneys has caused significant harm to Black Americans. The unfortunate reality is that many Black Americans have already passed away that would have survived if given fair consideration for a donor kidney.

**ANSWER:  UNOS lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 42 and, therefore, UNOS denies such allegations.**

43.     Other Black Americans have suffered worsened kidney disease and/or been forced to go on dialysis because of the lengthened wait time for a donor kidney. These Black Americans have suffered economic damages in the form of medical expenses and lost wages.

**ANSWER:  UNOS lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 43 and, therefore, UNOS denies such allegations.**

44.     In June of 2022, UNOS admitted the racially discriminatory nature of the race-based coefficient for Black Americans, approving "a measure to require transplant hospitals to use a race-neutral calculation when estimating a patient's level of kidney function." In its press release, UNOS explained that

> For a number of years, some eGFR calculations have included a modifier for patients identified as Black. This practice has led to a systemic underestimation of kidney disease severity for many Black patients. Specifically in organ transplantation, it may have negatively affected the timing of transplant listing or the date at which candidates qualify to begin waiting time for a transplant.

**ANSWER:  UNOS admits that on June 27, 2022, the OPTN Board of Directors approved a policy that prohibits transplant programs from submitting eGFR scores to UNOS that are calculated using the race-conscious coefficient.  UNOS further admits that the above-quoted language appears in an OPTN press release published on June 28, 2022.  Except as expressly so admitted, the allegations of Paragraph 44 are denied.**

45.     UNOS policy officially changed on July 27, 2022, with UNOS policy prior to that time expressly allowing for use of the race-based coefficient to artificially increase Black patients' eGFR scores.

**ANSWER:  UNOS admits that on June 27, 2022, the OPTN Board of Directors approved a policy that prohibits transplant programs from submitting eGFR scores to UNOS**

13

1 **that are calculated using the race-conscious coefficient.  Except as expressly so admitted, the**

2 **allegations of Paragraph 45 are denied.**

3     46.    Nonetheless, UNOS continued to use the race-based coefficient as a default. For more

4 than six months, UNOS took no affirmative steps to adjust wait times and correct for previous use of

5 the race-based coefficient.

6     **ANSWER: Denied.**

7     47.    On January 5, 2023, UNOS announced a new policy that would require donor

8 hospitals to provide two notifications to patients on the national kidney waitlist, one notifying

9 patients that Black Americans will be considered for wait time adjustments where the race-based

10 coefficient delayed their accrual of wait item, and a second notification confirming this process was

11 completed and informing patients of their status. UNOS also directed donor hospitals to investigate

12 which patients are eligible for a wait time adjustment, and request said adjustments within a year,

13 i.e., by January of 2024.

14     **ANSWER:  UNOS admits that on January 5, 2023, it announced a new OPTN policy**

15 **that would require transplant hospitals to provide two notifications to patients on the national**

16 **kidney waitlist, one notifying patients that Black Americans will be considered for wait time**

17 **adjustments where the race-based coefficient delayed their accrual of wait time, and a second**

18 **notification confirming this process was completed and informing patients of their status.**

19 **UNOS also communicated the OPTN directive that transplant hospitals investigate which**

20 **patients are eligible for a wait time adjustment, and request said adjustments within a year,**

21 **_i.e._, by January of 2024.**

22     48.    While this adjustment in policy rightfully acknowledges the problem, it lacked

23 required urgency, and for the 27,500 Black Americans on the national kidney waitlist, such as

24 Plaintiff, the policy change is too little too late. UNOS's policy concerning the race-based coefficient

25 to eGFR scores was racially discriminatory before UNOS ever acknowledged the problem, and

26 instead of making immediate changes, UNOS allowed member transplant hospitals approximately

27 18 months to identify and attempt to correct falsely-calculated wait times.

28     **ANSWER:  Denied.**

14

DEFENDANT UNITED NETWORK FOR ORGAN SHARING'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S SECOND
AMENDED COMPLAINT – CASE NO. 2:23-CV-02576-MEMF-MAA

49.     During this period, Black Americans continued to suffer a race-based disadvantage in their candidacy for a donor kidney—UNet continuing to utilize the old, improperly calculated wait times when awarding kidneys.

**ANSWER:   UNOS admits that information in UNet for some candidates may have contained eGFR calculations prepared by transplant hospitals that included a race-conscious modifier. UNOS lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 49 and, therefore, UNOS denies such allegations.**

50.     UNOS ultimately failed to process wait-time adjustments as promised. As of January 15, 2024, UNOS had completed only 14,849 wait-time adjustments where there are approximately 27,500 Black Americans currently on the waitlist.

**ANSWER:   UNOS admits that it had processed approximately 14,849 wait-time modifications submitted to UNOS by transplant hospitals as of January 15, 2024.   UNOS denies the remaining allegations of Paragraph 50.**

51.     Plaintiff first discovered that he suffered from kidney disease approximately 24 years ago when he became ill and passed out, while in San Diego, California. For many years thereafter, Plaintiff's kidney disease was managed with medications.

**ANSWER:   UNOS lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 51 and, therefore, UNOS denies such allegations.**

52.     However, having been diagnosed with kidney disease, Plaintiff underwent monthly testing of his eGFR to determine his kidney function. Upon information and belief, at all times the race-based coefficient was used to artificially inflate Plaintiff's eGFR scores.

**ANSWER:   UNOS lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 52 and, therefore, UNOS denies such allegations.**

53.     Plaintiff's artificially inflated eGFR scores first qualified Plaintiff to begin accruing wait time on the national kidney waitlist in January of 2018. Plaintiff has remained on the waitlist since that time, now having been on the list for more than five years, but has never been awarded a donor kidney.

**ANSWER:  Denied.**

15

DEFENDANT UNITED NETWORK FOR ORGAN SHARING'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S SECOND
AMENDED COMPLAINT – CASE NO. 2:23-CV-02576-MEMF-MAA

1   54.    Upon information and belief, Plaintiff's non-modified eGFR score fell below 20

2   ml/min, as is required to begin to accrue wait time, well before January of 2018.

3   **ANSWER:  UNOS lacks knowledge or information sufficient to form a belief as to the**

4   **truth of the allegations in Paragraph 54 and, therefore, denies such allegations.**

5   55.    Accordingly, but for use of the race-based coefficient, Plaintiff would have begun to

6   accrue wait time prior to January of 2018, entitling Plaintiff to an earlier spot in line that would have

7   increased Plaintiff's chances to receive a donor kidney.

8   **ANSWER:  UNOS lacks knowledge or information sufficient to form a belief as to the**

9   **truth of the allegations in Paragraph 55 and, therefore, denies such allegations.**

10   56.    Upon information and belief, but for the application of the race-based coefficient to

11   Plaintiff's eGFR score, Plaintiff would have received a donor kidney from the national waitlist

12   significantly earlier than his actual transplant, instead of having to rely on a private donor.

13   **ANSWER:  UNOS lacks knowledge or information sufficient to form a belief as to the**

14   **truth of the allegations in Paragraph 56 and, therefore, denies such allegations.**

15   57.    In this regard, in December of 2022, Plaintiff received a call from Cedars-Sinai

16   telling him to rush to Cedars-Sinai because a donor kidney was located. Plaintiff was held at the

17   hospital for 17 hours, prepped for surgery, including not eating or drinking, only to be told that the

18   donor kidney had been awarded to and implanted into another patient. Cedars-Sinai only then

19   explained that Plaintiff had been requested to rush to the hospital as an alternate, and that the kidney

20   had been given to the first choice.

21   **ANSWER:  UNOS lacks knowledge or information sufficient to form a belief as to the**

22   **truth of the allegations in Paragraph 57 and, therefore, denies such allegations.**

23   58.    However, at this time, Plaintiff's accrued wait time had not been recalculated to

24   account for the delay caused by use of the race-based coefficient. Despite UNOS's clear admission

25   in June of 2022 that the race-based coefficient is racially discriminatory towards Black Americans,

26   neither UNOS nor Cedars-Sinai had taken any steps by December of 2022 to recalculate Plaintiff's

27   wait time calculation.

28   **ANSWER:  UNOS admits that, by December 2022, UNOS had not received a request to**

16

DEFENDANT UNITED NETWORK FOR ORGAN SHARING'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S SECOND
AMENDED COMPLAINT – CASE NO. 2:23-CV-02576-MEMF-MAA

1  recalculate Plaintiff's wait time calculation from Plaintiff's transplant hospital.  UNOS denies
2  the remaining allegations in Paragraph 58.

3       59.    Upon information and belief, but for the racially discriminatory formula used to
4  determine who would be awarded this particular kidney, resulting in an improper calculation of
5  Plaintiff's wait time, Plaintiff would have been awarded and received a donor kidney in December of
6  2022, at the latest.

7       **ANSWER:  UNOS denies that it engaged in racially discriminatory actions. Answering**
8  **further, UNOS lacks knowledge or information sufficient to form a belief as to what impact, if**
9  **any, a recalculation of Plaintiff's wait time would have had on the allocation of the referenced**
10  **kidney to Plaintiff. Except as expressly so admitted, the allegations set forth in Paragraph 59**
11  **are denied.**

12       60.    Indeed, Cedars-Sinai took no action whatsoever in response to UNOS's recent policy
13  change until March 27, 2023, when Cedars-Sinai sent notice that it would begin reviewing members
14  of its kidney wait list to determine whether wait time adjustments were required "[o]ver the next
15  several months[.]"

16       **ANSWER:  UNOS lacks knowledge or information sufficient to form a belief as to the**
17  **truth of the allegations in Paragraph 60 and, therefore, UNOS denies such allegations.**

18       61.    Because this first notice was required to be "sent before the program's assessment of
19  their list," and given the wording of the notice, it is clear that even after UNOS announced the race-
20  based coefficient may no longer be used, Cedars-Sinai sat on its hands and did not even begin the
21  process to evaluate whether any of the members of its waitlist were entitled to a wait time
22  adjustment for another nine months.

23       **ANSWER:   UNOS denies the characterization of the referenced "first notice."**
24  **Answering further, UNOS lacks knowledge or information sufficient to form a belief as to the**
25  **truth of the remaining allegations in Paragraph 61 and, therefore, UNOS denies such**
26  **allegations.**

27       62.    Over the past years, Plaintiff's kidney disease has worsened significantly. In January
28  of 2022, Plaintiff's condition worsened to the point that he became unable to work, and since that

17

1   time, Plaintiff has been unable to return to work. This has caused Plaintiff significant economic harm
2   in the form of lost wages and medical expenses, particularly ongoing dialysis costs.

3   **ANSWER:  UNOS lacks knowledge or information sufficient to form a belief as to the**
4   **truth of the allegations in Paragraph 62 and, therefore, UNOS denies such allegations.**

5   63.    Plaintiff brings this action on behalf of himself and the below-defined putative classes
6   who are similarly situated under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil
7   Procedure.

8   **ANSWER:   The allegations of Paragraph 63 state legal conclusions to which no**
9   **response is required.   To the extent a response is required, UNOS admits that Plaintiff**
10  **purports to bring this action on behalf of several putative classes of individuals.   UNOS denies**
11  **that class certification is appropriate under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules**
12  **of Civil Procedure.   Except as expressly so admitted, the allegations set forth in Paragraph 63**
13  **are denied.**

14  64.    The National Waitlist Class seeks damages and is defined as follows:

15  All patients identified as Black on the national kidney waitlist, for
16  whom the accrual of wait time was delayed by application of the race-
    based coefficient. This class excludes those patients pursuing personal
17  injury or wrongful death claims.

18  **ANSWER:   The allegations of Paragraph 64 state legal conclusions to which no**
19  **response is required.   To the extent a response is required, UNOS admits that Plaintiff**
20  **purports to seek damages on behalf of a putative class of individuals. Except as expressly so**
21  **admitted, the allegations set forth in Paragraph 64 are denied.**

22  65.    Additionally, Plaintiff brings this action on behalf of the subclasses defined below.

23  **ANSWER:   The allegations of Paragraph 65 state legal conclusions to which no**
24  **response is required.   To the extent a response is required, UNOS admits that Plaintiff**
25  **purports to bring this action on behalf of subclasses of individuals.   Except as expressly so**
26  **admitted, the allegations set forth in Paragraph 65 are denied.**

27  66.    The California Waitlist Class seeks damages and is defined as follows:

28  All patients identified as Black on the national kidney waitlist, residing in California,

18

for whom the accrual of wait time was delayed by application of the race-based coefficient. This class excludes those patients pursuing personal injury or wrongful death claims.

**ANSWER:** **The allegations of Paragraph 66 state legal conclusions to which no response is required.  To the extent a response is required, UNOS admits that Plaintiff purports to seek damages on behalf of a putative California subclass. Except as expressly so admitted, the allegations set forth in Paragraph 66 are denied.**

67.   The Cedars-Sinai Waitlist Class seeks damages and is defined as follows:

All patients identified as Black on the national kidney waitlist, for whom Cedars-Sinai was their designated transplant hospital, and for whom the accrual of wait time was delayed by application of the race-based coefficient. This class excludes those patients pursuing personal injury or wrongful death claims.

**ANSWER:** **The allegations of Paragraph 67 state legal conclusions to which no response is required.  To the extent a response is required, UNOS admits that Plaintiff purports to seek damages on behalf of a putative Cedars-Sinai subclass.  Except as expressly so admitted, the allegations set forth in Paragraph 67 are denied.**

68.   Upon information and belief, given that the national kidney waitlist includes approximately 27,500 Black Americans nationwide, the National Waitlist Class includes tens of thousands of members located throughout the United States.

**ANSWER:** **The allegations of Paragraph 68 state legal conclusions to which no response is required.  To the extent a response is required, UNOS states that the number of individuals on the kidney transplant waitlist changes frequently. Except as expressly so admitted, the allegations set forth in Paragraph 68 are denied.**

69.   Upon information and belief, given that there are more than 2,000 Black members of the national kidney waitlist residing in California, the California Waitlist Class includes thousands of members located in California.

**ANSWER:** **The allegations of Paragraph 69 state legal conclusions to which no response is required.  To the extent a response is required, UNOS states that the number of individuals on the kidney transplant waitlist changes frequently.  Except as expressly so**

19

1   admitted, the allegations set forth in Paragraph 69 are denied.

2       70.    Upon information and belief, and because Cedars-Sinai represents that 206 of its

3   patients are potentially eligible for wait time adjustments, the Cedars-Sinai Class includes hundreds

4   of members located in California.

5       **ANSWER:   The allegations of Paragraph 70 state legal conclusions to which no**

6   **response is required.   To the extent a response is required, UNOS states that the number of**

7   **individuals on the kidney transplant waitlist changes frequently.   Except as expressly so**

8   **admitted, the allegations set forth in Paragraph 70 are denied.**

9       71.    The identities of the members of the National Waitlist Class, California Waitlist

10  Class, and Cedars-Sinai Class are known or readily ascertainable by UNOS and Cedars-Sinai, and

11  the number of persons who fall within the definition of these classes are so numerous and

12  geographically dispersed as to make joinder of all members of the National Waitlist Class, California

13  Waitlist Class, or Cedars-Sinai Class in their individual capacity impracticable, inefficient, and

14  unmanageable so as to effectively deny each putative member of these classes his, her, or their right

15  to obtain relief based on the claims and allegations made in this Complaint.

16      **ANSWER:   The allegations of Paragraph 71 state legal conclusions to which no**

17  **response is required.   To the extent a response is required, UNOS admits that it has certain**

18  **information regarding individuals on the kidney transplant list.   Except as expressly so**

19  **admitted, the allegations set forth in Paragraph 71 are denied.**

20      72.    There are common questions of law and fact as to the National Waitlist Class,

21  California Waitlist Class, and Cedars-Sinai Class, relating to and/or dispositive of the allegations of

22  unlawful and misleading conduct made in the Complaint, and relating to and/or dispositive of the

23  common pattern of alleged injury and harm caused by that unlawful and misleading conduct and

24  sustained by the putative members of the classes, including, but not limited to:

25  •   Whether UNOS discriminated against members of the classes on account of their race by
26      encouraging and allowing for use of the race-based coefficient;

27  •   Whether UNOS discriminated against members of the classes on account of their race by its
        knowing use of manipulated wait time data in the UNet algorithm;

28

20

- Whether UNOS's UNet algorithm was racially biased and led to delay for Black candidates seeking donor kidneys;

- Whether the disparate impact of UNOS's policy allowing for use of the race-based coefficient and the UNet algorithm was known to UNOS during the relevant time period, leading to the uniform disparate treatment of members of the classes;

- UNOS's knowledge of their practices and the discriminatory impact on the classes;

- Whether Cedars-Sinai discriminated against members of the Cedars-Sinai classes on account of their race by encouraging and allowing for use of the race-based coefficient;

- Whether Cedars-Sinai discriminated against members of the Cedars-Sinai Class on account of their race by its failure to provide accurate wait time data for inclusion in UNet;

- Whether Cedars-Sinai's failure to provide accurate wait time data for inclusion in UNet was racially biased and led to delay for Black candidates seeking donor kidneys;

- Whether the disparate impact of Cedars-Sinai's failure to provide accurate wait time date for inclusion in UNet was known to Cedars-Sinai during the relevant time period, leading to the uniform disparate treatment of the Cedars-Sinai Class;

- Cedars-Sinai's knowledge of their practices and the discriminatory impact on the Cedars-Sinai Class;

- Whether Cedars-Sinai owes its patients on the kidney waitlist a fiduciary duty, and whether Cedars-Sinai's failure to provide accurate wait time information for use in UNet violated such a duty; and

- The length of the delay caused by use of the race-based coefficient and increased medical costs resulting therefrom.

**ANSWER:   The allegations of Paragraph 72 state legal conclusions to which no response is required.   To the extent a response is required, the allegations set forth in Paragraph 72 are denied.**

73.     The interests of Plaintiff and the classes are aligned. Plaintiff seeks to establish that UNOS and Cedars-Sinai are liable for economic injuries caused to Black patients by application the race-based coefficient. Should Plaintiff prevail in establishing the same, each of the other members of the classes would then be entitled to recover damages in compensation for their economic injuries.

**ANSWER:   The allegations of Paragraph 73 state legal conclusions to which no response is required.  To the extent a response is required, denied.**

74.     The claims of Plaintiff are typical of the claims of the members of the class and

21

DEFENDANT UNITED NETWORK FOR ORGAN SHARING'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S SECOND
AMENDED COMPLAINT – CASE NO. 2:23-CV-02576-MEMF-MAA

1    subclasses. Plaintiff is a Black member of the national kidney waitlist maintained by UNOS, whose

2    accrual of wait time was delayed because of the use of the race-based coefficient, residing in

3    California, and Cedars-Sinai is Plaintiff's designated transplant hospital.

4         **ANSWER:**  **The allegations of Paragraph 74 state legal conclusions to which no**

5    **response is required.  To the extent a response is required, denied.**

6         75.    Plaintiff's claims are typical of the other members of the classes because all class

7    members were injured as a result of substantially similar conduct by UNOS and Cedars-Sinai.

8         **ANSWER:**  **The allegations of Paragraph 75 state legal conclusions to which no**

9    **response is required.  To the extent a response is required, denied.**

10        76.    Plaintiff is an adequate class representative because his interests do not conflict with

11   the interests of the other members of the classes. Plaintiff has retained counsel competent and

12   experienced in complex class action litigation, and Plaintiff intends to prosecute this action

13   vigorously. The class's and subclass's interests will be fairly and adequately protected by Plaintiff

14   and his counsel.

15        **ANSWER:**  **The allegations of Paragraph 76 state legal conclusions to which no**

16   **response is required.  To the extent a response is required, denied.**

17        77.    The prosecution of separate actions by individual members of the class and subclasses

18   would create a risk of inconsistent or varying adjudications.

19        **ANSWER:**  **The allegations of Paragraph 77 state legal conclusions to which no**

20   **response is required.  To the extent a response is required, denied.**

21        78.    The questions of law and fact common to the members of the classes and subclasses

22   predominate over any questions of law or fact affecting only individual members of the classes and

23   subclasses. The primary claims to be proven in this case relate to whether UNOS and Cedars-Sinai

24   engaged in actionable discriminatory behavior by virtue of their use of the race-based coefficient and

25   manipulated wait times in the formula to determine which patient receives a donor kidney.

26   Moreover, the types of damages suffered by class members, such as increased dialysis costs, are

27   uniform and can be calculated on a class-wide basis. These issues predominate over any individual

28   issues, of which there appear to be few if any.

1      **ANSWER:   The allegations of Paragraph 78 state legal conclusions to which no**

2  **response is required.  To the extent a response is required, denied.**

3      79.     A class action is superior to other available methods for the fair and efficient

4  adjudication of this controversy. Treatment as a class action will permit a large number of similarly

5  situated persons to adjudicate their common claims in a single forum simultaneously, efficiently, and

6  without the duplication of effort and expense that numerous individual actions would engender.

7  Prosecution as a class action will eliminate the need for repetitious litigation—if it were even

8  feasible for each member of the class and subclasses to proceed individually.

9      **ANSWER:   The allegations of Paragraph 79 state legal conclusions to which no**

10  **response is required.  To the extent a response is required, denied.**

11      80.     Plaintiff is not aware of any similar cases filed against UNOS or Cedars-Sinai.

12      **ANSWER:  Denied.**

13      81.     California is a proper and desirable forum for the claims against UNOS and Cedars-

14  Sinai to proceed. UNOS maintains the national kidney waitlist, but more than 23,000 members of

15  that waitlist reside in California, a significant percentage of all members of the waitlist. Moreover,

16  Cedars-Sinai and the Plaintiff are both located in California, and all the members of the subclasses

17  are located in California.

18      **ANSWER:   The allegations of Paragraph 81 state legal conclusions to which no**

19  **response is required.  To the extent a response is required, UNOS admits that it facilitates the**

20  **administration of the national kidney transplant waitlist under federal contract with the**

21  **Department of Health and Human Services, on behalf of the OPTN.  UNOS states that the**

22  **number of individuals on the kidney transplant waitlist changes frequently.   Except as**

23  **expressly so admitted, UNOS denies the allegations of Paragraph 81.**

24      82.     The classes and subclasses are readily definable by review of medical records that

25  should exist in the files of UNOS and Cedars-Sinai. Moreover, UNOS and Cedars-Sinai should have

26  records of the e-mail addresses, phone numbers, and addresses of members of the national kidney

27  waitlist such that providing notice to the classes and subclasses will be practicable. Thus, there does

28  not exist any significant likely difficulties in managing the claims as a class action.

23

1        **ANSWER: The allegations of Paragraph 82 state legal conclusions to which no response**

2 **is required.  To the extent a response is required, denied.**

3        83.    Plaintiff re-alleges and incorporates herein by reference, as though set forth in full,

4 each of the allegations set forth in paragraphs 1 through 82 above.

5        **ANSWER:   UNOS restates and incorporates herein by reference its responses to**

6 **Paragraphs 1 through 82 above.**

7        84.    This cause of action is brought by Plaintiff, the Nationwide Waitlist Class, the

8 California Waitlist Class, and the Cedars-Sinai Class against UNOS.

9        **ANSWER:   The allegations of Paragraph 84 state legal conclusions to which no**

10 **response is required.   To the extent a response is required, UNOS admits that Plaintiff**

11 **purports to bring this cause of action on behalf of himself and putative classes of individuals.**

12 **Except as expressly so admitted, UNOS denies the allegations of Paragraph 84.**

13        85.    UNOS receives significant financial assistance from the Federal government.

14 Approximately 10% of UNOS's budget is provided by the Federal government, in accordance with

15 the National Organ Transplant Act's authorization of $7,000,000/year to fund a private, non-profit

16 entity such as UNOS.

17        **ANSWER:   The allegations of Paragraph 85 state legal conclusions to which no**

18 **response is required.   To the extent a response is required, UNOS admits that it receives**

19 **certain funds from the Federal Government.   Except as expressly so admitted, UNOS denies**

20 **the allegations of Paragraph 85.**

21        86.    These contracts were intended by the Federal government to act as a subsidy to

22 UNOS, not as compensation for any goods or services provided by UNOS to the Federal

23 government, for which there are none.

24        **ANSWER:   The allegations of Paragraph 86 state legal conclusions to which no**

25 **response is required.   UNOS lacks knowledge or information sufficient to form a belief as to**

26 **the truth of the allegations in Paragraph 86.**

27        87.    UNOS has engaged in racial discrimination. As alleged in detail above, UNOS

28 allowed and encouraged use of the race-based coefficient to artificially inflate Black patients' eGFR

1    scores, thus delaying their accrual of wait time, and prejudicing their chances of receiving a donor

2    kidney.

3        **ANSWER:  Denied.**

4        88.    UNOS further knowingly used these modified wait times for Black patients in its

5    UNet software, causing Black patients to be ranked lower for specific donor kidneys vis-à-vis

6    members of other races. Even after admitting the practice was racially discriminatory, UNOS failed

7    to take prompt action to ensure Black patients' wait times were recalculated.

8        **ANSWER:  Denied.**

9        89.    The above-described racial discrimination damaged Plaintiff and members of the

10   Nationwide Waitlist Class, the California Waitlist Class, and the Cedars-Sinai Class by depriving

11   and/or delaying their award of a donor kidney. This has caused Plaintiff and members of the

12   Nationwide Waitlist Class, the California Waitlist Class, and the Cedars-Sinai Class to incur

13   economic injuries, including but not limited to, continued medical costs such as dialysis costs.

14       **ANSWER:  Denied.**

15       90.    Plaintiff re-alleges and incorporates herein by reference, as though set forth in full,

16   each of the allegations set forth in paragraphs 1 through 89 above.

17       **ANSWER:  UNOS restates and incorporates herein by reference its responses to**

18   **Paragraphs 1 through 89 above.**

19       91.    This cause of action is brought by Plaintiff and members of the California Waitlist

20   Class and the Cedars-Sinai Class against UNOS and Cedars-Sinai.

21       **ANSWER:  The allegations of Paragraph 91 state legal conclusions to which no**

22   **response is required.  To the extent a response is required, UNOS admits that Plaintiff**

23   **purports bring this cause of action on behalf of himself and putative classes of individuals.**

24   **Except as expressly so admitted, UNOS denies the allegations of Paragraph 91.**

25       92.    Both UNOS and Cedars-Sinai are "business establishments" as defined by the Unruh

26   Civil Rights Act.

27       **ANSWER:  The allegations of Paragraph 92 state legal conclusions to which no**

28   **response is required.  To the extent a response is required, denied.**

93.     Both UNOS and Cedars-Sinai have engaged in racial discrimination against citizens of California, within California. As to UNOS, as alleged in detail above, UNOS allowed and encouraged use of the race-based coefficient to artificially inflate the eGFR scores of Black patients located within California, thus delaying their accrual of wait time, and prejudicing their chances to receive a donor kidney.

**ANSWER:  Denied.**

94.     UNOS further knowingly used these modified wait times for Black patients within California in its UNet software, causing said Black patients to be ranked lower for specific donor kidneys vis-à-vis members of other races. Even after admitting the practice was racially discriminatory, UNOS failed to take prompt action to ensure Black patients' wait times were recalculated.

**ANSWER:  Denied.**

95. Cedars-Sinai knowingly submitted eGFR scores tainted by use of the race-based coefficient to UNOS for inclusion in its UNet algorithm, prejudicing its own Black patients' chances to receive a donor kidney. Even after UNOS changed course and outlawed use of the race-based coefficient, Cedars-Sinai failed for more than nine months to take any action to recalculate its Black patients' wait times.

**ANSWER:  UNOS lacks knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 95 and, therefore, denies such allegations.**

96.     Both Cedars-Sinai and the members of the California Waitlist Class and Cedars-Sinai Class are located within California.

**ANSWER:  UNOS lacks knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 96 and, therefore, denies such allegations.**

97. The above-described racial discrimination damaged Plaintiff and members of the California Waitlist Class and the Cedars-Sinai Class by depriving and/or delaying their award of a donor kidney. This has caused Plaintiff and members of the California Waitlist Class and the Cedars-Sinai Class to incur economic injuries, including but not limited to, continued medical costs such as dialysis costs.

26

DEFENDANT UNITED NETWORK FOR ORGAN SHARING'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S SECOND AMENDED COMPLAINT – CASE NO. 2:23-CV-02576-MEMF-MAA

1    **ANSWER:  Denied.**

2        98.    Plaintiff re-alleges and incorporates herein by reference, as though set forth in full,

3    each of the allegations set forth in paragraphs 1 through 97 above.

4        **ANSWER:  UNOS restates and incorporates herein by reference its responses to**

5    **Paragraphs 1 through 97 above.**

6        99.    This cause of action is brought by Plaintiff and members of the Nationwide Waitlist

7    Class, the California Waitlist Class, and the Cedars-Sinai Class against Cedars-Sinai.

8        **ANSWER:  The allegations of Paragraph 99 state legal conclusions to which no**

9    **response is required.  To the extent a response is required, UNOS admits that Plaintiff**

10   **purports bring this cause of action on behalf of himself and putative classes of individuals.**

11   **Except as expressly so admitted, UNOS denies the allegations of Paragraph 99.**

12       100.   As the transplant hospital for Plaintiff and members of the Cedars-Sinai Class,

13   Cedars-Sinai owed Plaintiff and members of the Cedars-Sinai Class a fiduciary duty.

14       **ANSWER:  The allegations of Paragraph 100 state legal conclusions to which no**

15   **response is required.  To the extent a response is required, UNOS lacks information or**

16   **knowledge to form a belief as to the truth of the allegations of Paragraph 100 and, therefore,**

17   **denies such allegations.**

18       101.   Cedars-Sinai breached its fiduciary duty by engaging in racial discrimination against

19   its fiduciaries.

20       **ANSWER:  The allegations of Paragraph 101 state legal conclusions to which no**

21   **response is required.  To the extent a response is required, UNOS lacks information or**

22   **knowledge to form a belief as to the truth of the allegations of Paragraph 101 and, therefore,**

23   **UNOS denies such allegations.**

24       102.   Cedars-Sinai breached its fiduciary duty by knowingly submitting eGFR scores

25   tainted by use of the race-based coefficient to UNOS for inclusion in its UNet algorithm, prejudicing

26   its own Black patients' chances to receive a donor kidney. Even after UNOS changed course and

27   outlawed use of the race-based coefficient, Cedars-Sinai failed for more than nine months to take

28   any action to recalculate its Black patients' wait times.

1    **ANSWER:   The allegations of Paragraph 102 state legal conclusions to which no**
2    **response is required.   To the extent a response is required, UNOS lacks information or**
3    **knowledge to form a belief as to the truth of the allegations of Paragraph 102 and, therefore,**
4    **UNOS denies such allegations.**

5    103.    The above-described breaches of fiduciary duty damaged Plaintiff and members of
6    the Nationwide Waitlist Class, the California Waitlist Class, and the Cedars-Sinai Class by depriving
7    and/or delaying their award of a donor kidney. This has caused Plaintiff and members of the
8    Nationwide Waitlist Class, the California Waitlist Class, and the Cedars-Sinai Class to incur
9    economic injuries, including but not limited to, continued medical costs such as dialysis costs.

10   **ANSWER:   The allegations of Paragraph 103 state legal conclusions to which no**
11   **response is required.   To the extent a response is required, UNOS lacks information or**
12   **knowledge to form a belief as to the truth of the allegations of Paragraph 103 and, therefore,**
13   **UNOS denies such allegations.**

14   104.    Plaintiff re-alleges and incorporates herein by reference, as though set forth in full,
15   each of the allegations set forth in paragraphs 1 through 105 above.

16   **ANSWER:   UNOS restates and incorporates herein by reference its responses to**
17   **Paragraphs 1 through 103 above.**

18   105.    This cause of action is brought by Plaintiff and members of the California Waitlist
19   Class and the Cedars-Sinai Class against UNOS and Cedars-Sinai.

20   **ANSWER:   The allegations of Paragraph 105 state legal conclusions to which no**
21   **response is required.   To the extent a response is required, UNOS admits that Plaintiff**
22   **purports bring this cause of action on behalf of himself and putative classes of individuals.**
23   **Except as expressly so admitted, UNOS denies the allegations of Paragraph 105.**

24   106.    UNOS and Cedars-Sinai have committed acts of unfair competition, as defined by
25   California Business and Professions Code § 17200, by engaging in the unlawful and discriminatory
26   practices described above. Without limitation, UNOS and Cedars-Sinai have discriminated against
27   Black patients by their use of the race-based coefficient, which fails to give Black patients credit for
28   the appropriate amount of wait time.

28

1    **ANSWER:   The allegations of Paragraph 106 state legal conclusions to which no**

2    **response is required.   To the extent a response is required, UNOS denies that it engaged in any**

3    **unfair, unlawful or discriminatory conduct.   UNOS lacks knowledge or information to form a**

4    **belief as to truth of the remaining allegations of Paragraph 106 and, therefore, UNOS denies**

5    **such allegations.**

6         107.    This failure to properly calculate wait time has harmed Plaintiff, the California

7    Waitlist Class, and the Cedars-Sinai Class, because their chances to receive a donor kidney have

8    been lessened. Indeed, as alleged above, on information and belief, Plaintiff was deprived of a donor

9    kidney because UNOS and Cedars-Sinai used a wait time calculation tainted by application of the

10   race-based coefficient.

11       **ANSWER:  Denied.**

12       108.    Plaintiff and the members of the California Waitlist Class and Cedars-Sinai Class all

13   reside in California, and the discrimination against these persons occurred in California. Cedars-

14   Sinai is also located in California, and its alleged discriminatory conduct occurred in California.

15       **ANSWER:   The allegations of Paragraph 108 state legal conclusions to which no**

16   **response is required.   To the extent a response is required, UNOS denies that it engaged in any**

17   **unfair, unlawful or discriminatory conduct.   UNOS lacks knowledge or information to form a**

18   **belief as to truth of the remaining allegations of Paragraph 108 and, therefore, UNOS denies**

19   **such allegations.**

20       109.    Plaintiff paid to Defendants a significant registration fee, required to join UNOS's

21   national kidney waitlist.

22       **ANSWER:   UNOS denies that Plaintiff paid UNOS a registration fee.   UNOS lacks**

23   **knowledge or information to form a belief as to truth of the remaining allegations of**

24   **Paragraph 109 and, therefore, UNOS denies such allegations.**

25       110.    Plaintiff and the members of the California Waitlist Class and Cedars-Sinai Class are

26   without an adequate remedy at law.

27       **ANSWER:  Denied.**

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PRAYER FOR RELIEF

UNOS denies that Plaintiff is entitled to any of the relief requested in his Prayer for Relief.

1

**AFFIRMATIVE DEFENSES**

2      UNOS hereby alleges the following separate and distinct defenses and affirmative defenses

3  to the Second Amended Complaint and the causes of action asserted against UNOS therein, without

4  assuming the burden of proof on matters as to which it has no such burden.

5

**FIRST AFFIRMATIVE DEFENSE**

6

(Lack of Standing)

7      1.      Plaintiff does not have standing to bring his claims against UNOS, as set forth in

8  UNOS's Motion to Dismiss filed on May 26, 2023 (ECF 25) and June 30, 2023 (ECF 31).

9

**SECOND AFFIRMATIVE DEFENSE**

10

(Statute of Limitations)

11      2.      Plaintiff's claims are barred in whole or in part by the applicable statutes of

12  limitations, as set forth in UNOS's Motion to Dismiss filed on May 26, 2023 (ECF 25) and June 30,

13  2023 (ECF 31).

14

**THIRD AFFIRMATIVE DEFENSE**

15

(Failure to Mitigate Damages)

16      3.      Plaintiff failed to take proper and reasonable steps to avoid, minimize, or mitigate

17  Plaintiffs' alleged damages and, to the extent of such failure, the damages allegedly incurred by

18  Plaintiff, if any, should be reduced accordingly or eliminated entirely.

19

**FOURTH AFFIRMATIVE DEFENSE**

20

(Laches)

21      4.       Plaintiff's claims are barred, in whole or in part, by the doctrine of laches.

22

**FIFTH AFFIRMATIVE DEFENSE**

23

(Estoppel)

24      5.      Plaintiff is estopped by the action of law or by conduct from maintaining the Second

25  Amended Complaint filed in this case.

26

**SIXTH AFFIRMATIVE DEFENSE**

27

(Fault of Others)

28      6.      If Plaintiff suffered or sustained any loss, injury, damage, or detriment, the same was

31

1   directly and proximately caused and contributed to by the breach, conduct, acts, omissions,

2   activities, or intervening acts of other third parties, and not by UNOS.

**SEVENTH AFFIRMATIVE DEFENSE**

(Speculative Damages)

5   7.      UNOS alleges that any damages or loss Plaintiff may have incured as a result of any

6   act or conduct by UNOS would be speculative at best and, thus, too uncertain for recover.

**EIGHTH AFFIRMATIVE DEFENSE**

(Compliance with Law)

9   8.       UNOS met or exceeded the requirements of applicable laws, regulations, and

10  standards.

**NINTH AFFIRMATIVE DEFENSE**

(Good Faith Conduct/Conformance with Applicable Standards)

13  9.      UNOS at all times acted in good faith and in conformance with all applicable

14  government and industry standards, rules and regulations, thus precluding any recovery by Plaintiff

15  against UNOS.

**TENTH AFFIRMATIVE DEFENSE**

(Waiver)

18  10.     Plaintiff's claims against UNOS, if any, are barred by the doctrine of waiver.

**ELEVENTH AFFIRMATIVE DEFENSE**

(Excessive Penalties)

21  11.     If the Court grants class certification and aggregates the claims of Plaintiff and the

22  putative classes, the result would be an unconstitutionally excessive imposition of damages in

23  violation of the Due Process clause of the Fifth Amendment of the United States Constitution, and

24  the Due Process provision of the Fourteenth Amendment of the United States Constitution.  The

25  aggregate damages requested by Plaintiff would not be proportionate to UNOS's alleged culpability,

26  the relationship between the harm alleged and the penalty, actual damages (if any), and UNOS's

27  ability to pay and are, thus, excessive and unconstitutional.

28

## TWELFTH AFFIRMATIVE DEFENSE

### (Other Defenses – Putative Class Members)

12.     UNOS reserves the right to amend or supplement its affirmative defenses to include defenses that may be applicable to other members of the putative class.

## OTHER AFFIRMATIVE DEFENSES

13.     UNOS has insufficient knowledge or information upon which to form a belief as to whether it may have additional, as yet unstated, defenses available.  UNOS expressly reserves the right to assert additional defenses in the event that discovery indicates that such defenses are appropriate.

## PRAYER FOR RELIEF

WHEREFORE, UNOS prays for judgment as follows:

1.     That judgment be entered in favor of UNOS;

2.     That Plaintiff takes nothing by way of his Second Amended Complaint and the claims asserted therein;

3.     That the Second Amended Complaint, and the claims against UNOS, be dismissed with prejudice;

4.     That UNOS be awarded costs of suit, including attorneys' fees incurred in the defense of this action; and

5.     That UNOS be granted such other relief as the Court deems just and proper.


Dated: April 26, 2024                    WINSTON & STRAWN LLP

                                By:  /s/ *Daniel M. Blouin*

                                Shawn R. Obi (SBN: 288088)
                                sobi@winston.com
                                Winston & Strawn LLP
                                333 S. Grand Avenue
                                Los Angeles, CA 90071-1543
                                Telephone: (213) 615-1700
                                Facsimile: (213) 615-1750

                                Daniel M. Blouin (Admitted *pro hac vice*)
                                dblouin@winston.com
                                Thomas G. Weber (Admitted *pro hac vice*)

33

1    tgweber@winston.com
     Winston & Strawn LLP
2    35 W. Wacker Drive
     Chicago, IL 60601-9703
3    Telephone: (312) 558-5600
     Facsimile: (312) 558-5700
4
     Attorneys for Defendant
5    UNITED NETWORK FOR ORGAN SHARING

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT UNITED NETWORK FOR ORGAN SHARING'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S SECOND
AMENDED COMPLAINT – CASE NO. 2:23-CV-02576-MEMF-MAA

1

## CERTIFICATE OF SERVICE

I hereby certify that on April 26, 2024, I filed the foregoing document entitled **DEFENDANT UNITED NETWORK FOR ORGAN SHARING'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S SECOND AMENDED COMPLAINT** with the clerk of court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record in this action.

By: _/s/ Daniel M. Blouin_
Daniel M. Blouin

35